**TOGUT, SEGAL & SEGAL LLP**
Albert Togut
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, NY  10119
Phone:  (212) 594-5000
Email:    altogut@teamtogut.com
              kortiz@teamtogut.com
              bmoore@teamtogut.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

**SHEARMAN & STERLING LLP**
Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY  10022
Phone:  (212) 848-4000
Email:    fsosnick@shearman.com
              william.holste@shearman.com
              jacob.mezei@shearman.com

-and-

Ian E. Roberts (admitted *pro hac vice*)
2601 Olive Street, 17th Floor
Dallas, TX  75201
Phone:  (214) 271-5777
Email:    ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>VICE GROUP HOLDING INC., *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10738 (JPM)<br><br>(Jointly Administered) |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A);  Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

**NOTICE OF FILING OF REVISED PROPOSED ORDER (I) ESTABLISHING
BIDDING, NOTICING, AND ASSUMPTION AND ASSIGNMENT PROCEDURES,
(II) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE
STALKING HORSE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on May 15, 2023 (the "Petition Date"), the above-
captioned debtors and debtors in possession (collectively, the "Debtors") commenced the above-
captioned cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11
of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District
of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the
*Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and
Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry Into the Stalking
Horse Agreement, (III) Approving the Sale of Substantially All of the Debtors' Assets and (IV)
Granting Related Relief* [ECF No. 16] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file (i) a revised proposed
*Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II)
Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, and (III)
Granting Related Relief* attached hereto as **Exhibit A** (the "Revised Proposed Order") and (ii) a
redline of the Revised Proposed Order showing the changes to the order originally filed with the
Motion attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings
filed in the Chapter 11 Cases can be viewed and/or obtained by:  (i) accessing the Debtors'
proposed claims and noticing agent's website at https://cases.stretto.com/vice; (ii) the Court's
website for a fee; or (iii) by contacting the Office of the Clerk of the Court.  Please note that a
PACER password is required to access documents on the Court's website.

[*Remainder of page intentionally left blank.*]

Dated: May 30, 2023
     New York, New York

**SHEARMAN & STERLING LLP**

*/s/ Fredric Sosnick*

Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4000
Email: fsosnick@shearman.com
      william.holste@shearman.com
      jacob.mezei@shearman.com

-and-

Ian E. Roberts (admitted *pro hac vice*)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Phone: (214) 271-5777
Email: ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and
Debtors in Possession*

## **EXHIBIT A**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al., | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

## ORDER (I) ESTABLISHING BIDDING, NOTICING, AND ASSUMPTION AND ASSIGNMENT PROCEDURES, (II) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated May 15, 2023 [ECF No. 16] (the "Motion")[2] of the debtors in possession (collectively, the "Debtors") in the above-captioned cases for entry of an order (this "Order"), among other things:

i.      authorizing and approving the Bidding Procedures, in connection with the sale or sales of the Assets pursuant to section 363 of the Bankruptcy Code (the "Sale"), including certain dates and deadlines thereunder for the Sale process;

ii.     authorizing and approving the Debtors entry into that Asset and Equity Purchase Agreement, dated as of May 19, 2023 [ECF No. 58] (as may be amended or modified pursuant to the terms thereof, the "Stalking Horse Agreement");

iii.    approving the Expense Reimbursement;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

iv.     authorizing and approving the form and manner of notice of the sale of the Assets, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "Sale Notice");

v.      approving procedures set forth in the Bidding Procedures Order (the "Assumption and Assignment Procedures") for the assumption, assumption and assignment, and rejection of certain executory contracts (the "Contracts") or unexpired leases (the "Leases"), and approving the form and manner of service of the notice regarding such assumption, assumption and assignment, or rejection of the Contracts and Leases to counterparties (each, a "Counterparty"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "Assumption and Assignment Notice"); and

vi.     granting related relief;

all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.) ("Reference M-431"); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein as set forth in the affidavit of service filed with respect thereto [ECF No. 63]; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion, the First Day Declaration, and the Herlihy Declaration filed contemporaneously therewith; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all

of the proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      <u>Jurisdiction and Venue</u>. Consideration of the Motion and the relief requested

therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and Reference M-431.

B.      <u>Statutory and Legal Predicates</u>. The statutory and legal predicates for the relief

requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules

2002, 6004, and 6006, Local Rules 6004-1, 6005-1, and 6006-1, and the Sale Guidelines.

C.      <u>Bidding Procedures</u>. The Debtors have articulated good and sufficient business

reasons for the Court to approve the Bidding Procedures. The Bidding Procedures are fair,

reasonable, and appropriate. The Bidding Procedures are reasonably designed to promote a

competitive and robust bidding process to generate the greatest level of interest in the Debtors'

business resulting in the highest or otherwise best offer. The Bidding Procedures comply with the

requirements of Local Rule 6004-1 and the Sale Guidelines.

D.      <u>Designation of Stalking Horse Bid</u>. The approval of the Stalking Horse Bidder as a

"stalking-horse" bidder and the Stalking Horse Agreement as a "stalking-horse" sale agreement is

in the best interests of the Debtors and the Debtors' estates and creditors, and the Debtors have

demonstrated compelling and sound justifications for the relief sought hereunder. The Stalking

Horse Agreement will enable the Debtors to secure a fair baseline price for the Assets at the

Auction and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and

all other parties in interest.

E.      The Debtors and the Stalking Horse Bidder negotiated the Stalking Horse Agreement without collusion, in good faith, and from arm's-length bargaining positions. Neither party has engaged in any conduct that would cause or permit the agreement to be avoided under section 363(n) of the Bankruptcy Code.

F.      The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Debtors.

G.      The Expense Reimbursement is necessary and appropriate.

H.      <u>Sale Notice</u>. The Sale Notice attached hereto as **Exhibit 2** and the procedures with respect to such Sale Notice contain the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1 and comply in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

I.      <u>Assumption and Assignment Procedures</u>. The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures. The Assumption and Assignment Procedures, including the Assumption and Assignment Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate. The Assumption and Assignment Procedures provide an adequate opportunity for all Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs. The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

4

J.      Notice. All other notices to be provided pursuant to the procedures set forth in the

Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto. No

further notice is required.

K.      Relief is Warranted. The legal and factual bases set forth in the Motion establish

just and sufficient cause to grant the relief requested therein.

L.      Other Findings.  The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of

fact constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

**NOW, AND THEREFORE, IT IS HEREBY ORDERED THAT**

1.      The Motion is GRANTED to the extent set forth herein.

**I.      The Bidding Procedures**

2.      The Bidding Procedures, substantially in the form attached to this Order as **Exhibit**

**1**, are approved and incorporated into this Order by reference, as though fully set forth herein.

Accordingly, the failure to recite or reference any particular provision of the Bidding Procedures

shall not diminish the effectiveness of such provision, it being the intent of the Court that the

Bidding Procedures be authorized and approved in their entirety.  The Debtors are authorized to

take all actions necessary or appropriate to implement the Bidding Procedures.

**II.      Important Dates and Deadlines**

3.      The Sale Hearing will commence on [**June 23], 2023**, at [**10:00 a.m.] (prevailing**

**Eastern Time)**, before the Honorable John P. Mastando III of the United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, New York, New York 10004-1408.

5

The Sale Hearing may be accelerated if the Debtors make a Sale Acceleration Election in accordance with the Bidding Procedures (such accelerated hearing, the "Accelerated Sale Hearing"). Subject to the terms of the Bidding Procedures, the Debtors may, in their reasonable business judgment, (and subject to the terms of the Stalking Horse Agreement, to the extent such agreement remains in full force and effect), in consultation with the Consultation Parties and with the consent of the Successful Bidder(s), adjourn or reschedule any Sale Hearing or Accelerated Sale Hearing, as applicable, with notice to the Sale Notice Parties.

4.    Sale Objection Deadline. Any objections to the Sale (a "Sale Objection") by a Sale Notice Party must be made by **June 16, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"). The Sale Objection Deadline may be extended by the Debtors with the consent of the Stalking Horse Bidder, the Senior Secured Parties, to the extent the Stalking Horse Agreement remains in full force and effect, and the Court.

5.    Competitive Bidding. The following dates and deadlines regarding competitive bidding are hereby established, in each case subject to extension in accordance with the Bidding Procedures and subject to the terms of the Stalking Horse Agreement, to the extent that such agreement remains in full force and effect:

(a)    Bid Deadline: **June 20, 2023, at 4:00 p.m. (prevailing Eastern Time)**, the deadline by which all Qualified Bids must be actually received in writing by the Bid Notice Parties (the "Bid Deadline"); and

(b)    Auction: **June 22, 2023, at 10:00 a.m. (prevailing Eastern Time)**, is the date and time the Auction, if one is needed, will be held at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, Lexington Ave, New York, NY 10022, or at such other time and location (including via remote video) as designated by the Debtors, in consultation with the Consultation Parties and providing notice to the Sale Notice Parties, and subject to the terms of the Bidding Procedures.

### III.    Stalking Horse Agreement

6.      The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid, in each case, pursuant to the Bidding Procedures for all purposes.

7.      The Debtors are authorized to enter into the Stalking Horse Agreement as executed in the form attached to the Bidding Procedures Motion (or an amended form as may be agreed to between the Debtors and the Stalking Horse Bidder and filed with the Court prior to the entry of the Bidding Procedures Order).

8.      The Debtors are authorized to pay the Expense Reimbursement in cash or by wire transfer of immediately available funds in accordance with the terms of the Stalking Horse Agreement without further action or order by the Court.

9.      Notwithstanding anything to the contrary in this Order or any other order of this Court, the Stalking Horse Bidder shall not be required to file or serve a proof of claim with respect to claims arising under or in connection with the Stalking Horse Agreement, and no bar date shall be imposed with respect to such claims.

10.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, (a) the right of any party to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in this Order shall be construed as a waiver of, or a finding that any credit bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in this Order shall prejudice any party in interest's rights to object to a credit bid on any basis on or prior to the Sale Objection Deadline or any other party's right to oppose such objection.

### IV.    Sale Notice Procedures

11.     The Sale Notice Procedures, substantially in the form set forth in the Sale Notice attached to this Order as **Exhibit 2**, are approved. The Debtors are authorized to implement the

Sale Notice Procedures as set forth in the Bidding Procedures Motion, the Bidding Procedures, and the Sale Notice.

**V.**    **Assumption and Assignment Procedures**

12.    The (a) Assumption and Assignment Procedures, as set forth in the Bidding Procedures, and (b) the Assumption and Assignment Notice in the form attached to this Order as **Exhibit 3**, are approved.

13.    The Assumption and Assignment Procedures shall govern the assumption or assumption and assignment of all of the Debtors' Contracts and Leases to be assumed or assumed and assigned in connection with the Sale, subject to the payment of any amounts necessary to cure any defaults arising under any such Contract or Lease (the "Cure Costs").

14.    The Debtors and Cigna Health and Life Insurance Company ("Cigna") are parties to an Administrative Services Only Agreement and a Stop Loss Policy, Account Number 3340558, that facilitate the Debtors' self-funded medical, dental, and pharmaceutical benefits, and a Group Medical, Emergency Medical Evacuation and Repatriation, Dental and Vision Insurance Policy, Account Number 08947A, (collectively, the "Cigna Employee Benefits Agreements"). Notwithstanding anything in this Order to the contrary, unless Cigna and the Debtors agree otherwise, the Debtors shall provide to Cigna, through their counsel of record, written notice of Debtors' irrevocable (subject to closing of the proposed Sale) decision as to whether or not the Debtors propose to assume and assign the Cigna Employee Benefits Agreements to the Successful Bidder as part of the proposed Sale, (i) in the case of the Stalking Horse Bidder, no later than three

days prior to the Sale Hearing and (ii) in the case where another bidder is the Successful Bidder following the Auction, no later than two hours prior to the commencement of the Sale Hearing.

## VI.    **Related Relief**

15.    The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

16.    All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Debtors' Assets during the sale process, including at the Auctions, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale; (b) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the Bidding and Auction Process, the Auctions, and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

17.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

9

18.     Prior to mailing and publishing the Sale Notice and the Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

19.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

20.     The Debtors are authorized to take all actions reasonably necessary or appropriate to effectuate the relief granted in this Order.

21.     The Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2023
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al., | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

## BIDDING PROCEDURES

On May 15, 2023, Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [__], 2023, the Unites States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [ECF No. [__]] (the "Bidding Procedures Order")[2] which, among other things, authorized (a) the Debtors to solicit bids for a sale in accordance with the Bidding Procedures outlined herein and (b) the Debtors' entry into a purchase and sale agreement (as may be amended, supplemented, or otherwise modified from time to time, the "Stalking Horse Agreement") with one or more entities (or their designees) formed in a manner acceptable to the Senior Secured Parties in their sole discretion (the "Stalking Horse Bidder") for the sale of the Assets, free and clear of any and all liens, encumbrances, claims, and other interests, pursuant to which the Stalking Horse Bidder has committed to provide aggregate consideration consisting of (collectively, the "Stalking Horse Bid"): (i) a credit bid of $225 million pursuant to Section 363(k) of title 11 of the United States Code (the "Bankruptcy Code") against certain obligations owed by the Debtors under the Pre-Petition Senior Secured Credit Agreement and the DIP Credit

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A);  Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); and Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in the Bidding Procedures Order or the Motion requesting the relief granted therein, as applicable.

Agreement as of the Closing (the "Credit Bid"), with the Credit Bid allocated *first*, to payment of any such obligations under the DIP Credit Agreement until paid in full, and *second*, to payment of any such obligations under the Pre-Petition Senior Secured Credit Agreement as of the closing of the Sale process (the "Closing"), (ii) the assumption of the Assumed Liabilities, and (iii) the payment of the Cure Costs; ***provided, however,*** notwithstanding anything to the contrary contained herein or in the Bidding Procedures Order, (a) the right of any party to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in these Bidding Procedures shall be construed as a waiver of, or a finding that any credit bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in these Bidding Procedures shall prejudice any party in interest's rights to object to a credit bid on any basis on or prior to the Sale Objection Deadline or any other party's right to oppose such objection. Pursuant to the Bidding Procedures Order and these Bidding Procedures, the Stalking Horse Bid is subject to higher or better offers, the outcome of the Auction and the approval of the Court.

## Description of the Assets

The Debtors seek to sell substantially all of their assets (including the Debtors' intellectual property, certain customer and vendor contracts, accounts receivable and goodwill) and assign certain contracts material to the operation of the Debtors' businesses (collectively, the "Assets").

The Debtors will consider bids (including bids from multiple bidders and multiple bids submitted by the same bidder) that are made for either:

(a)     *VICE* Media Group – a diversified content powerhouse comprised of all of the *VICE* business segments and all *VICE* Assets;

(b)     one or more of the following business segments:

- *VICE* Publishing – an award-winning global digital content business, which publishes content through its portfolio of brands;

- Refinery29, Inc. – a digital media and entertainment company focused on a female audience; or

(c)     Any combination of Assets or business segments (the "Business Segments") that comprise *VICE* Media Group.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment bankers, PJT Partners LP, 280 Park Avenue, New York, New York (Attn: Robert Murphy (murphy@pjtpartners.com), Emanuele Antonio Pascale (emanuele.antonio.pascale@pjtpartners.com)); and LionTree LLC, 745 5th Ave, New York, NY 10151 (Attn: Ben Braun (bbraun@liontree.com), Faris Chehabi (fchehabi@liontree.com)).

2

**Important Dates and Deadlines**

| Date | Deadline |
|---|---|
| **Tuesday, May 30, 2023, at 11:00 a.m. (Eastern Time)** | Hearing to consider entry of the Bidding Procedures Order |
| **Tuesday, May 30, 2023**[3] | File Sale Notice and Assumption and Assignment Notice |
| **Friday, June 16, 2023, at 4:00 p.m. (Eastern Time)** | Cure Objection Deadline |
| **Friday, June 16, 2023, at 4:00 p.m. (Eastern Time)** | Sale Objection Deadline |
| **Tuesday, June 20, 2023, at 4:00 p.m. (Eastern Time)** | Bid Deadline |
| **Wednesday, June 21, 2023, at 4:00 p.m. (Eastern Time)** | Qualified Bid Designation Date |
| **Thursday, June 22, 2023, at 10:00 a.m. (Eastern Time)** | Auction to be held at the New York offices of Shearman & Sterling LLP |
| **Friday, [June 23], 2023, at [10:00 a.m.] (Eastern Time)**[4] | Sale Hearing |
| **Friday, July 7, 2023** | Closing |

---

[3] The Debtors will file and serve the Sale Notice and Assumption and Assignment Notice on May 30, 2023, or as soon as practicable after entry of the Bidding Procedures Order.

[4] Subject to the convenience and availability of the Court.

3

**Noticing**

Consultation Parties

Subject to terms of these Bidding Procedures, the Debtors shall consult in good faith with counsel to (each of the following parties to the extent applicable, including such party's advisors, a "Consultation Party"):

(a)    any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Creditors' Committee"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn:   Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)); and

(b)    the Senior Secured Parties, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer).

Notwithstanding the foregoing, the consultation rights afforded herein: (i) shall not limit the Debtors' discretion in any way in the evaluation of bids, compliance with these procedures, and other matters at the Auction; (ii) shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment; and (iii) otherwise limit the Debtors' reservation of rights in respect of their fiduciary obligations including as described herein.

If a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any confidential information regarding the sale of the Assets to such member.

Bid Notice Parties

All bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"):

(a)    the Debtors, c/o *VICE*, 49 S 2nd St, Brooklyn, NY 11249 (Attn: Maria Harris (maria.harris@vice.com));

(b)    the Debtors' counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn:  Kyle J. Ortiz (kortiz@teamtogut.com) and Brian F. Moore (bmoore@teamtogut.com)) and special counsel for the Debtors, Shearman & Sterling LLP 599, Lexington Avenue, Lexington Ave, New York, NY 10022 (Attn: Fredric     Sosnick     (fsosnick@shearman.com),     Christopher     Forrester (chris.forrester@shearman.com) and Ian E. Roberts (ian.roberts@shearman.com));

(c)    the Debtors' investment bankers, PJT Partners, LP 280 Park Avenue, New York, New York 10017 (Attn: Robert Murphy (murphy@pjtpartners.com), Emanuele

4

Antonio Pascale (emanuele.antonio.pascale@pjtpartners.com)); and LionTree LLC, 745 5th Ave, New York, NY 10151 (Attn: Ben Braun (bbraun@liontree.com), Faris Chehabi (fchehabi@liontree.com)); and

(d)     the Committee's counsel, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)).

<u>Sale Notice Parties</u>

Information that must be provided to the "<u>Sale Notice Parties</u>" under these Bidding Procedures must be provided to the following parties:

(a)     the Consultation Parties;

(b)     all persons and entities, known by the Debtors and their advisors, to have expressed an interest in a transaction with respect to any of the Debtors' Assets during the past twelve (12) months (for whom identifying information and addresses are available to the Debtors);

(c)     all persons and entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in any Asset (for whom identifying information and addresses are available to the Debtors), including all known holders of claims and all creditors prior to the date of entry of the Bidding Procedures Order;

(d)     all parties to litigation with the Debtors that are known as of the date of entry of the Bidding Procedures Order, and/or their counsel;

(e)     all Counterparties to Assigned Contracts and Leases under the applicable proposed Sale;

(f)     any Governmental Authority known to have a claim in these Chapter 11 Cases;

(g)     the United States Attorney for the Southern District of New York;

(h)     the Office of the Attorney General in each state which the Debtors operate;

(i)     the Office of the Secretary of State in each state in which the Debtors operate or are organized;

(j)     all of the multiemployer pension plans to which any of the Debtors is a contributing employer and all of the single employer defined benefit plans to which any Debtor is a contributor;

5

(k)     the Federal Trade Commission and other applicable regulatory agencies;

(l)     the United States Attorney General/Antitrust Division of Department of Justice;

(m)     all of the Debtors' known creditors and contract counterparties (for whom identifying information and addresses are available to the Debtors); and

(n)     all other Persons directed by the Court (for whom identifying information and addresses are available to the Debtors).

Objection Recipients

All Sale Objections, Cure Objections, and Auction Result Objections (each as defined below), each as further discussed in the Bidding Procedures Order, shall be filed with the Court by the applicable objection deadline and served on the following parties (collectively, the "Objection Recipients"):

(a)     the Bid Notice Parties;

(b)     entities on the Master Service List (which may be obtained at the Debtors' case management website at https://cases.stretto.com/vice/); and

(c)     counsel to the Stalking Horse Bidder.

## Notice Procedures

### Sale Notice Procedures

The Debtors will provide actual notice of the Sale to known parties in interest (*i.e.*, the Sale Notice Parties) as well as publication and other notice to unknown parties (together, the "Sale Notice Procedures"). The Sale Notice Procedures provide for the following:

(a)     Sale Notice**.** On or before the date that is three business days after entry of the Bidding Procedures Order, the Debtors shall file with the Court, serve on the Sale Notice Parties by first class U.S. mail, postage prepaid, or electronic mail, and cause to be published on the dedicated website hosted and maintained by Stretto, Inc., the Debtors' claims and noticing agent in the Chapter 11 Cases (the "Noticing Agent"), located at https://cases.stretto.com/vice/ (such website, the "Case Website"), the notice of the Sale, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "Sale Notice").

(b)     The Sale Notice will (a) include a general description of the Assets for sale and Business Segments or Assets for which Bids will be considered; (b) prominently display the date, time, and place (as applicable) of the (i) Accelerated Sale Hearing,

(ii) Bid Deadline, (iii) Auction and (iv) Sale Hearing; and (c) prominently display the deadlines and procedures for filing a Sale Objection.

**Assumption and Assignment Notice Procedures**

The Debtors developed procedures (such procedures, the "Assumption and Assignment Procedures") to facilitate the fair and orderly assumption, assumption and assignment, and rejection of certain executory contracts (the "Contracts") or unexpired leases (the "Leases") as may be designated in the Stalking Horse Agreement or any other Successful Bid(s) (as defined below).

The Assumption and Assignment Procedures provide for notice regarding such assumption, assumption and assignment, or rejection of the Contracts and Leases to Counterparties, and the Debtors' calculation of potential cure costs that would arise in connection with any proposed assumption and assignment (such notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3**, the "Assumption and Assignment Notice"). The Debtors shall provide the Assumption and Assignment Notice in accordance with these Bidding Procedures and the Bidding Procedures Order.

Assumption and Assignment Notice. On May 30, 2023, or as soon as practicable following entry of the Bidding Procedures Order, the Debtors will file with the Court and serve on the Sale Notice Parties, including each Counterparty, the Assumption and Assignment Notice and will cause the same to be published on the Case Website. The Assumption and Assignment Notice will (a) identify the Assigned Contracts initially designated by the Stalking Horse Bidder for potential assumption and assignment to the Stalking Horse Bidder (the "Initial Assumed Contracts"); (b) list the Debtors' good faith calculation of the Cure Costs with respect to each Initial Assumed Contract; (c) expressly state that assumption or assignment of any Assigned Contract is not guaranteed and is subject to Court approval; (d) direct the non-Debtor Counterparty to relevant publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder; (e) prominently display the deadline to file a Cure Objection and an Adequate Assurance Objection (each as hereinafter defined); and (f) prominently display the dates, times, and location of the Sale Hearings.

Designation of Contracts and Leases. Pursuant to the terms of the Stalking Horse Agreement, the Stalking Horse Bidder shall have the right, at any time prior to five (5) business days prior to Closing to designate additional Assigned Contracts for proposed assumption and assignment to the Stalking Horse Bidder (each, a "Supplemental Contract") or at any time prior to one (1) business day prior to Closing to remove Contracts from the list of Assigned Contracts from proposed assumption and assignment (each, a "Removed Contract"). The Debtors shall, as soon as reasonably practicable after the Buyer's designation of any Supplemental Contracts or any Removed Contracts file with the Court, serve by overnight delivery on all applicable Counterparties, and cause to be published on the Case Website, a notice of proposed assumption and assignment of the Supplemental Contracts (a Supplemental Assumption and Assignment Notice") and/or removal of the Removed Contracts, which shall (A) expressly state that

7

assumption or assignment of the Supplemental Contracts is not guaranteed and subject to Court approval and removal of the Removed Contracts does not constitute a rejection by the Debtors of such Contract, and (B) direct the non-Debtor Counterparty to a Supplemental Contract to relevant publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder; and (C) prominently display the deadline to file an Adequate Assurance Objection with respect to a Supplemental Contract.

Auction Results. The Debtors will, within one (1) calendar day after the conclusion of the Auction, or as soon as practicable thereafter, file with the Court, serve on the Sale Notice Parties (including each Counterparty to an Assigned Contract in a Successful Bid), a Notice of Auction Results, which shall (1) identify the Successful Bidders and Back-Up Bidders; (2) list all Assigned Contracts in the Successful Bids and Back-Up Bids; (3) identify any known proposed assignee(s) of Assigned Contracts (if different from the applicable Successful Bidder); and (4) set forth the deadlines and procedures for filing Adequate Assurance Objections in response to the Notice of Auction Results.

Cure Objections.

    i.    Cure Objection Deadlines. Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding defaults then existing under such Contract or Lease (a "Cure Objection"), which must (1) be in writing; (2) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (3) state, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (4) include any appropriate documentation in support thereof, by no later than the applicable Sale Objection Deadline, which shall be at least seven (7) calendar days after service of such notice, or less in the case of a Supplemental Assumption and Assignment Notice to the extent necessary.

    ii.    Resolution of Cure Objections. If a timely Cure Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled.

    iii.    Adjourned Cure Objections. If a timely Cure Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing; provided that a Cure Objection may, at the Debtors' discretion (with the consent of the Stalking Horse Bidder, or, if an Auction is held, the Successful Bidder), be adjourned to a subsequent hearing if, pending resolution of such Cure Objection (an

"Adjourned Cure Objection"), the Debtors maintain a cash reserve (a "Cure Cost Reserve") equal to the lesser of (1) the amount the objecting Counterparty has asserted to be required to cure the asserted defaults under the applicable Assigned Contract and (2) such other cash reserve amount as may be ordered by the Court, until a Cure Cost amount is agreed to by the parties or determined by the Court; provided that if the Debtors maintain a letter of credit or similar security deposit for the Debtors' obligations under an Assigned Contract to a Counterparty asserting a Cure Objection, the Debtors shall not be required to fund a Cure Cost Reserve to the extent of the existing amounts available under such letter of credit or other security deposit maintained by such Counterparty. Notwithstanding the existence of an Adjourned Cure Objection, the Assigned Contract may be deemed assumed and assigned to the Stalking Horse Bidder, or, if an Auction is held, the Successful Bidder, as of the applicable Closing Date if the Debtors maintain a Cure Cost Reserve.

iv.  Failure to File Timely Cure Objection. If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease. The Cure Costs set forth in each Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

Adequate Assurance Information. Each Bid (other than the Stalking Horse Bid) must contain such financial and other information that allows the Debtors, after consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the applicable Sale, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to the Potential Bidder (the "Adequate Assurance Information").

Adequate Assurance Objections.

i.  Adequate Assurance Objection Deadline. Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is a Successful Bidder's (including the Stalking Horse Bidder's) and/or any of their known proposed assignees' (if different from the Successful Bidder) proposed form

9

of adequate assurance of future performance with respect to such Contract or Lease (an "Adequate Assurance Objection"), shall file with the Court and serve on the Objection Recipients, including the applicable Successful Bidder and any known proposed assignee of such contract or lease (if different from the Successful Bidder), its Adequate Assurance Objection, which must (1) be in writing; (2) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (3) state, with specificity, the legal and factual bases thereof; (4) include any appropriate documentation in support thereof, by no later than the applicable deadline set forth in the applicable notice, which shall be at least seven (7) calendar days after the filing of such notice, or less in the case of a Supplemental Assumption and Assignment Notice to the extent necessary.

ii.      Resolution of Adequate Assurance Objections. If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled.

iii.     Failure to Timely File Adequate Assurance Objection. If a Counterparty fails to file with the Court and serve on the Objection Recipients, including the applicable Successful Bidder and any known proposed assignee of the Contract or Lease (if different from the Successful Bidder), a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the relevant Contract or Lease. The Successful Bidder and/or its known proposed assignee of the Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the applicable Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

Reservation of Rights. The inclusion of a Contract or Lease or Cure Costs with respect thereto on an Assumption and Assignment Notice or the Notice of Auction Results shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidders, or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors and the Stalking Horse Bidder reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on an Assumption and Assignment Notice and Notice of Auction Results. The Debtors' inclusion of any Contract or Lease on the Assumption and Assignment Notice or the Notice of Auction Results shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.

## **Marketing Process**

Access to Diligence

To participate in the diligence process and receive access to the Debtors' electronic data room (the "Data Room") and the confidential information memorandum relating to the Sale (the "CIM"), a party must submit to the Debtors or their advisors:

(a)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors; and

An interested party shall be a "Potential Bidder" if the Debtors determine in their reasonable discretion, after consultation with the Consultation Parties, that an interested party has satisfied the above requirements. As soon as practicable, the Debtors will deliver to such Potential Bidder (i) an information package containing information and financial data with respect to the Assets in which such Potential Bidder has expressed an interest and (ii) access to the Data Room.

Once a Potential Bidder is deemed to be a Qualified Bidder its identity may, in the Debtors' discretion, be disclosed to the Stalking Horse Bidder. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

Until the Bid Deadline (as defined below), the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Potential Bidders. All due diligence requests shall be directed to Debtors' investment bankers, PJT Partners LP and LionTree LLC.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Business Segments or Assets to any person or entity who is not a Potential Bidder or a Consultation Party or who does not comply with the participation requirements set forth above, ***provided, however***, that the Debtors shall consult with the Consultation Parties before refusing to furnish information to any party.

11

## **Auction Qualification Procedures**

Bid Deadline

A Potential Bidder that desires to make a bid on one or more of the Business Segments or Assets shall deliver electronic copies of its bid in both PDF and MS-WORD format so as to be received no later than **June 20, 2023 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline"); provided that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Potential Bidders, without further order of the Court, subject to providing notice to the Stalking Horse Bidder, all Potential Bidders, and the Consultation Parties.

Bids should be submitted by email to the Bid Notice Parties.

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction**.

Communications with Potential Bidders

There must be no communications between and amongst Potential Bidders unless the Debtors have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to disqualify any Potential Bidder(s) that have communications between and amongst themselves.

Form and Content of Qualified Bids

A "Bid" as used herein is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a Sale), and any other party that will be participating in connection with the bid or the Sale, and includes, at a minimum, the following information:

(a)     Proposed Business Segments or Assets and Valuation. Each Bid must clearly identify and list the Assets and liabilities that the Potential Bidder seeks to acquire, whether individually or in combination. If a Bid is for one or more Business Segments, such Bid must identify, on a per Business Segment basis, the valuations, in U.S. dollars, that the Potential Bidder associates with each of those Business Segments, and a description of any significant assumptions on which such valuations are based (including a separate identification of the cash and non-cash components of the valuation). To the extent the Bid proposes to purchase particular Assets, such as intellectual property, the Bid shall clearly identify the value, in U.S. dollars, associated with such Assets.

(b)     Purchase Price. Each Bid must specify the purchase price for the Assets proposed to be acquired. In addition, each Bid must include a sources and uses table for the

proposed Sale that shows the portion of the purchase price to be funded with cash on hand, the portion to be funded with cash from committed financing sources, and the portion to be funded with non-cash consideration.

(c)    <u>Proposed APA</u>. Each Bid must include a copy of an asset purchase agreement reflecting the terms and conditions of the Bid, which agreement must be marked to show any proposed amendments and modifications to the form of purchase agreement posted by the Debtors in the Data Room (the "<u>Proposed APA</u>").

(d)    <u>Unconditional Offer; No Financial Contingency</u>. A statement that the Bid is formal, binding, and unconditional (except for those conditions expressly set forth in the applicable Proposed APA), is not subject to any due diligence or financing contingency and is irrevocable until the first business day following the closing of the proposed Sale, except as otherwise provided in these Bidding Procedures. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the Sale set forth in its Bid, each Bid must include committed financing documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's purchase price and other obligations under its Bid.

(e)    <u>Cash Offer or Non-Cash Consideration</u>. A statement confirming that the Bid is based on an cash offer, and, in the case of a bid for all of the Assets included in the Stalking Horse Agreement, meets the Minimum Overbid Amount (as defined herein). In the case of Bids that do not constitute all-cash offers, a detailed description of the amount of non-cash consideration offered.

(f)    <u>Employee and Labor Terms</u>. A statement of proposed terms for unionized and nonunionized employees, which shall include, alternatively: (i) a statement that the Potential Bidder will assume the Debtors' affected collective bargaining agreements (the "<u>Affected Labor Agreements</u>") without modification; (ii) if the Potential Bidder will not assume the Affected Labor Agreements without modification, a statement that the Potential Bidder will enter into good faith negotiations with each affected labor union (the "<u>Affected Unions</u>") to enter into modified labor agreements (each, a "<u>Modified Labor Agreement</u>"), including a term sheet, which shall be attached to the Potential Bidder's Proposed APA, proposing post-closing work rules and conditions to be offered to unionized employees; or (iii) a statement that the Potential Bidder does not intend to assume any Affected Labor Agreements; provided that such statement shall include whether or not the Potential Bidder intends to offer employment to any of the Debtors' employees following a closing of an applicable Sale. Such statement shall also include an acknowledgment of the requirements of sections 1113 and 1114 of the Bankruptcy Code and an agreement to use good faith reasonable best efforts to cooperate with the Debtors in ensuring compliance with any applicable provisions thereof in the event that mutually satisfactory Modified Labor Agreements have not

13

been entered into between the Potential Bidder and the Affected Unions prior to the closing of a sale contemplated by these Bidding Procedures.

(g)     <u>Pension Plans</u>. Each Bid must state whether or not the Potential Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with the Debtors' multi-employer pension plan (the "<u>Pension Plan</u>"). If the Potential Bidder does not intend to assume sponsorship or liabilities of the Pension Plan in full, each Bid must state whether the Potential Bidder intends to assume the assets and liabilities of the Pension Plan relating to plan participants associated with the Business Segments in the Bid.

(h)     <u>Required Approvals</u>. A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable ("<u>HSR Filings</u>"), and any other Antitrust Law (as defined in the Stalking Horse Agreement), and pay the fees associated with such filings and (ii) of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the business and the Business Segments included in its Bid from and after closing the applicable Sale and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtor's legal counsel to discuss and explain Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

(i)     <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. A statement that the Bid does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

(j)     <u>Adequate Assurance Information</u>. Each Bid must contain such financial and other information that allows the Debtors, after consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the applicable Sale, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to the Potential Bidder (the "<u>Adequate Assurance Information</u>").

(k)     <u>Designation of Contracts and Leases</u>. Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing the applicable Sale.

(l)     <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

  (i)     a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable Assets prior to submitting its Bid;

  (ii)    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Business Segments and/or Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed APA ultimately accepted and executed by the Debtors;

  (iii)   a statement that the Potential Bidder agrees to serve as Back-Up Bidder (as defined herein), if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Assets, until the Back-Up Termination Date (as defined herein);

  (iv)    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

  (v)     a statement that all proof of financial ability to consummate a Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

  (vi)    A statement that the Potential Bidder agrees to be bound by the terms of these Bidding Procedures.

(m)    <u>Other Requirements</u>. A Potential Bidder must also accompany its Bid with:

  (i)     a Deposit (as defined herein);

  (ii)    the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Potential Bidder;

  (iii)   written evidence of available cash, a commitment for financing (not subject to any conditions), or such other evidence of ability to consummate the transaction contemplated by the applicable Proposed APA, as acceptable in the Debtors' business judgment and following consultation with the Consultation Parties, including a description of each investor and any

15

additional party or parties investing in the transaction included in the applicable bid and such party's financial position;

(iv)    a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Proposed APA;

(v)    a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable Antitrust Laws and other applicable regulatory requirements; and

(vi)    if the Bid includes an asset purchase agreement that is not executed, a signed statement that such Bid is irrevocable until the first business day following the closing or closings of the applicable Sale, and to serve as a Back-Up Bidder.

The submission of a Bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.

For the avoidance of doubt, the Stalking Horse Bid as of the hearing on these Bidding Procedures shall be deemed to be a Qualified Bid.

<u>Deposit</u>

To qualify as a Qualified Bid (as defined herein), each Bid (other than the Stalking Horse Bid) must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the proposed purchase price (the "<u>Deposit</u>"), to be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "<u>Escrow Agent</u>") pursuant to the escrow agreement to be provided by the Debtors to the Potential Bidders (the "<u>Escrow Agreement</u>").

To the extent the Business Segments or Assets included in a Qualified Bid are modified at or prior to the Auction, the Qualified Bidder must adjust its Deposit so that it equals ten percent (10%) of the purchase price proposed to be paid for each Business Segment or Asset.

<u>Review of Bids and Designation of Qualified Bidders</u>

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all Bids to the Consultation Parties. A bid received for the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth in the preceding section will be considered a "<u>Qualified Bid</u>," and the Stalking Horse Bidder, and any bidder that

submits a Qualified Bid (including the Stalking Horse Bid) will be considered a "Qualified Bidder."

The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding section as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.

The Debtors will evaluate timely submitted bids, in consultation with the Consultation Parties, and may take into consideration the following non-binding factors:

(a)     the amount of the purchase price set forth in the Bid;

(b)     the Assets included in or excluded from the Bid;

(c)     the value to be provided to the Debtors under the Bid for the Business Segments and/or Assets included therein (individually and in the aggregate), including the net economic effect upon the Debtors' estates after the payment of any applicable Termination Payment;

(d)     any benefit to the Debtors' bankruptcy estates from any assumption or waiver of liabilities, including any liabilities under the Pension Plans and the assumption of the sponsorship of all, any, or a portion of the Pension Plans;

(e)     the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, cost to the Debtors' bankruptcy estates to pursue such transaction, and required governmental or other approvals;

(f)     the impact on employees, employee claims against the Debtors, Affected Labor Agreements, and whether the Potential Bidder has reached an agreement with the Affected Unions; and

(g)     any other factors the Debtors may reasonably deem relevant, in consultation with the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, will make a determination regarding which bids qualify as Qualified Bids, and will notify Potential Bidders whether they have been selected as Qualified Bidders by no later than **June 21, 2023, at 4:00 p.m. (Eastern Time**) with respect to each bid or combination of bids (the "Qualified Bid Designation Date").

The Debtors reserve the right to work with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. If a Bid is received and, in

17

the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the Bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not the Bid is a Qualified Bid.

The Debtors, after consultation with the Consultation Parties, will have the right to determine that a Bid is not a Qualified Bid if any of the following conditions are satisfied:

(a)    a Potential Bidder has failed to comply with reasonable requests for additional information from the Debtors; or

(b)    the terms of the Bid are burdensome or conditional in view of the proposed purchase price or, in the case of a Bid or combination of Bids for the Assets in the Stalking Horse Agreement, are materially more burdensome or conditional than the terms of the applicable Stalking Horse Agreement and are not offset by a material increase in purchase price, which determination (as made by the Debtors in consultation with the Consultation Parties).

The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

### Pre-Auction Procedures

Determination and Announcement of Baseline Bids

The Debtors, after consulting with the Consultation Parties, shall make a determination regarding:

(a)    the Assets and/or Business Segments to be auctioned by the Debtors (each, an "Auction Package");

(b)    the highest or best Qualified Bid (or collection of Qualified Bids) determined for each Auction Package (each, a "Baseline Bid," and such bidder or group of bidders, a "Baseline Bidder") to serve as the starting point at the Auction for such Auction Package;

(c)    which Bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid; provided that the Debtors may permit a Qualified Bidder to bid on any other Auction Package; and

(d)    the time and place for the Auction of each Auction Package.

By the applicable Qualified Bid Designation Date, the Debtors shall file notice of the foregoing on the Court's docket and publish such notice on the Stretto Website and in the Data Room. As soon as practicable, but no later than two (2) days prior to the Auction, the Debtors will provide copies of each Baseline Bid to the Consultation Parties.

Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder.

Without the written consent of the Debtors (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid remains binding as specified herein; provided that any Qualified Bid may be improved at the Auction as set forth herein.

Except as otherwise provided in the Stalking Horse Agreement, and after consultation with the Consultation Parties, Debtors are under no obligation to (i) select any Baseline Bid or (ii) conduct separate Auctions for any Business Segments, whether before or after selecting a Baseline Bid. Notwithstanding anything to the contrary contained herein, the Debtors may elect, in their reasonable discretion, and after consultation with the Consultation Parties, to adjourn any Auction.

<u>Failure to Receive Two or More Qualified Bids</u>

If no Qualified Bid for the Assets and/or any Business Segments, other than the applicable Stalking Horse Bid, is received by the Bid Deadline, or is the Qualified Bids received do not (in the aggregate) exceed the Stalking Horse Bid, the Debtors will not conduct the Auction, and shall file and serve a notice indicating that the Auction has been cancelled and that the applicable Stalking Horse Bidder is the sole Successful Bidder, and setting forth the date and time of the Sale Hearing.

Except as provided in the Stalking Horse Agreement, and after consultation with the Consultation Parties, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.

**<u>Auction Procedures</u>**

If there are two or more Qualified Bids for an Auction Package, the Debtors may conduct one or more Auctions for such Auction Package, on dates to be announced, at the offices of Shearman & Sterling LLP 599 Lexington Avenue, Lexington Ave, New York, NY 10022 or such other time and place as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids.

Only a Qualified Bidder will be eligible to participate at an Auction, subject to such limitations as the Debtors may impose in good faith. Professionals and/or other representatives of the Consultation Parties will be permitted to attend and observe an Auction. At any Auction, Qualified Bidders (including the Stalking Horse Bidder) will be permitted to increase their bids. For each Baseline Bid, bidding will start at the purchase price and terms proposed in the applicable Baseline Bid and will proceed thereafter in increments to be announced (a "<u>Minimum Overbid Amount</u>"). The Minimum Overbid Amount for the Assets in the Stalking Horse Agreement,

whether in one or a combination of Qualified Bids, shall be $150,000. The Debtors reserve the right to and may, after consultation with the Consultation Parties, increase or decrease the Minimum Overbid Amount at any time during the Auction for any Assets. The Stalking Horse Bidder is authorized to increase their respective bids at the Auction.

The Debtors may adopt rules, after consultation with the Consultation Parties, for an Auction at any time that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding and Auction Process and are not inconsistent with these Bidding Procedures. At the start of an Auction, the Debtors shall describe the terms of the applicable Baseline Bid. Any rules adopted by the Debtors will not unilaterally modify any of the terms of the Stalking Horse Agreement (as may be consensually modified at any Auction) without the consent of the Stalking Horse Bidder. Any rules developed by the Debtors will provide that all bids in a particular Auction will be made and received in one room, on an open basis, and all other bidders participating in that Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders participating in that Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine, in consultation with the Consultation Parties, to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order any bid that, in the Debtors' judgment, (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale; or (iii) contrary to the best interests of the Debtors and their estates, except that if the Stalking Horse Bid is the only Qualified Bid, the foregoing provisions of this sentence will be inoperative. In doing so, the Debtors may take into account the factors set forth above regarding the form and content of Qualified Bids and the Debtors' review of bids. No attempt by the Debtors to reject a bid under this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under the Stalking Horse Agreement (as may be consensually modified at any Auction).

Prior to the conclusion of an Auction, the Debtors, after consultation with the Consultation Parties, will (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a Sale; (ii) determine the highest or best offer or collection of offers for an Auction Package (as applicable to each Auction Package, a "Successful Bid"); (iii) except as provided in the Stalking Horse Agreement, determine which Qualified Bid is the next highest or best bid for such Auction Package (as applicable to each Auction Package, the "Back-Up Bid"); and (iv) notify all Qualified Bidders participating in an Auction, prior to its conclusion, of the successful bidder for such Auction Package (the "Successful Bidder"), the amount and other material terms of the Successful Bid, and the identity of the party that submitted

20

the Back-Up Bid for such Auction Package (the "Back-Up Bidder"); provided that the Stalking Horse Bidder shall not be required to serve as the Back-Up Bidder.

Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

### Post-Auction Process

A Successful Bidder shall, within one (1) business day after the close of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid, which shall be in form and substance acceptable to the Debtors, in consultation with the Consultation Parties. Promptly following the receipt of such documentation, the Debtors shall file with the Court notice of the Successful Bid(s), the Successful Bidder(s), and, if applicable, the Back-Up Bid(s) and the Back-Up Bidder(s). The Successful Bid(s) may not be assigned to any party without the consent of the Debtors after consultation with the Consultation Parties.

The Back-Up Bid(s) shall remain open and irrevocable until the earliest to occur of (i) thirty days after the completion of the Auction, or such other date as may be provided for in a separate agreement with the Back-Up Bidder, (ii) the consummation of the transaction with the Successful Bidder, and (iii) the release of such bid by the Debtors (such date, the "Back-Up Bid Termination Date"). If the transaction with a Successful Bidder is terminated prior to the Back-Up Termination Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

### Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in connection with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

### Treatment and Return of Deposits

Potential Bidders

Within three (3) business days after the Qualified Bid Designation Date, the Escrow Agent shall return to each Potential Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Potential Bidder's Deposit, plus any interest accrued thereon. Upon the authorized return of such Potential Bidder's Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

Qualified Bidders

The Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures, or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a joint written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

With the exception of the Deposit of a Successful Bidder and a Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Deposit, plus any interest accrued thereon, three (3) business days after the execution by the Successful Bidder and the Debtors of the documentation memorializing the Successful Bid, but in no event later than seven (7) business days after the conclusion of a Sale Hearing.

Back-Up Bidder

The Escrow Agent shall return a Back-Up Bidder's Deposit, plus any interest accrued thereon, within three (3) business days after the occurrence of the applicable Back-Up Bid Termination Date.

The Successful Bidder

The Deposit of a Successful Bidder shall be applied against the cash portion of the Purchase Price of such Successful Bidder upon the consummation of the transaction proposed in the applicable Successful Bid. For non-cash transactions, the Deposit shall be returned to the Successful Bidders three (3) Business Days following the closing of the Sale.

Joint Notice to Escrow Agent

The Debtors and, as applicable, the Potential Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent for the return of any Deposit to the extent such return is required by these Bidding Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Court.

## **Consent to Jurisdiction and Authority to Condition to Bidding**

All Potential Bidders (including the Stalking Horse Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the applicable Sale, (ii) waived

22

any right to a jury trial in connection with any disputes relating to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale, and (iii) consented to the entry of a final order or judgment in any way related to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## **Reservation of Rights**

The Debtors reserve the right, in their discretion and business judgment, after consultation with the Consultation Parties, to alter or terminate these Bidding Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, excuse technical non-compliance by bidders other than the Stalking Horse, provide reasonable accommodations to the Stalking Horse Bidder or any Potential Bidder with respect to such terms, conditions, and deadlines of the Bidding and Auction Process to promote further bids by such bidders on any Business Segments or the Assets as a whole (including, without limitation, extending time deadlines as may be required for such Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with their previous respective HSR Filings or any other Antitrust Law) and/or to terminate discussions with any and all prospective acquirers and investors (except for the Successful Bidder) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Bidding Procedures and/or the Bidding Procedures Order; provided that the Debtors' exercise of their discretion in evaluating bids and administering the Bidding and Auction Process does not permit, and shall not be construed as permitting, the Debtors to materially deviate from the procedures, terms, conditions, and protections set forth in these Bidding Procedures and/or the Bidding Procedures Order.

## **Fiduciary Matters**

Notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors or other governing body of a Debtor to take any action or to refrain from taking any action to the extent the board of directors or other governing body of such Debtor determines in good faith after consultation with counsel that continued performance under these Bidding Procedures or the Bidding Procedures Order (including taking any action or refraining from taking any action) would be inconsistent with the exercise of its fiduciary duties under applicable law.  For the avoidance of doubt, the Debtors' ability to conduct the Sale process and to consider or advance Alternative Proposals in a manner consistent with the foregoing shall not be impaired by anything in these Bidding Procedures or the Bidding Procedures Order.

**Exhibit 2**

**Form of Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al., | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND
### SALE HEARING FOR THE SALE OF SUBSTANTIALLY ALL ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 15, 2023, Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") the *Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse Agreement (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* [ECF No. 16] (the "Motion"), among other things, approving certain bidding procedures (the "Bidding Procedures") in connection with the sale or sales of substantially all of the Debtors' assets (the "Assets") pursuant to section 363 of the Bankruptcy Code (the "Sale"), including certain dates and deadlines thereunder for the Sale process. [2]

On [__], 2023, the Court, entered the Bidding Procedures Order [ECF No. __].

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Bidding Procedures.

**The Bidding Procedures provide the following**:

I.      **Stalking Horse Bidder**. The Debtors have entered into that Asset and Equity Purchase Agreement, dated as of May 19, 2023, with Vice Acquisition HoldCo, LLC (the "Buyer" or the "Stalking Horse Bidder"), a copy of which was filed with the Court on May 19, 2023 at ECF No. 58 (as may be amended or modified pursuant to the terms thereof, the "Stalking Horse Agreement," and such bid memorialized therein, the "Stalking Horse Bid") for the sale of substantially all of the Debtors' Assets, free and clear of any and all liens, encumbrances, claims, and other interests (including, for the avoidance of doubt, any potential successor liability for any claims or causes of action of any kind against the Debtors and/or the Assets), pursuant to which the Stalking Horse Bidder has committed to provide aggregate consideration consisting of: (i) a credit bid of $225 million pursuant to Section 363(k) of title 11 of the United States Code (the "Bankruptcy Code") against certain obligations owed by the Debtors under the Pre-Petition Senior Secured Credit Agreement and the DIP Credit Agreement as of the Closing (the "Credit Bid"), with the Credit Bid allocated *first*, to payment of any such obligations under the DIP Credit Agreement until paid in full, and *second*, to payment of any such obligations under the Pre-Petition Senior Secured Credit Agreement as of the closing of the Sale process (the "Closing"), (ii) the assumption of the Assumed Liabilities, and (iii) the payment of the Cure Costs.  The Sale Order is expected to contain customary release and injunction provisions for the benefit of the Stalking Horse Bidder or other Successful Bidder, and each of their respective affiliates.

II.     **Description of the Assets**. The Debtors will consider bids (including bids from multiple bidders and multiple bids submitted by the same bidder) that are made for either:

(d)     *VICE* Media Group – a diversified content powerhouse comprised of all of the *VICE* business segments and all *VICE* Assets;

(e)     one or more of the following business segments:

•       *VICE* Publishing – an award-winning global digital content business, which publishes content through its portfolio of brands;

•       Refinery29, Inc. –  a digital media and entertainment company focused on a female audience; or

(f)     Any combination of Assets or business segments that comprise *VICE* Media Group.

III.    **Important Dates and Deadlines**

(a)     **Bid Deadline**. **June 20, 2023, at 4:00 p.m. (prevailing Eastern Time)** is the deadline by which all Qualified Bids must be actually received in writing by the Bid Notice Parties (the "Bid Deadline").

(b)     **Sale Objection Deadline**. Parties must file any objections to the proposed Sale (such objections, the "Sale Objections") with the Court and serve such objections

on the Objection Recipients (as defined below) by no later than **4:00 p.m. (prevailing Eastern Time)** on **June 16, 2023** (the "Sale Objection Deadline"). **By receiving this Sale Notice, you are subject to the Sale Objection Deadline as disclosed herein, unless extended by the Debtors or the Court.**[3]

(c)     **Auction**: If the Debtors conduct an Auction, the Auction will be conducted at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, Lexington Ave, New York, NY 10022 on **June 22, 2023, at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location (including via remote video) as designated by the Debtors. If the Debtors hold the Auction, the Debtors will, as soon as reasonably practicable after selecting the Successful Bid(s), file (but not serve) and publish on the Case Website a notice of the results of the Auction (such notice, the "Notice of Auction Results"). If a Successful Bidder at the Auction is not the Stalking Horse Bidder, objections solely related to the identity of such Successful Bidder(s), changes to the Stalking Horse Agreement, and adequate assurance of future performance must be made at or prior to the Sale Hearing. The Notice of Auction Results will set forth the specific deadline and procedures for filing any such objections in response to the Notice of Auction Results.

(d)     **Sale Hearing**. Unless accelerated upon a Sale Acceleration Election (as defined in the Bidding Procedures) made by the Debtors, the Sale Hearing shall be held before the Honorable John P. Mastando III on [**June 23], 2023**, at [**10:00 a.m.] (prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408.

## IV.     **Procedures for Sale Objections**

Sale Objections must be (a) be in writing; (b) comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Southern District of New York; (c) state, with specificity, the legal and factual bases thereof; (d) include any appropriate documentation in support thereof; and (f) be filed with the Court and served on the following parties (the "Objection Recipients") by the Sale Objection Deadline: (i) the Debtors, c/o *VICE*, 49 S 2nd St, Brooklyn, NY 11249 (Attn: Maria Harris (maria.harris@vice.com)); (ii) the Debtors' counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Kyle J. Ortiz (kortiz@teamtogut.com) and Brian F. Moore (bmoore@teamtogut.com)); (iii) special counsel for the Debtors, Shearman & Sterling LLP 599, Lexington Avenue, Lexington Ave, New York, NY 10022 (Attn: Fredric Sosnick (fsosnick@shearman.com), Christopher Forrester (chris.forrester@shearman.com), and Ian E. Roberts (ian.roberts@shearman.com); (iv) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler

---

[3]     In addition to service of this Sale Notice, the Debtors will provide publication notice to parties who are not currently known to the Debtors by publishing this Sale Notice in the national edition of *USA Today* and once in the *New York Times*.

(bsandler@pszjlaw.com)); (v) entities on the Master Service List (which may be obtained at the Debtors' case management website at https://cases.stretto.com/vice/); and (vi) counsel to the Stalking Horse Bidder, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue Los Angeles, California 90071(Attn:        David    Feldman    (DFeldman@gibsondunn.com),    Michael    S. Neumeister      (mneumeister@gibsondunn.com)        ,        and        Tommy        Scheffer (tscheffer@gibsondunn.com)).

Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or Accelerated Sale Hearing, as applicable, or thereafter, any objection to the relief requested in the Sale Motion, or to the consummation and performance of the Sale contemplated by the Stalking Horse Agreement, or purchase and sale agreement with a Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

## V.    **Additional Information**

This Sale Notice and any Sale Hearing are subject to the fuller terms and conditions of the Sale Motion, the Bidding Procedures Order, and the Bidding Procedures, each of which shall control, as applicable, in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety. Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice may be obtained free of charge at Case Website, located at https://cases.stretto.com/vice/.

**Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or Accelerated Sale Hearing, as applicable, or thereafter, any objection to the relief requested in the Motion, or purchase and sale agreement with a Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.**

Dated: May [__], 2023
      New York, New York

**SHEARMAN & STERLING LLP**

_DRAFT_                               

Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY 10022
Phone:   (212) 848-4000
Email:   fsosnick@shearman.com
         william.holste@shearman.com
         jacob.mezei@shearman.com

-and-

Ian E. Roberts (_pro hac vice_ pending)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Phone:   (214) 271-5777
Email:   ian.roberts@shearman.com

_Proposed Special Counsel to the Debtors and Debtors in Possession_

## <u>Exhibit 3</u>

**Form of Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al., | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF PROPOSED**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**PLEASE TAKE NOTE OF THE FOLLOWING DEADLINES:**

**Cure Objection Deadline**: on or before **June 16, 2023, at 4:00 p.m. (prevailing Eastern Time)**

**Auction Results Objection Deadline**: If the Stalking Horse Bidder is not the Successful Bidder at the Auction, at or prior to the Sale Hearing.

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 15, 2023, Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") the *Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse Agreement (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* [ECF No. 16] (the "Motion"), seeking an order (the "Bidding Procedures Order"), among other things, seeking an order (the "Bidding Procedures Order"),

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A);  Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

among other things, (a) approving certain bidding procedures (the "<u>Bidding Procedures</u>") in connection with the sale or sales of substantially all of the Debtors' assets (the "<u>Assets</u>") pursuant to section 363 of the Bankruptcy Code (the "<u>Sale</u>"), including certain dates and deadlines thereunder for the Sale process; and (b) authorizing procedures (such procedures, the "<u>Assumption and Assignment Procedures</u>") to facilitate the fair and orderly assumption, assumption and assignment, and rejection of certain executory contracts (the "<u>Contracts</u>") or unexpired leases (the "<u>Leases</u>") of the Debtors. [2]

On [__], 2023, the Court, entered the Bidding Procedures Order [ECF No. __]. Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice (this "<u>Assumption and Assignment Notice</u>") that they are seeking to assume and assign to Vice Acquisition HoldCo, LLC (the "<u>Stalking Horse Bidder</u>")[3], or, if the Stalking Horse Bidder is not the Successful Bidder at the Auction (if any), any other Successful Bidder(s), the Contracts or Leases listed on **Exhibit A** attached hereto (each, an "<u>Assigned Contract</u>").

**You are receiving this Assumption and Assignment Notice because you may be a counterparty to a Contract or Lease (a "<u>Counterparty</u>") that may be assumed and assigned to the Successful Bidder in connection with the Sale.**

If the Debtors assume and assign to the Successful Bidder(s) an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, such Successful Bidder will pay you the amount the Debtors' records reflect is owing for **pre-bankruptcy filing arrearages** as set forth on **Exhibit A** (the "<u>Cure Cost</u>"). The Debtors' records reflect that all postpetition amounts owing under your Assigned Contract have been paid and will continue to be paid in the ordinary course until the assumption and assignment of the Assigned Contract, and that other than the Cure Cost, there are no other defaults under the Assigned Contract.

The Debtors' inclusion of a Contract or Lease as an Assigned Contract on **Exhibit A** is not a guarantee that such Contract or Lease will ultimately be assumed and assigned to any Successful Bidder. Should it be determined that an Assigned Contract will not be assumed and assigned, the Debtors shall notify such party to the Assigned Contract in writing of such decision.

Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Debtors', the Stalking Horse Bidder's, or any Successful Bidder(s)'s right to conduct further confirmatory diligence with respect to the Cure Cost of each Assigned Contract

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Bidding Procedures.

[3]    A copy of the Stalking Horse Agreement was filed with the Court on May 19, 2023, at ECF No. 58 (as may be amended or modified pursuant to the terms thereof, the "<u>Stalking Horse Agreement</u>," and such bid memorialized therein, the "<u>Stalking Horse Bid</u>").

and to modify such Cure Cost accordingly. In the event that the Debtors or any Successful Bidder determine that your Cure Cost should be modified, you will receive a notice pursuant to the Assumption and Assignment Procedures below, which will provide for additional time to object to such modification.

## I.   Assumption and Assignment Procedures

The Assumption and Assignment Procedures set forth below regarding the assumption and assignment of the Assigned Contracts that may be assumed by the Debtors and assigned to the Successful Bidder(s) in connection with the Sale shall govern the assumption and assignment of all of the Assigned Contracts, subject to the payment of any Cure Costs:

(a)   **Cure Costs and Adequate Assurance of Future Performance.** The payment of the applicable Cure Costs by any party, as applicable, shall (i) effect a cure of all monetary defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such Counterparty resulting from such default.

(b)   **Additions.** The Debtors may also designate additional executory contracts or unexpired leases as agreements to be assumed by the Debtors and assigned to a Successful Bidder (the "Additional Assigned Contracts") until one (1) business day before the closing of the Sale. Following the addition of an Additional Assigned Contract, the Debtors shall as soon as reasonably practicable thereafter serve an Assumption and Assignment Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the Counterparty's Contract or Lease, as applicable, to the Successful Bidder(s), and (ii) the corresponding Cure Cost. The Debtors shall provide any counterparties to such Additional Assigned Contracts an opportunity to be heard, if necessary, with respect to the assumption and assignment of their Assigned Contract if no other notice was received by such Counterparty prior to the Sale Hearing.

(c)   **Eliminations**. The Debtors may remove any Contract or Lease, as applicable, to be assumed by the Debtors and assigned to the Successful Bidder (the "Eliminated Agreements") until one (1) business day before the closing of the Sale. Following the removal of an Eliminated Agreement, the Debtors shall as soon as reasonably practicable thereafter serve a notice (a "Removal Notice") on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtors no longer intend to assign the Contract or Lease, as applicable, to the Successful Bidder(s) in connection with the Sale.

(d)   **Supplemental Contract Assumption Notice**. Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with the Sale, the Debtors may discover certain executory contracts inadvertently omitted from the Assigned Contracts list or the Successful Bidder(s) may identify other Contracts or Leases that they desire to have assumed and assigned in connection with the Sale. Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse Agreement or the purchase and sale agreement with the Successful Bidder(s) (the "Successful Bidder Purchase Agreement"), as applicable, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before

3

the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Stalking Horse Agreement or the Successful Bidder Purchase Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with the Sale, or (iii) modify the previously stated Cure Cost associated with any Assigned Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption and Assignment Notice") on each of the counterparties to such contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption and Assignment Notice will include the same information with respect to listed Assigned Contracts as was included in the Assumption and Assignment Notice, or in the event of a removal, the information required in a Removal Notice. Any Supplemental Assumption and Assignment Notice will be served as soon as reasonably practicable following the Successful Bidder's identification of any such omissions, removals, or modifications to any Assigned Contracts.

(e) **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto, must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) if a Cure Objection that pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Counterparty, together with the appropriate documentation including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; (v) include any appropriate documentation in support thereof; and (vi) be filed with the Court and served on, so actually be received by, the Objection Recipients (as defined below) by the applicable deadlines below or such deadline as set forth in the applicable Supplemental Assumption and Assignment Notice.

(i)    Cure Objection Deadline. Any objection to the Cure Cost, to assumption and assignment of an Assigned Contract, or adequate assurance of must be filed with the Bankruptcy Court on or before **June 16, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline"), **or such deadline set forth in the applicable Supplemental Assumption Notice**, and served on: the Debtors, c/o *VICE*, 49 S 2nd St, Brooklyn, NY 11249 (Attn: Maria Harris (maria.harris@vice.com)); (ii) the Debtors' counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Kyle J. Ortiz (kortiz@teamtogut.com) and Brian F. Moore (bmoore@teamtogut.com)); (iii) special counsel for the Debtors, Shearman & Sterling LLP 599, Lexington Avenue, Lexington Ave, New York, NY 10022 (Attn: Fredric Sosnick (fsosnick@shearman.com), Christopher Forrester (chris.forrester@shearman.com), and Ian E. Roberts (ian.roberts@shearman.com); (iv) entities on the Master Service List (which may be obtained at the Debtors' case management website at https://cases.stretto.com/vice/); (v) counsel to the Stalking

4

Horse Bidder, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue Los Angeles, California 90071(Attn:   David   Feldman (DFeldman@gibsondunn.com),   Michael   S.   Neumeister (mneumeister@gibsondunn.com),   and   Tommy   Scheffer (tscheffer@gibsondunn.com)) (collectively, the "Cure Objection Recipients"); and (vi) counsel to the Committee  Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn:   Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)).

(ii)    Auction Results Objection Deadline. If the Debtors hold an Auction and if a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, as soon as reasonably practicable after selecting such Successful Bidder(s), the Debtors will file (but not serve) and cause to be published on the Case Website a notice of results of the Auction (the "Notice of Auction Results"). Upon the filing of any Notice of Auction Results, objections *solely* to the identity of the Successful Bidder(s), changes to the Stalking Horse Agreement, or adequate assurance of future performance if the Successful Bidder is not the Stalking Horse Bidder (each, an "Auction Results Objection") may be made. Any Auction Results Objection must be served on (A) counsel for the Debtors and (B) the Successful Bidder(s) and its counsel, if any (collectively, the "Auction Results Objection Recipients," and together with the Cure Objection Recipients, the "Objection Recipients"), so as to be received at or prior to the Sale Hearing (the "Auction Results Objection Deadline"); provided, however, that the Cure Objection Deadline shall not be extended.

(f)   Any party failing to timely file an objection to (i) the proposed Cure Cost, (ii) the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Assumption and Assignment Notice or a Supplemental Assumption and Assignment Notice, or (iii) the amendment of the Assigned Contracts and releases of the Causes of Action and other rights of recovery as set forth in this Assumption and Assignment Notice; is deemed to have consented to (A) such Cure Cost, (B) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), and (C) the related relief requested in the Motion. Such party shall be forever barred and estopped from objecting to the Cure Cost, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, or the related relief requested herein and in the Motion, whether applicable law excuses such Counterparty from accepting performance by, or rendering performance to, the Successful Bidder(s), and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder(s) with respect to such party's Assigned Contract or Additional Assigned Contract.

(g)   If a Cure Objection or Auction Results Objection, as applicable, filed by the Cure Objection Deadline or Auction Results Objection Deadline, as applicable, cannot otherwise be resolved by the parties prior to the Sale Hearing, such objections and all issues regarding the Cure Cost amount to be paid or the adequate assurance of future performance, as applicable, shall be

determined by the Court at the Sale Hearing, or at a later hearing on a date to be scheduled by the Debtors in their discretion, and in consultation with the Successful Bidder(s).

## II.    Additional Information

Unless otherwise provided in the Sale Order, the Debtors shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice may be obtained free of charge at the Debtors' Case Website, located at https://cases.stretto.com/vice/.

Dated: May [__], 2023          **SHEARMAN & STERLING LLP**
       New York, New York

                               *DRAFT*
                               Fredric Sosnick
                               William S. Holste
                               Jacob S. Mezei
                               599 Lexington Avenue
                               New York, NY  10022
                               Phone:   (212) 848-4000
                               Email:   fsosnick@shearman.com
                                        william.holste@shearman.com
                                        jacob.mezei@shearman.com

                               -and-

                               Ian E. Roberts (*pro hac vice* pending)
                               2601 Olive Street, 17th Floor
                               Dallas, TX  75201
                               Phone:   (214) 271-5777
                               Email:   ian.roberts@shearman.com

                               *Proposed Special Counsel to the Debtors and Debtors in Possession*

6

**<u>Exhibit A</u>**

**Assigned Contracts and Cure Costs**

# **EXHIBIT B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

~~SOUTHERN DISTRICT OF NEW YORK~~

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al., | Case No. 23-10738 (——JPM) |
| Debtors.[1] | (~~Joint Administration Requested~~Jointly Administered) |

**ORDER (I) ESTABLISHING BIDDING, NOTICING,**
**AND ASSUMPTION AND ASSIGNMENT PROCEDURES,**
**(II) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE**
**STALKING HORSE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated May 15, 2023 ~~(~~[ECF No. ~~— 16]~~] (the "Motion")[2] of the debtors

in possession (collectively, the "Debtors") in the above-captioned cases for entry of an order

(this "Order"), among other things:

    i.        authorizing and approving the Bidding Procedures, in connection with the sale or
sales of the Assets pursuant to section 363 of the Bankruptcy Code (the "Sale"),
including certain dates and deadlines thereunder for the Sale process;

---

[1]    The ~~last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors~~Debtors in these chapter 11 cases, ~~a complete list of the debtor entities and~~along with the last four digits of ~~their federal~~each Debtor's tax identification ~~numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at~~ ~~https://https://cases.stretto.com/vice/~~number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

ii.    authorizing and approving the Debtors entry into ~~the~~ that Asset and Equity Purchase Agreement, dated as of May 19, 2023 [ECF No. 58] (as may be amended or modified pursuant to the terms thereof, the "Stalking Horse Agreement");

iii.    approving the Expense Reimbursement;

iv.    authorizing and approving the form and manner of notice of the sale of the Assets, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "Sale Notice");

v.    approving procedures set forth in the Bidding Procedures Order (the "Assumption and Assignment Procedures") for the assumption, assumption and assignment, and rejection of certain executory contracts (the "Contracts") or unexpired leases (the "Leases"), and approving the form and manner of service of the notice regarding such assumption, assumption and assignment, or rejection of the Contracts and Leases to counterparties (each, a "Counterparty"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "Assumption and Assignment Notice"); and

vi.    granting related relief;

all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.) ("Reference M-431"); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein as set forth in the affidavit of service filed with respect thereto ~~([ECF No. ___)~~63]; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion, the First Day Declaration, and the Herlihy Declaration filed contemporaneously therewith; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and

upon the record of the Hearing; and the Court having determined that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and it appearing that the

relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and

all parties in interest; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.    <u>Jurisdiction and Venue</u>. Consideration of the Motion and the relief requested

therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

B.    <u>Statutory and Legal Predicates</u>. The statutory and legal predicates for the relief

requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, and 6006, Local Rules 6004-1, 6005-1, and 6006-1, and the Sale Guidelines.

C.    <u>Bidding Procedures</u>. The Debtors have articulated good and sufficient business

reasons for the Court to approve the Bidding Procedures. The Bidding Procedures are fair,

reasonable, and appropriate. The Bidding Procedures are reasonably designed to promote a

competitive and robust bidding process to generate the greatest level of interest in the Debtors'

business resulting in the highest or otherwise best offer. The Bidding Procedures comply with

the requirements of Local Rule 6004-1 and the Sale Guidelines.

D.    <u>Designation of Stalking Horse Bid</u>. The approval of the Stalking Horse Bidder as

a "stalking-horse" bidder and the Stalking Horse Agreement as a "stalking-horse" sale agreement

3

is in the best interests of the Debtors and the Debtors' estates and creditors, and the Debtors have demonstrated compelling and sound justifications for the relief sought hereunder. The Stalking Horse Agreement will enable the Debtors to secure a fair baseline price for the Assets at the Auction and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

E.      The Debtors and the Stalking Horse Bidder negotiated the Stalking Horse Agreement without collusion, in good faith, and from arm's-length bargaining positions. Neither party has engaged in any conduct that would cause or permit the agreement to be avoided under section 363(n) of the Bankruptcy Code.

F.      The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Debtors.

G.      The Expense Reimbursement is necessary and appropriate.

H.      Sale Notice. The Sale Notice attached hereto as **Exhibit 2** and the procedures with respect to such Sale Notice contain the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1 and comply in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

I.      Assumption and Assignment Procedures. The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures. The Assumption and Assignment Procedures, including the Assumption and Assignment Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate. The Assumption and

Assignment Procedures provide an adequate opportunity for all Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs. The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

J.      <u>Notice</u>. All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto. No further notice is required.

K.      <u>Relief is Warranted</u>. The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

L.      <u>Other Findings</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**NOW, AND THEREFORE, IT IS HEREBY ORDERED THAT**

1.      The Motion is GRANTED to the extent set forth herein.

## I.      **The Bidding Procedures**

2.      The Bidding Procedures, substantially in the form attached to this Order as **Exhibit 1**, are approved and incorporated into this Order by reference, as though fully set forth herein.  Accordingly, the failure to recite or reference any particular provision of the Bidding Procedures shall not diminish the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

## II.     **Important Dates and Deadlines**

3.      The Sale Hearing will commence on [**June 23], 2023**, at [**10:00 a.m.] (prevailing Eastern Time)**, before the Honorable John P. Mastando III of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408. The Sale Hearing may be accelerated if the Debtors make a Sale Acceleration Election in accordance with the Bidding Procedures (such accelerated hearing, the "Accelerated Sale Hearing"). Subject to the terms of the Bidding Procedures, the Debtors may, in their reasonable business judgment, (and subject to the terms of the Stalking Horse Agreement, to the extent such agreement remains in full force and effect), in consultation with the Consultation Parties and with the consent of the Successful Bidder(s), adjourn or reschedule any Sale Hearing or Accelerated Sale Hearing, as applicable, with notice to the Sale Notice Parties.

6

4.      <u>Sale Objection Deadline</u>. Any objections to the Sale (a "<u>Sale Objection</u>") by a Sale Notice Party must be made by **June 16, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Sale Objection Deadline</u>"). The Sale Objection Deadline may be extended by the Debtors with the consent of the Stalking Horse Bidder, the Senior Secured Parties, to the extent the Stalking Horse Agreement remains in full force and effect, and the Court.

5.      <u>Competitive Bidding</u>. The following dates and deadlines regarding competitive bidding are hereby established, in each case subject to extension in accordance with the Bidding Procedures and subject to the terms of the Stalking Horse Agreement, to the extent that such agreement remains in full force and effect:

(a)      <u>Bid Deadline</u>: **June ~~13~~20, 2023, at 4:00 p.m. (prevailing Eastern Time)**, the deadline by which all Qualified Bids must be actually received in writing by the Bid Notice Parties (the "<u>Bid Deadline</u>"); and

(b)      <u>Auction</u>: **June ~~16~~22, 2023, at 10:00 a.m. (prevailing Eastern Time)**, is the date and time the Auction, if one is needed, will be held at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, Lexington Ave, New York, NY 10022, or at such other time and location (including via remote video) as designated by the Debtors, in consultation with the Consultation Parties and providing notice to the Sale Notice Parties, and subject to the terms of the Bidding Procedures.

III.    **Stalking Horse Agreement**

6.      The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid, in each case, pursuant to the Bidding Procedures for all purposes.

7.      The Debtors are authorized to enter into the Stalking Horse Agreement as executed in the form attached to the Bidding Procedures Motion (or an amended form as may be agreed to between the Debtors and the Stalking Horse Bidder and filed with the Court prior to the entry of the Bidding Procedures Order).

8.      The Debtors are authorized to pay the Expense Reimbursement in cash or by wire transfer of immediately available funds in accordance with the terms of the Stalking Horse Agreement without further action or order by the Court.

9.      Notwithstanding anything to the contrary in this Order or any other order of this Court, the Stalking Horse Bidder shall not be required to file or serve a proof of claim with respect to claims arising under or in connection with the Stalking Horse Agreement, and no bar date shall be imposed with respect to such claims.

10.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, (a) the right of any party to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in this Order shall be construed as a waiver of, or a finding that any credit bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in this Order shall prejudice any party in interest's rights to object to a credit bid on any basis on or prior to the Sale Objection Deadline or any other party's right to oppose such objection.

IV.     **Sale Notice Procedures**

11.    10. The Sale Notice Procedures, substantially in the form set forth in the Sale Notice attached to this Order as **Exhibit 2**, are approved. The Debtors are authorized to implement the Sale Notice Procedures as set forth in the Bidding Procedures Motion, the Bidding Procedures, and the Sale Notice.

**V.**      **Assumption and Assignment Procedures**

12.    ~~11.~~ The (a) Assumption and Assignment Procedures, as set forth in the Bidding Procedures, and (b) the Assumption and Assignment Notice in the form attached to this Order as **Exhibit 3**, are approved.

13.    ~~12.~~ The Assumption and Assignment Procedures shall govern the assumption or assumption and assignment of all of the Debtors' Contracts and Leases to be assumed or assumed and assigned in connection with the Sale, subject to the payment of any amounts necessary to cure any defaults arising under any such Contract or Lease (the "Cure Costs").

14.    The Debtors and Cigna Health and Life Insurance Company ("Cigna") are parties to an Administrative Services Only Agreement and a Stop Loss Policy, Account Number 3340558, that facilitate the Debtors' self-funded medical, dental, and pharmaceutical benefits, and a Group Medical, Emergency Medical Evacuation and Repatriation, Dental and Vision Insurance Policy, Account Number 08947A, (collectively, the "Cigna Employee Benefits Agreements"). Notwithstanding anything in this Order to the contrary, unless Cigna and the Debtors agree otherwise, the Debtors shall provide to Cigna, through their counsel of record, written notice of Debtors' irrevocable (subject to closing of the proposed Sale) decision as to whether or not the Debtors propose to assume and assign the Cigna Employee Benefits Agreements to the Successful Bidder as part of the proposed Sale, (i) in the case of the Stalking Horse Bidder, no later than three days prior to the Sale Hearing and (ii) in the case where another bidder is the Successful Bidder following the Auction, no later than two hours prior to the commencement of the Sale Hearing.

**VI.**      **Related Relief**

15.    13. The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

16.    14. All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Debtors' Assets during the sale process, including at the Auctions, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale; (b) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the Bidding and Auction Process, the Auctions, and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

17.    15. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

18.    16. Prior to mailing and publishing the Sale Notice and the Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other

information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

19.    ~~17.~~ To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

20.    ~~18.~~ The Debtors are authorized to take all actions reasonably necessary or appropriate to effectuate the relief granted in this Order.

21.    ~~19.~~ The Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2023
        New York, New York

_____
UNITED    STATES    BANKRUPTCY
JUDGE

12

## **Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

~~SOUTHERN DISTRICT OF NEW YORK~~

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al., | Case No. 23-10738 (——JPM) |
| Debtors.[1] | (~~Joint Administration Requested~~Jointly Administered) |

**BIDDING PROCEDURES**

On May 15, 2023, Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [__], 2023, the Unites States Bankruptcy Court for the Southern District of New York (the "Court") entered an order ~~([ECF No. [__])]~~ (the "Bidding Procedures Order")[2] which, among other things, authorized (a) the Debtors to solicit bids for a sale in accordance with the Bidding Procedures outlined herein and (b) the Debtors' entry into a purchase and sale agreement (as may be amended, supplemented, or otherwise modified from time to time, the "Stalking Horse Agreement") with one or more entities (or their designees) formed in a manner

---

[1]   The ~~last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to the large number of debtors~~Debtors in these chapter 11 cases, ~~a complete list of the debtor entities and~~along with the last four digits of ~~their federal~~each Debtor's tax identification ~~numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at~~ ~~https://https://cases.stretto.com/vice/~~number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A);  Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]   Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in the Bidding Procedures Order or the Motion requesting the relief granted therein, as applicable.

acceptable to the Senior Secured Parties in their sole discretion (the "Stalking Horse Bidder") for the sale of the Assets, free and clear of any and all liens, encumbrances, claims, and other interests, pursuant to which the Stalking Horse Bidder has committed to provide aggregate consideration consisting of (collectively, the "Stalking Horse Bid"): (i) a credit bid of $225 million pursuant to Section 363(k) of title 11 of the United States Code (the "Bankruptcy Code") against certain obligations owed by the Debtors under the Pre-Petition Senior Secured Credit Agreement and the DIP Credit Agreement as of the Closing (the "Credit Bid"), with the Credit Bid allocated *first*, to payment of any such obligations under the DIP Credit Agreement until paid in full, and *second*, to payment of any such obligations under the Pre-Petition Senior Secured Credit Agreement as of the closing of the Sale process (the "Closing") ~~and~~, (ii) the assumption of the Assumed Liabilities ~~in full satisfaction of the obligations under the Prepetition Senior Secured Credit Agreement~~, and (iii) the payment of the Cure Costs; ***provided, however,*** notwithstanding anything to the contrary contained herein or in the Bidding Procedures Order, (a) the right of any party to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in these Bidding Procedures shall be construed as a waiver of, or a finding that any credit bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in these Bidding Procedures  shall prejudice any party in interest's rights to object to a credit bid on any basis on or prior to the Sale Objection Deadline or any other party's right to oppose such objection.  Pursuant to the Bidding Procedures Order and these Bidding Procedures, the Stalking Horse Bid is subject to higher or better offers, the outcome of the Auction and the approval of the Court.

## Description of the Assets

The Debtors seek to sell substantially all of their assets (including the Debtors' intellectual property, certain customer and vendor contracts, accounts receivable and goodwill) and assign certain contracts material to the operation of the Debtors' businesses (collectively, the "Assets").

The Debtors will consider bids (including bids from multiple bidders and multiple bids submitted by the same bidder) that are made for either:

(a)    *VICE* Media Group – a diversified content powerhouse comprised of all of the *VICE* business segments and all *VICE* Assets;

(b)    one or more of the following business segments:

- *VICE* Publishing – an award-winning global digital content business, which publishes content through its portfolio of brands;

- Refinery29, Inc. – a digital media and entertainment company focused on a female audience; or

(c)    Any combination of Assets or business segments (the "Business Segments") that comprise *VICE* Media Group.

2

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment bankers, PJT Partners LP, 280 Park Avenue, New York, New York  (Attn: Robert Murphy (murphy@pjtpartners.com), Emanuele Antonio Pascale (emanuele.antonio.pascale@pjtpartners.com)); and LionTree LLC, 745 5th Ave, New York, NY 10151 (Attn: Ben Braun (bbraun@liontree.com), Faris Chehabi (fchehabi@liontree.com)).

**Important Dates and Deadlines**

| Date | Deadline |
|------|----------|
|      |          |

---

[3] The Debtors will file and serve the Sale Notice and Assumption and Assignment Notice on May 30, 2023, or as soon as practicable after entry of the Bidding Procedures Order.

[4] Subject to the convenience and availability of the Court.

3

| | |
|---|---|
| ~~Wednesday, May 17, 2023~~ | ~~File Final Stalking Horse Agreement~~ |
| ~~Friday~~Tuesday, May ~~26~~30, 2023, at ~~10:00 a.m~~11:00 a.m. (Eastern Time) | Hearing to consider entry of the Bidding Procedures Order |
| ~~Friday~~Tuesday, May ~~26~~30, 2023[3] | File Sale Notice and Assumption and Assignment Notice |
| ~~Monday~~Friday, June ~~12~~16, 2023, at 4:00 p.m. (Eastern Time) | Cure Objection Deadline ~~to object to the assumption and assignment of an executory contract or unexpired lease, as to the proposed cure amount.~~ |
| **Friday, June 16, 2023, at 4:00 p.m. (Eastern Time)** | Sale Objection Deadline |
| **Tuesday, June ~~13~~20, 2023, at 4:00 p.m. (Eastern Time)** | Bid Deadline |
| **Wednesday, June ~~14~~21, 2023, at 4:00 p.m. (Eastern Time)** | Qualified Bid Designation Date |
| **~~Friday~~Thursday, June ~~16~~22, 2023, at 10:00 a.m. (Eastern Time)** | Auction to be held at the New York offices of Shearman & Sterling LLP |
| **Friday, [June ~~16~~23], 2023, at ~~4:00 p.m.~~[10:00 a.m.] (Eastern Time)[4]** | ~~Deadline to object to the proposed Sale ("Sale Objection Deadline"), including any objection to the sale of the Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order.~~Sale Hearing |
| ~~Friday, [June 23, 2023], at [10:00 a.m.] (Eastern Time)[1]~~ | ~~Sale Hearing (unless accelerated in the event no Qualified Bids are received)~~ |
| **Friday, July 7, 2023** | Closing |

[3] The Debtors will file and serve the Sale Notice and Assumption and Assignment Notice on May 30, 2023, or as soon as practicable after entry of the Bidding Procedures Order.
[4] Subject to the convenience and availability of the Court.
[1] ~~Subject to the convenience and availability of the Court.~~

4

**Noticing**

Consultation Parties

      Subject to terms of these Bidding Procedures, the Debtors shall consult in good faith with counsel to (each of the following parties to the extent applicable, including such party's advisors, a "Consultation Party"):

(a)        any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Creditors' Committee"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn:  Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)); and

(b)        the Senior Secured Parties, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer).

      Notwithstanding the ~~forgoing~~foregoing, the consultation rights afforded herein: (i) shall not limit the Debtors' discretion in any way in the evaluation of bids, compliance with these procedures, and other matters at the Auction; (ii) shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment; and (iii) otherwise limit the Debtors' reservation of rights in respect of their fiduciary obligations including as described herein.

      If a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any confidential information regarding the sale of the Assets to such member.

Bid Notice Parties

      All bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"):

(a)        the Debtors, c/o *VICE*, 49 S 2nd St, Brooklyn, NY 11249 (Attn: Maria Harris (maria.harris@vice.com));

(b)        the Debtors' counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn:  Kyle J. Ortiz (kortiz@teamtogut.com) and Brian F. Moore (bmoore@teamtogut.com)) and special counsel for the Debtors, Shearman & Sterling LLP 599, Lexington Avenue, Lexington Ave, New York, NY 10022 (Attn:  Fredric  Sosnick  (fsosnick@shearman.com),  Christopher  Forrester (chris.forrester@shearman.com)  and  Ian  E.  Roberts (ian.roberts@shearman.com));

(c)    the Debtors' investment bankers, PJT Partners, LP 280 Park Avenue, New York, New York 10017 (Attn: Robert Murphy (murphy@pjtpartners.com), Emanuele Antonio Pascale (emanuele.antonio.pascale@pjtpartners.com)); and LionTree LLC, 745 5th Ave, New York, NY 10151 (Attn: Ben Braun (bbraun@liontree.com), Faris Chehabi (fchehabi@liontree.com))~~.~~; and

(d)    the Committee's counsel, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)).

<u>Sale Notice Parties</u>

Information that must be provided to the "<u>Sale Notice Parties</u>" under these Bidding Procedures must be provided to the following parties:

(a)    the Consultation Parties ~~(as applicable)~~;

(b)    all persons and entities, known by the Debtors and their advisors, to have expressed an interest in a transaction with respect to any of the Debtors' Assets during the past twelve (12) months (for whom identifying information and addresses are available to the Debtors);

(c)    all persons and entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in any Asset (for whom identifying information and addresses are available to the Debtors), including all known holders of claims and all creditors prior to the date of entry of the Bidding Procedures Order;

(d)    all parties to litigation with the Debtors that are known as of the date of entry of the Bidding Procedures Order, and/or their counsel;

(e)    all Counterparties to Assigned Contracts and Leases under the applicable proposed Sale;

(f)    any Governmental Authority known to have a claim in these Chapter 11 Cases;

(g)    the United States Attorney for the Southern District of New York;

(h)    the Office of the Attorney General in each state which the Debtors operate;

(i)    the Office of the Secretary of State in each state in which the Debtors operate or are organized;

(j)     all of the multiemployer pension plans to which any of the Debtors is a contributing employer and all of the single employer defined benefit plans to which any Debtor is a contributor;

(k)     the Federal Trade Commission and other applicable regulatory agencies;

(l)     the United States Attorney General/Antitrust Division of Department of Justice;

(m)     all of the Debtors' known creditors and contract counterparties (for whom identifying information and addresses are available to the Debtors); and

(n)     all other Persons directed by the Court (for whom identifying information and addresses are available to the Debtors).

<u>Objection Recipients</u>

All Sale Objections, Cure Objections, and Auction Result Objections (each as defined below), each as further discussed in the Bidding Procedures Order, shall be filed with the Court by the applicable objection deadline and served on the following parties (collectively, the "<u>Objection Recipients</u>"):

(a)     the Bid Notice Parties;

(b)     entities on the Master Service List (which may be obtained at the Debtors' case management website at https://cases.stretto.com/vice/); and

(c)     counsel to the Stalking Horse Bidder.

## **Notice Procedures**

### **Sale Notice Procedures**

The Debtors will provide actual notice of the Sale to known parties in interest (*i.e.*, the Sale Notice Parties) as well as publication and other notice to unknown parties (together, the "<u>Sale Notice Procedures</u>"). The Sale Notice Procedures provide for the following:

(a)     <u>Sale Notice</u>**.** On or before the date that is three business days after entry of the Bidding Procedures Order, the Debtors shall file with the Court, serve on the Sale Notice Parties by first class U.S. mail, postage prepaid, or electronic mail, and cause to be published on the dedicated website hosted and maintained by Stretto, Inc., the Debtors' claims and noticing agent in the Chapter 11 Cases (the "<u>Noticing Agent</u>"), located at https://cases.stretto.com/vice/ (such website, the "<u>Case Website</u>"), the notice of the Sale, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "<u>Sale Notice</u>").

7

(b)     The Sale Notice will (a) include a general description of the Assets for sale and Business Segments or Assets for which Bids will be considered; (b) prominently display the date, time, and place (as applicable) of the (i) Accelerated Sale Hearing, (ii) Bid Deadline, (iii) Auction and (iv) Sale Hearing; and (c) prominently display the deadlines and procedures for filing a Sale Objection.

**Assumption and Assignment Notice Procedures**

The Debtors developed procedures (such procedures, the "Assumption and Assignment Procedures") to facilitate the fair and orderly assumption, assumption and assignment, and rejection of certain executory contracts (the "Contracts") or unexpired leases (the "Leases") as may be designated in the Stalking Horse Agreement or any other Successful Bid(s) (as defined below).

The Assumption and Assignment Procedures provide for notice regarding such assumption, assumption and assignment, or rejection of the Contracts and Leases to Counterparties, and the Debtors' calculation of potential cure costs that would arise in connection with any proposed assumption and assignment (such notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3**, the "Assumption and Assignment Notice"). The Debtors shall provide the Assumption and Assignment Notice in accordance with these Bidding Procedures and the Bidding Procedures Order.

Assumption and Assignment Notice. ~~As~~On May 30, 2023, or as soon as practicable following entry of the Bidding Procedures Order, ~~but in no event later than May 26, 2023,~~ the Debtors will file with the Court and serve on the Sale Notice Parties, including each Counterparty, the Assumption and Assignment Notice and will cause the same to be published on the Case Website. The Assumption and Assignment Notice will (a) identify the Assigned Contracts initially designated by the Stalking Horse Bidder for potential assumption and assignment to the Stalking Horse Bidder (the "Initial Assumed Contracts"); (b) list the Debtors' good faith calculation of the Cure Costs with respect to each Initial Assumed Contract; (c) expressly state that assumption or assignment of any Assigned Contract is not guaranteed and is subject to Court approval; (d) direct the non-Debtor Counterparty to relevant publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder; (e) prominently display the deadline to file a Cure Objection and an Adequate Assurance Objection (each as hereinafter defined); and (f) prominently display the dates, times, and location of the Sale Hearings.

Designation of Contracts and Leases. Pursuant to the terms of the Stalking Horse Agreement, the Stalking Horse Bidder shall have the right, at any time prior to ~~one~~five (~~1~~5) business ~~day~~days prior to Closing to designate additional Assigned Contracts for proposed assumption and assignment to the Stalking Horse Bidder (each, a "Supplemental Contract") or at any time prior to one (1) business day prior to Closing to remove Contracts from the list of Assigned Contracts from proposed assumption and assignment (each, a "Removed Contract"). The Debtors shall, as soon as reasonably practicable after the Buyer's designation of any Supplemental Contracts or any Removed Contracts file with the Court, serve by overnight

delivery on all applicable Counterparties, and cause to be published on the Case Website, a notice of proposed assumption and assignment of the Supplemental Contracts (a <u>Supplemental Assumption and Assignment Notice</u>") and/or removal of the Removed Contracts, which shall (A) expressly state that assumption or assignment of the Supplemental Contracts is not guaranteed and subject to Court approval and removal of the Removed Contracts does not constitute a rejection by the Debtors of such Contract, and (B) direct the non-Debtor Counterparty to a Supplemental Contract to relevant publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder; and (C) prominently display the deadline to file an Adequate Assurance Objection with respect to a Supplemental Contract.

<u>Auction Results</u>. The Debtors will, within one (1) calendar day after the conclusion of the Auction, or as soon as practicable thereafter, file with the Court, serve on the Sale Notice Parties (including each Counterparty to an Assigned Contract in a Successful Bid), a Notice of Auction Results, which shall (1) identify the Successful Bidders and Back-Up Bidders; (2) list all Assigned Contracts in the Successful Bids and Back-Up Bids; (3) identify any known proposed assignee(s) of Assigned Contracts (if different from the applicable Successful Bidder); and (4) set forth the deadlines and procedures for filing Adequate Assurance Objections in response ~~of~~to the Notice of Auction Results.

<u>Cure Objections</u>.

     i.     <u>Cure Objection Deadlines</u>. Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding defaults then existing under such Contract or Lease (a "<u>Cure Objection</u>"), which must (1) be in writing; (2) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (3) state, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (4) include any appropriate documentation in support thereof, by no later than the applicable Sale Objection Deadline, which shall be at least seven (7) calendar days after service of such notice, or less in the case of a Supplemental Assumption and Assignment Notice to the extent necessary.

     ii.     <u>Resolution of Cure Objections</u>. If a timely Cure Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled.

     iii.     <u>Adjourned Cure Objections</u>. If a timely Cure Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing; provided that a Cure

9

Objection may, at the Debtors' discretion (with the consent of the Stalking Horse Bidder, or, if an Auction is held, the Successful Bidder), be adjourned to a subsequent hearing if, pending resolution of such Cure Objection (an "Adjourned Cure Objection"), the Debtors maintain a cash reserve (a "Cure Cost Reserve") equal to the lesser of (1) the amount the objecting Counterparty has asserted to be required to cure the asserted defaults under the applicable Assigned Contract and (2) such other cash reserve amount as may be ordered by the Court, until a Cure Cost amount is agreed to by the parties or determined by the Court; provided that if the Debtors maintain a letter of credit or similar security deposit for the Debtors' obligations under an Assigned Contract to a Counterparty asserting a Cure Objection, the Debtors shall not be required to fund a Cure Cost Reserve to the extent of the existing amounts available under such letter of credit or other security deposit maintained by such Counterparty. Notwithstanding the existence of an Adjourned Cure Objection, the Assigned Contract may be deemed assumed and assigned to the Stalking Horse Bidder, or, if an Auction is held, the Successful Bidder, as of the applicable Closing Date if the Debtors maintain a Cure Cost Reserve.

iv.    Failure to File Timely Cure Objection. If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease. The Cure Costs set forth in each Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

Adequate Assurance Information. Each Bid (other than the Stalking Horse Bid) must contain such financial and other information that allows the Debtors, after consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the applicable Sale, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to the Potential Bidder (the "Adequate Assurance Information").

Adequate Assurance Objections.

10

i.  <u>Adequate Assurance Objection Deadline</u>. Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is a Successful Bidder's (including the Stalking Horse Bidder's) and/or any of their known proposed assignees' (if different from the Successful Bidder) proposed form of adequate assurance of future performance with respect to such Contract or Lease (an "<u>Adequate Assurance Objection</u>"), shall file with the Court and serve on the Objection Recipients, including the applicable Successful Bidder and any known proposed assignee of such contract or lease (if different from the Successful Bidder), its Adequate Assurance Objection, which must (1) be in writing; (2) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (3) state, with specificity, the legal and factual bases thereof; (4) include any appropriate documentation in support thereof, by no later than the applicable deadline set forth in the applicable notice, which shall be at least seven (7) calendar days after the filing of such notice, or less in the case of a Supplemental Assumption and Assignment Notice to the extent necessary.

ii. <u>Resolution of Adequate Assurance Objections</u>. If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled.

iii. <u>Failure to Timely File Adequate Assurance Objection</u>. If a Counterparty fails to file with the Court and serve on the Objection Recipients, including the applicable Successful Bidder and any known proposed assignee of the Contract or Lease (if different from the Successful Bidder), a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the relevant Contract or Lease. The Successful Bidder and/or its known proposed assignee of the Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the applicable Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

<u>Reservation of Rights</u>. The inclusion of a Contract or Lease or Cure Costs with respect thereto on an Assumption and Assignment Notice or the Notice of Auction Results shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidders, or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors and the Stalking Horse Bidder reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on

11

an Assumption and Assignment Notice and Notice of Auction Results. The Debtors' inclusion of any Contract or Lease on the Assumption and Assignment Notice or the Notice of Auction Results shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.

## **Marketing Process**

Access to Diligence

To participate in the diligence process and receive access to the Debtors' electronic data room (the "Data Room") and the confidential information memorandum relating to the Sale (the "CIM"), a party must submit to the Debtors or their advisors:

(a)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors; and

An interested party shall be a "Potential Bidder" if the Debtors determine in their reasonable discretion, after consultation with the Consultation Parties, that an interested party has satisfied the above requirements. As soon as practicable, the Debtors will deliver to such Potential Bidder (i) an information package containing information and financial data with respect to the Assets in which such Potential Bidder has expressed an interest and (ii) access to the Data Room.

Once ~~an interested party is deemed~~ a Potential Bidder, is deemed to be a Qualified Bidder its identity may, in the Debtors' discretion, be disclosed to the Stalking Horse Bidder. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

Until the Bid Deadline (as defined below), the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Potential Bidders. All due diligence requests shall be directed to Debtors' investment bankers, PJT Partners LP and LionTree LLC.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Business Segments or Assets to any person or entity who is not a Potential Bidder or a Consultation Party or who does not comply with the participation requirements set forth above, ***provided, however***, that the Debtors shall consult with the Consultation Parties before refusing to furnish information to any party.

12

## **Auction Qualification Procedures**

Bid Deadline

A Potential Bidder that desires to make a bid on one or more of the Business Segments or Assets shall deliver electronic copies of its bid in both PDF and MS-WORD format so as to be received no later than **June ~~13~~20, 2023 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline"); provided that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Potential Bidders, without further order of the Court, subject to providing notice to the Stalking Horse Bidder, all Potential Bidders, and the Consultation Parties.

Bids should be submitted by email to the Bid Notice Parties.

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction**.

Communications with Potential Bidders

There must be no communications between and amongst Potential Bidders unless the Debtors have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to disqualify any Potential Bidder(s) that have communications between and amongst themselves.

Form and Content of Qualified Bids

A "Bid" as used herein is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a Sale), and any other party that will be participating in connection with the bid or the Sale, and includes, at a minimum, the following information:

(a)     Proposed Business Segments or Assets and Valuation. Each Bid must clearly identify and list the Assets and liabilities that the Potential Bidder seeks to acquire, whether individually or in combination. If a Bid is for one or more Business Segments, such Bid must identify, on a per Business Segment basis, the valuations, in U.S. dollars, that the Potential Bidder associates with each of those Business Segments, and a description of any significant assumptions on which such valuations are based (including a separate identification of the cash and non-cash components of the valuation). To the extent the Bid proposes to purchase particular Assets, such as intellectual property, the Bid shall clearly identify the value, in U.S. dollars, associated with such Assets.

(b)     Purchase Price. Each Bid must specify the purchase price for the Assets proposed to be acquired. In addition, each Bid must include a sources and uses table for the

13

proposed Sale that shows the portion of the purchase price to be funded with cash on hand, the portion to be funded with cash from committed financing sources, and the portion to be funded with non-cash consideration.

(c)    <u>Proposed APA</u>. Each Bid must include a copy of an asset purchase agreement reflecting the terms and conditions of the Bid, which agreement must be marked to show any proposed amendments and modifications to the form of purchase agreement posted by the Debtors in the Data Room (the "<u>Proposed APA</u>").

(d)    <u>Unconditional Offer; No Financial Contingency</u>. A statement that the Bid is formal, binding, and unconditional (except for those conditions expressly set forth in the applicable Proposed APA), is not subject to any due diligence or financing contingency and is irrevocable until the first business day following the closing of the proposed Sale, except as otherwise provided in these Bidding Procedures. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the Sale set forth in its Bid, each Bid must include committed financing documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's purchase price and other obligations under its Bid.

(e)    <u>Cash Offer or Non-Cash Consideration</u>. A statement confirming that the Bid is based on an cash offer, and, in the case of a bid for all of the Assets included in the Stalking Horse Agreement, meets the Minimum Overbid Amount (as defined herein). In the case of Bids that do not constitute all-cash offers, a detailed description of the amount of non-cash consideration offered.

(f)    <u>Employee and Labor Terms</u>. A statement of proposed terms for unionized and nonunionized employees, which shall include, alternatively: (i) a statement that the Potential Bidder will assume the Debtors' affected collective bargaining agreements (the "<u>Affected Labor Agreements</u>") without modification; (ii) if the Potential Bidder will not assume the Affected Labor Agreements without modification, a statement that the Potential Bidder will enter into good faith negotiations with each affected labor union (the "<u>Affected Unions</u>") to enter into modified labor agreements (each, a "<u>Modified Labor Agreement</u>"), including a term sheet, which shall be attached to the Potential Bidder's Proposed APA, proposing post-closing work rules and conditions to be offered to unionized employees; or (iii) a statement that the Potential Bidder does not intend to assume any Affected Labor Agreements; provided that such statement shall include whether or not the Potential Bidder intends to offer employment to any of the Debtors' employees following a closing of an applicable Sale. Such statement shall also include an acknowledgment of the requirements of sections 1113 and 1114 of the Bankruptcy Code and an agreement to use good faith reasonable best efforts to cooperate with the Debtors in ensuring compliance with any applicable provisions thereof in the event that mutually satisfactory Modified Labor

14

Agreements have not been entered into between the Potential Bidder and the Affected Unions prior to the closing of a sale contemplated by these Bidding Procedures.

(g)    Pension Plans. Each Bid must state whether or not the Potential Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with the Debtors' multi-employer pension plan (the "Pension Plan"). If the Potential Bidder does not intend to assume sponsorship or liabilities of the Pension Plan in full, each Bid must state whether the Potential Bidder intends to assume the assets and liabilities of the Pension Plan relating to plan participants associated with the Business Segments in the Bid.

(h)    Required Approvals. A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable ("HSR Filings"), and any other Antitrust Law (as defined in the Stalking Horse Agreement), and pay the fees associated with such filings and (ii) of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the business and the Business Segments included in its Bid from and after closing the applicable Sale and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtor's legal counsel to discuss and explain Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

(i)    No Entitlement to Expense Reimbursement or Other Amounts. A statement that the Bid does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

(j)    Adequate Assurance Information. Each Bid must contain such financial and other information that allows the Debtors, after consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the applicable Sale, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to the Potential Bidder (the "Adequate Assurance Information").

(k)    Designation of Contracts and Leases. Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing the applicable Sale.

15

(l)     <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

   (i)     a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable Assets prior to submitting its Bid;

   (ii)    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Business Segments and/or Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed APA ultimately accepted and executed by the Debtors;

   (iii)   a statement that the Potential Bidder agrees to serve as Back-Up Bidder (as defined herein), if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Assets, until the Back-Up Termination Date (as defined herein);

   (iv)    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

   (v)     a statement that all proof of financial ability to consummate a Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

   (vi)    A statement that the Potential Bidder agrees to be bound by the terms of these Bidding Procedures.

(m)    <u>Other Requirements</u>. A Potential Bidder must also accompany its Bid with:

   (i)     a Deposit (as defined herein);

   (ii)    the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Potential Bidder;

   (iii)   written evidence of available cash, a commitment for financing (not subject to any conditions), or such other evidence of ability to consummate the transaction contemplated by the applicable Proposed APA, as acceptable in the Debtors' business judgment and following

16

consultation with the Consultation Parties, including a description of each investor and any additional party or parties investing in the transaction included in the applicable bid and such party's financial position;

(iv)    a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Proposed APA;

(v)    a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable Antitrust Laws and other applicable regulatory requirements; and

(vi)    if the Bid includes an asset purchase agreement that is not executed, a signed statement that such Bid is irrevocable until the first business day following the closing or closings of the applicable Sale, and to serve as a Back-Up Bidder.

The submission of a Bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.

For the avoidance of doubt, the Stalking Horse Bid as of the hearing on these Bidding Procedures shall be deemed to be a Qualified Bid.

Deposit

To qualify as a Qualified Bid (as defined herein), each Bid (other than the Stalking Horse Bid) must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the proposed purchase price (the "Deposit"), to be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Potential Bidders (the "Escrow Agreement").

To the extent the Business Segments or Assets included in a Qualified Bid are modified at or prior to the Auction, the Qualified Bidder must adjust its Deposit so that it equals ten percent (10%) of the purchase price proposed to be paid for each Business Segment or Asset.

<u>Review of Bids and Designation of Qualified Bidders</u>

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all Bids to the Consultation Parties. A bid received for the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth in the preceding section will be considered a "<u>Qualified Bid</u>," and the Stalking Horse Bidder, and any bidder that submits a Qualified Bid (including the Stalking Horse Bid) will be considered a "<u>Qualified Bidder</u>."

The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding section as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid.

The Debtors will evaluate timely submitted bids, in consultation with the Consultation Parties, and may take into consideration the following non-binding factors:

(a)     the amount of the purchase price set forth in the Bid;

(b)     the Assets included in or excluded from the Bid;

(c)     the value to be provided to the Debtors under the Bid for the Business Segments and/or Assets included therein (individually and in the aggregate), including the net economic effect upon the Debtors' estates after the payment of any applicable Termination Payment;

(d)     any benefit to the Debtors' bankruptcy estates from any assumption or waiver of liabilities, including any liabilities under the Pension Plans and the assumption of the sponsorship of all, any, or a portion of the Pension Plans;

(e)     the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, cost to the Debtors' bankruptcy estates to pursue such transaction, and required governmental or other approvals;

(f)     the impact on employees, employee claims against the Debtors, Affected Labor Agreements, and whether the Potential Bidder has reached an agreement with the Affected Unions; and

(g)     any other factors the Debtors may reasonably deem relevant, in consultation with the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, will make a determination regarding which bids qualify as Qualified Bids, and will notify Potential Bidders whether they have been selected as Qualified Bidders by no later than **June ~~14~~21, 2023, at 4:00 p.m. (Eastern Time**) with respect to each bid or combination of bids (the "Qualified Bid Designation Date").

The Debtors reserve the right to work with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. If a Bid is received and, in the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the Bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not the Bid is a Qualified Bid.

The Debtors, after consultation with the Consultation Parties, will have the right to determine that a Bid is not a Qualified Bid if any of the following conditions are satisfied:

(a)    a Potential Bidder has failed to comply with reasonable requests for additional information from the Debtors; or

(b)    the terms of the Bid are burdensome or conditional in view of the proposed purchase price or, in the case of a Bid or combination of Bids for the Assets in the Stalking Horse Agreement, are materially more burdensome or conditional than the terms of the applicable Stalking Horse Agreement and are not offset by a material increase in purchase price, which determination (as made by the Debtors in consultation with the Consultation Parties).

The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

## **Pre-Auction Procedures**

### Determination and Announcement of Baseline Bids

The Debtors, after consulting with the Consultation Parties, shall make a determination regarding:

(a)    the Assets and/or Business Segments to be auctioned by the Debtors (each, an "Auction Package");

(b)    the highest or best Qualified Bid (or collection of Qualified Bids) determined for each Auction Package (each, a "Baseline Bid," and such bidder or group of bidders, a "Baseline Bidder") to serve as the starting point at the Auction for such Auction Package;

(c)    which Bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid; provided that the Debtors may permit a Qualified Bidder to bid on any other Auction Package; and

19

(d)      the time and place for the Auction of each Auction Package.

By the applicable Qualified Bid Designation Date, the Debtors shall file notice of the foregoing on the Court's docket and publish such notice on the Stretto Website and in the Data Room. As soon as practicable, but no later than two (2) days prior to the Auction, the Debtors will
provide copies of each Baseline Bid to the Consultation Parties.

Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder.

Without the written consent of the Debtors (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid remains binding as specified herein; provided that any Qualified Bid may be improved at the Auction as set forth herein.

Except as otherwise provided in the Stalking Horse Agreement, and after consultation with the Consultation Parties, Debtors are under no obligation to (i) select any Baseline Bid or (ii) conduct separate Auctions for any Business Segments, whether before or after selecting a Baseline Bid. Notwithstanding anything to the contrary contained herein, the Debtors may elect, in their reasonable discretion, and after consultation with the Consultation Parties, to adjourn any Auction.

<u>Failure to Receive Two or More Qualified Bids</u>

If no Qualified Bid for the Assets and/or any Business Segments, other than the applicable Stalking Horse Bid, is received by the Bid Deadline, or is the Qualified Bids received do not (in the aggregate) exceed the Stalking Horse Bid, the Debtors will not conduct the Auction, and shall file and serve a notice indicating that the Auction has been cancelled and that the applicable Stalking Horse Bidder is the sole Successful Bidder, and setting forth the date and time of the Sale Hearing.

Except as provided in the Stalking Horse Agreement, and after consultation with the Consultation Parties, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.

## Auction Procedures

If there are two or more Qualified Bids for an Auction Package, the Debtors may conduct one or more Auctions for such Auction Package, on dates to be announced, at the offices of Shearman & Sterling LLP 599 Lexington Avenue, Lexington Ave, New York, NY 10022 or such other time and place as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids.

Only a Qualified Bidder will be eligible to participate at an Auction, subject to such limitations as the Debtors may impose in good faith. Professionals and/or other representatives of the Consultation Parties will be permitted to attend and observe an Auction. At any Auction, Qualified Bidders (including the Stalking Horse Bidder) will be permitted to increase their bids. For each Baseline Bid, bidding will start at the purchase price and terms proposed in the applicable Baseline Bid and will proceed thereafter in increments to be announced (a "Minimum Overbid Amount"). The Minimum Overbid Amount for the Assets in the Stalking Horse Agreement, whether in one or a combination of Qualified Bids, shall be $150,000. The Debtors reserve the right to and may, after consultation with the Consultation Parties, increase or decrease the Minimum Overbid Amount at any time during the Auction for any Assets. The Stalking Horse Bidder is authorized to increase their respective bids at the Auction.

The Debtors may adopt rules, after consultation with the Consultation Parties, for an Auction at any time that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding and Auction Process and are not inconsistent with these Bidding Procedures. At the start of an Auction, the Debtors shall describe the terms of the applicable Baseline Bid. Any rules adopted by the Debtors will not unilaterally modify any of the terms of the Stalking Horse Agreement (as may be consensually modified at any Auction) without the consent of the Stalking Horse Bidder. Any rules developed by the Debtors will provide that all bids in a particular Auction will be made and received in one room, on an open basis, and all other bidders participating in that Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders participating in that Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine, in consultation with the Consultation Parties, to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order any bid that, in the Debtors' judgment, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale; or (iii) contrary to the best interests of the Debtors and their estates, except that if the Stalking Horse Bid is the only Qualified Bid, the foregoing provisions of this sentence will be inoperative. In doing so, the Debtors may take into account the factors set forth above regarding the form and content of Qualified Bids and the Debtors' review of bids. No attempt by the Debtors to reject a bid under this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under the Stalking Horse Agreement (as may be consensually modified at any Auction).

Prior to the conclusion of an Auction, the Debtors, after consultation with the Consultation Parties, will (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a Sale; (ii) determine the highest or best offer or collection of offers for an Auction Package (as applicable to each Auction Package, a "Successful Bid"); (iii) except as provided in the Stalking Horse Agreement, determine which Qualified Bid is the next highest or best bid for such Auction Package (as applicable to each Auction Package, the "Back-Up Bid"); and (iv) notify all Qualified Bidders participating in an Auction, prior to its conclusion, of the successful bidder for such Auction Package (the "Successful Bidder"), the amount and other material terms of the Successful Bid, and the identity of the party that submitted the Back-Up Bid for such Auction Package (the "Back-Up Bidder"); provided that the Stalking Horse Bidder shall not be required to serve as the Back-Up Bidder.

Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

**Post-Auction Process**

22

A Successful Bidder shall, within one (1) business day after the close of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid, which shall be in form and substance acceptable to the Debtors, in consultation with the Consultation Parties. Promptly following the receipt of such documentation, the Debtors shall file with the Court notice of the Successful Bid(s), the Successful Bidder(s), and, if applicable, the Back-Up Bid(s) and the Back-Up Bidder(s). The Successful Bid(s) may not be assigned to any party without the consent of the Debtors after consultation with the Consultation Parties.

The Back-Up Bid(s) shall remain open and irrevocable until the earliest to occur of (i) thirty days after the completion of the Auction, or such other date as may be provided for in a separate agreement with the Back-Up Bidder, (ii) the consummation of the transaction with the Successful Bidder, and (iii) the release of such bid by the Debtors (such date, the "Back-Up Bid Termination Date"). If the transaction with a Successful Bidder is terminated prior to the Back-Up Termination Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in connection with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## Treatment and Return of Deposits

Potential Bidders

Within three (3) business days after the Qualified Bid Designation Date, the Escrow Agent shall return to each Potential Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Potential Bidder's Deposit, plus any interest accrued thereon. Upon the authorized return of such Potential Bidder's Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

Qualified Bidders

The Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures, or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a joint written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

With the exception of the Deposit of a Successful Bidder and a Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Deposit, plus any interest accrued thereon, three (3) business days after the execution by the Successful Bidder and the Debtors of the documentation memorializing the Successful Bid, but in no event later than seven (7) business days after the conclusion of a Sale Hearing.

Back-Up Bidder

The Escrow Agent shall return a Back-Up Bidder's Deposit, plus any interest accrued thereon, within three (3) business days after the occurrence of the applicable Back-Up Bid Termination Date.

The Successful Bidder

The Deposit of a Successful Bidder shall be applied against the cash portion of the Purchase Price of such Successful Bidder upon the consummation of the transaction proposed in the applicable Successful Bid. For non-cash transactions, the Deposit shall be returned to the Successful Bidders three (3) Business Days following the closing of the Sale.

Joint Notice to Escrow Agent

The Debtors and, as applicable, the Potential Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent for the return of any Deposit to the extent such return is required by these Bidding Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Court.

24

**Consent to Jurisdiction and Authority to Condition to Bidding**

All Potential Bidders (including the Stalking Horse Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the applicable Sale, (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale, and (iii) consented to the entry of a final order or judgment in any way related to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**Reservation of Rights**

The Debtors reserve the right, in their discretion and business judgment, after consultation with the Consultation Parties, to alter or terminate these Bidding Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, excuse technical non-compliance by bidders other than the Stalking Horse, provide reasonable accommodations to the Stalking Horse Bidder or any Potential Bidder with respect to such terms, conditions, and deadlines of the Bidding and Auction Process to promote further bids by such bidders on any Business Segments or the Assets as a whole (including, without limitation, extending time deadlines as may be required for such Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with their previous respective HSR Filings or any other Antitrust Law) and/or to terminate discussions with any and all prospective acquirers and investors (except for the Successful Bidder) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Bidding Procedures and/or the Bidding Procedures Order; provided that the Debtors' exercise of their discretion in evaluating bids and administering the Bidding and Auction Process does not permit, and shall not be construed as permitting, the Debtors to materially deviate from the procedures, terms, conditions, and protections set forth in these Bidding Procedures and/or the Bidding Procedures Order.

**Fiduciary Matters**

Notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors or other governing body of a Debtor to take any action or to refrain from taking any action to the extent the board of directors or other governing body of such Debtor determines in good faith after consultation with counsel that continued performance under these Bidding Procedures or the Bidding Procedures Order (including taking any action or refraining from taking any action) would be inconsistent with the exercise of its fiduciary duties under applicable law.  For the avoidance of doubt, the Debtors' ability to conduct the Sale process and to consider or advance Alternative Proposals in a manner consistent with the foregoing shall not be impaired by anything in these Bidding Procedures or the Bidding Procedures Order.

**<u>Exhibit 2</u>**

**Form of Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
~~SOUTHERN DISTRICT OF NEW YORK~~ SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al.~~,~~. | Case No. 23-10738 (~~—~~JPM) |
| Debtors.[1] | (~~Joint Administration Requested~~Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND**
**SALE HEARING FOR THE SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 15, 2023, Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") the *Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse Agreement (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* [ECF No. ~~[___]~~16] (the "Motion"), among other things, approving certain bidding procedures (the "Bidding Procedures") in connection with the sale or sales of substantially all of the Debtors' assets (the "Assets") pursuant to section

---

[1]    The ~~last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors~~Debtors in these chapter 11 cases, ~~a complete list of the debtor entities and~~along with the last four digits of ~~their federal~~each Debtor's tax identification ~~numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at~~ ~~https://~~https://cases.stretto.com/vice/~~number, are:~~ Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A);  Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

363 of the Bankruptcy Code (the "Sale"), including certain dates and deadlines thereunder for the Sale process. [2]

On [__], 20222023, the Court, entered the Bidding Procedures Order [ECF No. __].

**The Bidding Procedures provide the following**:

I.     **Stalking Horse Bidder**. The Debtors ~~intend to enter into a purchase and sale agreement~~have entered into that Asset and Equity Purchase Agreement, dated as of May 19, 2023, with Vice Acquisition HoldCo, LLC (the "Buyer" or the "Stalking Horse Bidder"), ~~in the form attached to the Motion as Exhibit B (~~a copy of which was filed with the Court on May 19, 2023 at ECF No. 58 (as may be amended or modified pursuant to the terms thereof, the "Stalking Horse Agreement," and such bid memorialized therein, the "Stalking Horse Bid") for the sale of substantially all of the Debtors' Assets, free and clear of any and all liens, encumbrances, claims, and other interests (including, for the avoidance of doubt, any potential successor liability for any claims or causes of action of any kind against the Debtors and/or the Assets), pursuant to which the Stalking Horse Bidder has committed to provide aggregate consideration consisting of: (i) a credit bid of $225 million pursuant to Section 363(k) of title 11 of the United States Code (the "Bankruptcy Code") against certain obligations owed by the Debtors under the Pre-Petition Senior Secured Credit Agreement and the DIP Credit Agreement as of the Closing (the "Credit Bid"), with the Credit Bid allocated *first*, to payment of any such obligations under the DIP Credit Agreement until paid in full, and *second*, to payment of any such obligations under the Pre-Petition Senior Secured Credit Agreement as of the closing of the Sale process (the "Closing")~~ and~~, (ii) the assumption of the Assumed Liabilities ~~in full satisfaction of the obligations under the Prepetition Senior Secured Credit Agreement.~~, and (iii) the payment of the Cure Costs.  The Sale Order is expected to contain customary release and injunction provisions for the benefit of the Stalking Horse Bidder or other Successful Bidder, and each of their respective affiliates.

II.    **Description of the Assets**. The Debtors will consider bids (including bids from multiple bidders and multiple bids submitted by the same bidder) that are made for either:

(d)    *VICE* Media Group – a diversified content powerhouse comprised of all of the *VICE* business segments and all *VICE* Assets;

(e)    one or more of the following business segments:

- *VICE* Publishing – an award-winning global digital content business, which publishes content through its portfolio of brands;

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Bidding Procedures.

- Refinery29, Inc. – a digital media and entertainment company focused on a female audience; or

(f)     Any combination of Assets or business segments that comprise *VICE* Media Group.

## III.    Important Dates and Deadlines

(a)     **Bid Deadline**. **[ ]June 20**, 2023, at 4:00 p.m. (prevailing Eastern Time) is the deadline by which all Qualified Bids must be actually received in writing by the Bid Notice Parties (the "Bid Deadline").

(b)     **Sale Objection Deadline**. Parties must file any objections to the proposed Sale (such objections, the "Sale Objections") with the Court and serve such objections on the Objection Recipients (as defined below) by no later than **[ ] p.m4:00 p.m.** (prevailing Eastern Time) on **[ ]June 16**, 2023 (the "Sale Objection Deadline"). **By receiving this Sale Notice, you are subject to the Sale Objection Deadline as disclosed herein, unless extended by the Debtors or the Court.[3]**

(c)     **Auction**: If the Debtors conduct an Auction, the Auction will be conducted at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, Lexington Ave, New York, NY 10022 on **[ ]June 22**, 2023, at **[10:00] [a.m.]10:00 a.m. (prevailing Eastern Time)**, or at such other time and location (including via remote video) as designated by the Debtors. If the Debtors hold the Auction, the Debtors will, as soon as reasonably practicable after selecting the Successful Bid(s), file (but not serve) and publish on the Case Website a notice of the results of the Auction (such notice, the "Notice of Auction Results"). If a Successful Bidder at the Auction is not the Stalking Horse Bidder, objections solely related to the identity of such Successful Bidder(s), changes to the Stalking Horse Agreement, and adequate assurance of future performance must be ~~filed with the Court and served on the Objection Recipients so as to be received by 4:00 p.m. (prevailing Eastern Time) on the date that is two calendar days after the date that the Debtors file the Notice of Auction Results~~made at or prior to the Sale Hearing. The Notice of Auction Results will set forth the specific deadline and procedures for filing any such objections in response to the Notice of Auction Results.

(d)     **Sale Hearing**. Unless accelerated upon a Sale Acceleration Election (as defined in the Bidding Procedures) made by the Debtors, the Sale Hearing shall be held

---

[3]     In addition to service of this Sale Notice, the Debtors will provide publication notice to parties who are not currently known to the Debtors by publishing this Sale Notice in the national edition of *USA Today* and once in the *New York Times*.

before the Honorable [————]John P. Mastando III on [————June 23], **2023**, at
[————10:00 a.m.] **(prevailing Eastern Time)** at the United States Bankruptcy
Court for the Southern District of New York, One Bowling Green, New York,
New York 10004-1408.

## IV.    Procedures for Sale Objections

Sale Objections must be (a) be in writing; (b) comply with the Bankruptcy Code, the
Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Southern
District of New York; (c) state, with specificity, the legal and factual bases thereof; (d) include
any appropriate documentation in support thereof; and (f) be filed with the Court and served on
the following parties (the "Objection Recipients") by the Sale Objection Deadline: (i) the
Debtors, c/o *VICE*, 49 S 2nd St, Brooklyn, NY 11249 (Attn: Maria Harris
(maria.harris@vice.com)); (ii) the Debtors' counsel, Togut, Segal & Segal LLP, One Penn Plaza,
Suite 3335, New York, NY 10119 (Attn: Kyle J. Ortiz (kortiz@teamtogut.com) and Brian F.
Moore (bmoore@teamtogut.com)); (iii) special counsel for the Debtors, Shearman & Sterling
LLP 599, Lexington Avenue, Lexington Ave, New York, NY 10022 (Attn: Fredric Sosnick
(fsosnick@shearman.com), Christopher Forrester (chris.forrester@shearman.com), and Ian E.
Roberts (ian.roberts@shearman.com); (iv) counsel to the Committee, Pachulski Stang Ziehl &
Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn: Robert J. Feinstein
(rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)); (v) entities on the
Master Service List (which may be obtained at the Debtors' case management website at
https://cases.stretto.com/vice/); and (v̶vi) counsel to the Stalking Horse Bidder, Gibson, Dunn &
Crutcher LLP, 333 South Grand Avenue Los Angeles, California 90071(Attn:    David
Feldman  (DFeldman@gibsondunn.com), Cromwell Montgomery (CMontgomeryMichael S.
Neumeister (mneumeister@gibsondunn.com) , and Candice Choh (CChohTommy Scheffer
(tscheffer@gibsondunn.com)).

Any party who fails to file with the Court and serve on the Objection Recipients a Sale
Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the
Sale Hearing or Accelerated Sale Hearing, as applicable, or thereafter, any objection to the relief
requested in the Sale Motion, or to the consummation and performance of the Sale contemplated
by the Stalking Horse Agreement, or purchase and sale agreement with a Successful Bidder free
and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the
Bankruptcy Code.

## V.    Additional Information

This Sale Notice and any Sale Hearing are subject to the fuller terms and conditions of
the Sale Motion, the Bidding Procedures Order, and the Bidding Procedures, each of which shall
control, as applicable, in the event of any conflict. The Debtors encourage parties in interest to
review such documents in their entirety. Copies of the Motion, the Bidding Procedures Order,
the Bidding Procedures, and the Sale Notice may be obtained free of charge at Case Website,
located at https://cases.stretto.com/vice/.

**Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or Accelerated Sale Hearing, as applicable, or thereafter, any objection to the relief requested in the Motion, or purchase and sale agreement with a Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.**

Dated: May [__], 2023
     New York, New York

**SHEARMAN & STERLING LLP**

_DRAFT_ _____
Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY  10022
Phone:    (212) 848-4000
Email:    fsosnick@shearman.com
         william.holste@shearman.com
         jacob.mezei@shearman.com

-and-
Ian E. Roberts (_pro hac vice_ pending)
2601 Olive Street, 17th Floor
Dallas, TX  75201
Phone:    (214) 271-5777
Email:    ian.roberts@shearman.com

_Proposed Special Counsel to the Debtors and Debtors in Possession_

## Exhibit 3

**Form of Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
~~SOUTHERN DISTRICT OF NEW YORK~~SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., et al~~.~~, | Case No. 23-10738 (—JPM) |
| Debtors.[1] | (~~Joint Administration Requested~~Jointly Administered) |

**NOTICE OF PROPOSED
ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**PLEASE TAKE NOTE OF THE FOLLOWING DEADLINES:**

**Cure Objection Deadline**: on or before ~~[ ]~~June 16, 2023, at 4:00 p.m. (prevailing Eastern Time)

**Auction Results Objection Deadline**: If the Stalking Horse Bidder is not the Successful Bidder at the Auction, ~~on or before 4:00 p.m. (prevailing Eastern Time) on the date that is two days after the date that the Notice of Auction Results are published~~at or prior to the Sale Hearing.

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 15, 2023, Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the

---

[1] The ~~last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors~~Debtors in these chapter 11 cases, ~~a complete list of the debtor entities and~~along with the last four digits of ~~their federal~~each Debtor's tax identification ~~numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://https://cases.stretto.com/vice/~~number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A);  Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

"Chapter 11 Cases"), filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") the *Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse Agreement (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* [ECF No. ~~[    ]~~16] (the "Motion"), seeking an order (the "Bidding Procedures Order"), among other things, seeking an order (the "Bidding Procedures Order"),[1] among other things, (a) approving certain bidding procedures (the "Bidding Procedures") in connection with the sale or sales of substantially all of the Debtors' assets (the "Assets") pursuant to section 363 of the Bankruptcy Code (the "Sale"), including certain dates and deadlines thereunder for the Sale process; and (b) authorizing procedures (such procedures, the "Assumption and Assignment Procedures") to facilitate the fair and orderly assumption, assumption and  assignment, and rejection of certain executory contracts (the "Contracts") or unexpired leases (the "Leases") of the Debtors.[22]

On [    ], ~~2022~~2023, the Court, entered the Bidding Procedures Order [ECF No. __]. Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice (this "Assumption and Assignment Notice") that they are seeking to assume and assign to Vice Acquisition HoldCo, LLC (the "Stalking Horse Bidder")[33], or, if the Stalking Horse Bidder is not the Successful Bidder at the Auction (if any), any other Successful Bidder(s), the Contracts or Leases listed on **Exhibit A** attached hereto (each, an "Assigned Contract").

**You are receiving this Assumption and Assignment Notice because you may be a counterparty to a Contract or Lease (a "Counterparty") that ~~is proposed to~~may be assumed and assigned to the Successful Bidder in connection with the Sale.**

If the Debtors assume and assign to the Successful Bidder(s) an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, such Successful Bidder will pay you the amount the Debtors' records reflect is owing for **pre-bankruptcy filing arrearages** as set forth on **Exhibit A** (the "Cure Cost"). The Debtors' records reflect that all postpetition amounts owing under your Assigned Contract have been paid and will continue to be paid in the ordinary course until the assumption and assignment of the Assigned Contract, and that other than the Cure Cost, there are no other defaults under the Assigned Contract.

The Debtors' inclusion of a Contract or Lease as an Assigned Contract on **Exhibit A** is not a guarantee that such Contract or Lease will ultimately be assumed and assigned to any Successful Bidder. Should it be determined that an Assigned Contract will not be assumed and

---

[1] ~~Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Bidding Procedures.~~

[22] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Bidding Procedures.

[33] A copy of the Stalking Horse Agreement ~~is attached as **Exhibit B** to the Motion (~~was filed with the Court on May 19, 2023, at ECF No. 58 (as may be amended or modified pursuant to the terms thereof, the "Stalking Horse Agreement," and such bid memorialized therein, the "Stalking Horse Bid").

assigned, the Debtors shall notify such party to the Assigned Contract in writing of such decision.

Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Debtors', the Stalking Horse Bidder's, or any Successful Bidder(s)'s right to conduct further confirmatory diligence with respect to the Cure Cost of each Assigned Contract and to modify such Cure Cost accordingly. In the event that the Debtors or any Successful Bidder determine that your Cure Cost should be modified, you will receive a notice pursuant to the Assumption and Assignment Procedures below, which will provide for additional time to object to such modification.

## I.    <u>Assumption and Assignment Procedures</u>

The Assumption and Assignment Procedures set forth below regarding the assumption and assignment of the Assigned Contracts ~~proposed to~~that may be assumed by the Debtors and assigned to the Successful Bidder(s) in connection with the Sale shall govern the assumption and assignment of all of the Assigned Contracts, subject to the payment of any Cure Costs:

(a)    **Cure Costs and Adequate Assurance of Future Performance.** The payment of the applicable Cure Costs by any party, as applicable, shall (i) effect a cure of all monetary defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such Counterparty resulting from such default.

(b)    **Additions.** The Debtors may also designate additional executory contracts or unexpired leases as agreements to be assumed by the Debtors and assigned to a Successful Bidder (the "<u>Additional Assigned Contracts</u>") until one (1) business day before the closing of the Sale. Following the addition of an Additional Assigned Contract, the Debtors shall as soon as reasonably practicable thereafter serve an Assumption and Assignment Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the Counterparty's Contract or Lease, as applicable, to the Successful Bidder(s), and (ii) the corresponding Cure Cost. The Debtors shall provide any counterparties to such Additional Assigned Contracts an opportunity to be heard, if necessary, with respect to the assumption and assignment of their Assigned Contract if no other notice was received by such Counterparty prior to the Sale Hearing.

(c)    **Eliminations**. The Debtors may remove any Contract or Lease, as applicable, to be assumed by the Debtors and assigned to the Successful Bidder (the "<u>Eliminated Agreements</u>") until one (1) business day before the closing of the Sale. Following the removal of an Eliminated Agreement, the Debtors shall as soon as reasonably practicable thereafter serve a notice (a "<u>Removal Notice</u>") on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtors no longer intend to assign the Contract or Lease, as applicable, to the Successful Bidder(s) in connection with the Sale.

(d)  **Supplemental Contract Assumption Notice**. Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with the Sale, the Debtors may discover certain executory contracts inadvertently omitted from the Assigned Contracts list or the Successful Bidder(s) may identify other Contracts or Leases that they desire to have assumed and assigned in connection with the Sale. Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse Agreement or the purchase and sale agreement with the Successful Bidder(s) (the "Successful Bidder Purchase Agreement"), as applicable, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Stalking Horse Agreement or the Successful Bidder Purchase Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with the Sale, or (iii) modify the previously stated Cure Cost associated with any Assigned Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption and Assignment Notice") on each of the counterparties to such contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption and Assignment Notice will include the same information with respect to listed Assigned Contracts as was included in the Assumption and Assignment Notice, or in the event of a removal, the information required in a Removal Notice. Any Supplemental Assumption and Assignment Notice will be served as soon as reasonably practicable following the Successful Bidder's identification of any such omissions, removals, or modifications to any Assigned Contracts.

(e)  **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto, must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) if a Cure Objection that pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Counterparty, together with the appropriate documentation including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; (v) include any appropriate documentation in support thereof; and (vi) be filed with the Court and served on, so actually be received by, the Objection Recipients (as defined below) by the applicable deadlines below or such deadline as set forth in the applicable Supplemental Assumption and Assignment Notice.

(i)  Cure Objection Deadline. Any objection to the Cure Cost, to assumption and assignment of an Assigned Contract, or adequate assurance of must be filed with the Bankruptcy Court on or before [——]**June 16**, **2023, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline"), **or such deadline set forth in the applicable Supplemental Assumption Notice**, and served on: (i) the Debtors, c/o *VICE*, 49 S 2nd St, Brooklyn, NY 11249 (Attn: Maria Harris

11

(maria.harris@vice.com)); (ii) the Debtors' counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Kyle J. Ortiz (kortiz@teamtogut.com) and Brian F. Moore (bmoore@teamtogut.com)); (iii) special counsel for the Debtors, Shearman & Sterling LLP 599, Lexington Avenue, Lexington Ave, New York, NY 10022 (Attn: Fredric Sosnick (fsosnick@shearman.com), Christopher Forrester (chris.forrester@shearman.com), and Ian E. Roberts (ian.roberts@shearman.com); (iv) entities on the Master Service List (which may be obtained at the Debtors' case management website at https://cases.stretto.com/vice/); and (v) counsel to the Stalking Horse Bidder, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue Los Angeles, California 90071(Attn: David Feldman (DFeldman@gibsondunn.com), Cromwell Montgomery (CMontgomeryMichael S. Neumeister (mneumeister@gibsondunn.com), and Candice Choh (CChohTommy Scheffer (tscheffer@gibsondunn.com)) (collectively, the "Cure Objection Recipients").; and (vi) counsel to the Committee Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and Bradford J. Sandler (bsandler@pszjlaw.com)).

(ii)    Auction Results Objection Deadline. If the Debtors hold an Auction and if a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, as soon as reasonably practicable after selecting such Successful Bidder(s), the Debtors will file (but not serve) and cause to be published on the Case Website a notice of results of the Auction (the "Notice of Auction Results"). Upon the filing of any Notice of Auction Results, objections *solely* to the identity of the Successful Bidder(s), changes to the Stalking Horse Agreement, or adequate assurance of future performance if the Successful Bidder is not the Stalking Horse Bidder (each, aan "Auction Results Objection") may be made. Any Auction Results Objection must be served on (A) counsel for the Debtors and (B) the Successful Bidder(s) and its counsel, if any (collectively, the "Auction Results Objection Recipients," and together with the Cure Objection Recipients, the "Objection Recipients"), so as to be received by 4:00 p.m. (prevailing Eastern Time) on the date that is [__] days after the date that the Notice of Auction Results are publishedat or prior to the Sale Hearing (the "Auction Results Objection Deadline"); provided, however, that the Cure Objection Deadline shall not be extended.

(f)    Any party failing to timely file an objection to (i) the proposed Cure Cost, (ii) the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Assumption and Assignment Notice or a Supplemental Assumption and Assignment Notice, or (iii) the amendment of the Assigned Contracts and releases of the Causes of Action and other rights of recovery as set forth in this Assumption and Assignment Notice; is deemed to have consented to (A) such Cure Cost, (B) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future

12

payment), and (C) the related relief requested in the Motion. Such party shall be forever barred and estopped from objecting to the Cure Cost, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, or the related relief requested herein and in the Motion, whether applicable law excuses such Counterparty from accepting performance by, or rendering performance to, the Successful Bidder(s), and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder(s) with respect to such party's Assigned Contract or Additional Assigned Contract.

(g)    If a Cure Objection or Auction Results Objection, as applicable, filed by the Cure Objection Deadline or Auction Results Objection Deadline, as applicable, cannot otherwise be resolved by the parties prior to the Sale Hearing, such objections and all issues regarding the Cure Cost amount to be paid or the adequate assurance of future performance, as applicable, shall be determined by the Court at the Sale Hearing, or at a later hearing on a date to be scheduled by the Debtors in their discretion, and in consultation with the Successful Bidder(s).

## II.    Additional Information

Unless otherwise provided in the Sale Order, the Debtors shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice may be obtained free of charge at the Debtors' Case Website, located at https://cases.stretto.com/vice/.

13

Dated: May [___], 2023  
      New York, New York

**SHEARMAN & STERLING LLP**

*DRAFT*                              

Fredric Sosnick  
William S. Holste  
Jacob S. Mezei  
599 Lexington Avenue  
New York, NY  10022  
Phone:   (212) 848-4000  
Email:   fsosnick@shearman.com  
            william.holste@shearman.com  
            jacob.mezei@shearman.com

-and-  
Ian E. Roberts (*pro hac vice* pending)  
2601 Olive Street, 17th Floor  
Dallas, TX  75201  
Phone:   (214) 271-5777  
Email:   ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and Debtors in Possession*

14

**<u>Exhibit A</u>**

**Assigned Contracts and Cure Costs**

**Exhibit B**

**Stalking Horse Agreement**

| **Summary report:** | |
|---|---|
| **Litera Compare for Word 11.3.0.46 Document comparison done on 5/30/2023 9:37:44 AM** | |
| **Style name:** Shearman & Sterling | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://amwork-shearman.imanage.work/AMERICAS/2023822581/1 | |
| **Modified DMS:** iw://amwork-shearman.imanage.work/AMERICAS/2023822581/13 | |
| **Changes:** | |
| Add | 150 |
| Delete | 124 |
| Move From | 0 |
| Move To | 1 |
| Table Insert | 1 |
| Table Delete | 2 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 278 |