Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, New York 11042
Telephone: (516) 622-2335
E-Mail: amish@doshilegal.com

And

Shawn M. Christianson, Esq.
**BUCHALTER, A Professional Corporation**
425 Market Street, Suite 2900
San Francisco, California 94105-2126
Telephone: (415) 227-0900
E-Mail: schristianson@buchalter.com

Hearing Date: June 23, 2023
Hearing Time: 10:00 AM
Objection Date: June 16, 2023

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**VICE GROUP HOLDING INC., et. al.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 23-10738 (JPM)**<br><br>**Jointly Administered** |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING: (1) DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING BIDDING, NOTICING, AND ASSUMPTION AND ASSIGNMENT PROCEDURES, (II) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT, (III) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (IV) GRANTING RELATED RELIEF ; and (2) FIRST SUPPLEMENTAL NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Oracle America, Inc. successor in interest to Moat, Inc. and Grapeshot, Ltd. ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this limited objection and reservation of rights ("Rights Reservation") regarding both:

*Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* [Dkt. No. 16] ("Sale Motion"); and (2) *First Supplemental Notice of*

*Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Dkt. No. 109 ] ("Assumption Notice"), filed by Vice Group Holding, Inc., *et al.* ("Debtors").

## I.    INTRODUCTION

1. In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2. For several reasons, Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment.

   a) First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

   b) Second, the Assumption Notice does not provide a complete description of the Oracle contracts which the Debtors seek to assume and assign, and may not identify all active agreements with Oracle. As a result, Oracle is unable to identify with certainty the universe of agreements at issue or determine the accuracy of the proposed cure amount.

   c) Third, Oracle currently is unable to determine whether the successful bidder will be capable of performing under the terms of the Oracle contract the Debtors seek to assume and assign. Until the ultimate purchaser is known, Oracle reserves its rights on this point.

   d) Finally, the APA (defined below) includes a Transition Services Agreement ("TSA") which may include the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses which the Debtors may contemplate.

3. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.    FACTUAL BACKGROUND

4. The Debtors filed the above captioned cases on May 15, 2023 ("Petition Date"), and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

5. On the Petition Date, the Debtors filed the Sale Motion, which seeks Court authority to sell all or substantially all assets of the Debtors.

6. The Sale Motion identifies Vice Acquisition HoldCo, LLC ("Stalking Horse") as the stalking horse bidder.

7. On May 19, 2023, the Debtors filed the *Notice of Filing of Stalking Horse Asset and Equity Purchase Agreement* [Dkt. No. 58] ("Notice").

8. Attached as Exhibit "A" to the Notice is the Asset and Equity Purchase Agreement between the Debtors and the Stalking Horse ("APA").

9. The APA contemplates that a TSA will be entered into between the Debtors and the Stalking Horse and will be included as part of the closing documents (*See*, APA @ ¶ 2.08 (a)(iv) and ¶ 2.08 (b)(v)).

10. Since the TSA has not been filed, it is unclear which services will be provided during the post-closing period.

11. Therefore, Oracle reserves all rights in the event that the TSA authorizes the shared use of Oracle's licensed software and/or services. In addition, since the proposed sale is subject to overbid, the Stalking Horse may not be the ultimate purchaser.

12. Therefore, Oracle reserves all rights regarding both the existing, and any subsequent, APA which proposes to include transitional use, and which involves either the Stalking Horse, or an as yet unknown buyer.

13. On June 7, 2023, the Debtors filed the Assumption Notice. Exhibit "A" to the Assumption Notice identifies several Oracle agreements ("Oracle Agreements") that may be assumed and assigned.

14. The Oracle Agreements are described in the Assumption Notice as follows:

| Contract Counterparty | Contract Type | Additional Description | Debtor | Cure Amount |
|---|---|---|---|---|
| Oracle America, Inc. | Vendor Agreement | VICE Media NetSuite Renewal 12 Month Term dated February 21, 2023 | Vice Media LLC | $416,953.89 |
| Oracle America, Inc. | License Agreement | Contract ID 1208 - (First Amendment) Moat License (executed 1 Dec 2018) 2021-07-30 19.11.50 | Vice Media LLC | $0.00 |
| Oracle America, Inc. | Vendor Agreement | First Amendment to MSA Moat Analytics dated December 1, 2018 | Vice Media LLC | $0.00 |
| Oracle Corporation UK Limited | Vendor Agreement | Second Amendment to the Grapeshot MSA, now Oracle, dated September 26, 2016 | Vice Media LLC | $0.00 |
| Oracle Corporation UK Limited | Vendor Agreement | Oracle Text Data Services Order, Grapeshot MSA Terms, dated October 27, 2022 | Vice Media LLC | $43,000.00 |

15. While these contract descriptions are fairly complete, in reviewing its records, Oracle has identified an additional active agreement between the Debtors and Oracle which is not identified in the Assumption Notice.

16. It isn't yet clear whether that omission is by design, and since there are some discrepancies between the contract descriptions included above, and the facts about the contracts reflected in Oracle's records, uncertainty as to the targeted contracts continues.

## III. ARGUMENT

### A. The Debtors May Not Assume And Assign Any Oracle Agreement Absent Oracle's Consent Because The Oracle Agreements Pertain To One Or More Licenses Of Intellectual Property.

17. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

4

18.     Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.)* 852 F. 2d 79 (3d Cir. 1988) (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."). *See, In re Patient Educ. Media 210 B.R. 237, 243 (Bankr. S.D.N.Y 1997); See, In re Adelphia Communications Corp, et al., 359 B.R. 65 (Bankr. S.D.N.Y.  2007).*

19.     Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.  Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

20.     For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreements at this time.

### B.    The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.

21.     The Assumption Notice generally describes the Oracle Agreements the Debtors seek to assume and assign.

22.     The Debtors only identify one NetSuite agreement.  Oracle's records reflect that it has at least two active NetSuite agreements: Estimate #1139728 and Estimate #1123031[1].

23.     Based on the contract description provided in the Assumption Notice, Oracle is unable to determine which Estimate is at issue.

---

[1] Estimate #1123031 is between NetSuite and Refinery 29, Inc.

24. Furthermore, based on the contract dates provided in the Assumption Notice, Oracle is unable to line up some of the agreements with its records.

25. Finally, no underlying support agreements are identified. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreement for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

26. An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

27. Under California law,[2] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

28. In Order to clarify which Oracle contracts Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (a) identification or contract number; (b) the contract date; (c) any associated support or support renewals; and (d) the governing license agreement, if not already identified.

---

[2] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

6

29. This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount.

30. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

31. Oracle reserves its right to be heard on this issue until after the Oracle Agreements the Debtors seek to assume and assign are identified with greater specificity.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

32. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

33. The Debtors have identified a cure of $416,953.89 for the "VICE Media NetSuite Renewal 12 Month Term dated February 21, 2023" agreement, and a cure of $43,000 for the "Oracle Text Data Services Order, Grapeshot MSA Terms, dated October 27, 2022" agreement. The remaining Oracle Agreements are identified as having a $0.00 cure.

34. These cure amounts in the Assumption Notice do not comport with Oracle records. Oracle reserves its right to be heard regarding all cure amounts until after the contract or contracts the Debtors seek to assume and assign are identified and confirmed in order to allow Oracle to determine the correct cure amount.

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

35. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

36. Oracle is assessing whether the Stalking Horse would be an acceptable customer. In addition, the Sale Motion is subject to overbid.

37. If necessary, an auction will be held on June 22, 2023, meaning that the ultimate purchaser may be an entity other than the Stalking Horse. Given that the auction is set for a date after the deadline for Oracle to object to the Sale Motion[3], Oracle reserves its rights as to adequate assurance.

38. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform the terms of the Oracle Agreements.

39. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. Oracle's Agreements Do Not Authorize Simultaneous Use By The Debtors and the Stalking Horse/Eventual Purchaser.

40. The APA contemplates that certain services may be provided between the Debtors and the Stalking Horse via a TSA.

41. Precise information about the nature of these proposed services is not provided, nor has the TSA been filed with the Court.

42. This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software may exceed the scope of the permitted uses under the Oracle Agreements.

---

[3] Oracle is aware that pursuant to the Assumption Notice, counterparties have until the sale hearing by which to file an objection to adequate assurance. However, in order to save duplicate filings, Oracle incorporates its objection to adequate assurance in this Rights Reservation.

8

43. It would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the ultimate purchaser.

44. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

45. Oracle reserves all rights regarding any transitional use, including under any final APA or TSA, pending Oracle's further review of the same.

## IV.   CONCLUSION

46. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreements, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: June 16, 2023
      Lake Success, New York

Respectfully submitted,

By:   /s/ Amish R. Doshi
Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
**BUCHALTER, A Professional Corporation**
425 Market Street, Suite 2900
San Francisco, California 94105-2130
Telephone: (415) 227-0900
E-Mail: schristianson@buchalter.com

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, I served a copy of *Oracle's Limited Objection To And Reservation Of Rights Regarding: (1) Debtors' Motion For Entry Of An Order (I) Establishing Bidding, Noticing, And Assumption And Assignment Procedures, (II) Authorizing And Approving The Debtors' Entry Into The Stalking Horse Agreement, (III) Approving The Sale Of Substantially All Of The Debtors' Assets And (IV) Granting Related Relief; And (2) First Supplemental Notice Of Proposed Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases* on the parties listed on the below service list via email containing a pdf of the document. In addition, the parties entitled to receive notice by the Court's CM-ECF system were sent an email notification of such filing by the Court's CM-ECF System.

 /s/ Amish R. Doshi

## SERVICE LIST

Maria Harris – maria.harris@vice.com
Brian F. Moore, Esq. – bmoore@teamtogut.com
Kyle J. Ortiz, Esq. – kortiz@teamtogut.com
Frederic Sosnick, Esq. – fsosnick@shearman.com
Christopher Forrester, Esq. – chris.forrester@shearman.com
Ian E. Roberts, Esq. – ian.roberts@shearman.com
Robert J. Feinstein, Esq. – rfeinstein@pszjlaw.com
Bradford J. Sandler, Esq. – bsandler@pszjlaw.com
David Feldman, Esq. – dfeldman@gibsondunn.com
Michael S. Neumeister, Esq. – mneumeister@gibsondunn.com
Tommy Scheffer, Esq. – tscheffer@gibsondunn.com