**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VICE GROUP HOLDING INC.,[1] | ) | Case No. 23-10738 (JPM) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 16, 58, 80, 87** |
| | ) | |

## ORDER (A) APPROVING THE ASSET AND EQUITY PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ASSETS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion") [Docket No. 16] of the above-captioned debtors and debtors-in-possession (collectively the "Debtors") for an order, pursuant to sections 105(a), 363(b), 363(f), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006(f), 6007, 9007, 9008, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 6004-1 and 6006-1 of the Local Rules of Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing and approving, among other things, (a) entry into that certain *Asset and Equity Purchase Agreement* (as amended or modified

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); VTV Productions LLC (6854); and Goldie Films, Inc. (1241). The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

from time to time, the "APA"),[2] with Vice Acquisition Holdco, LLC (including any Buyer Designee, the "Purchaser"), a copy of which is annexed to the *Notice of Filing Stalking Horse Asset and Equity Purchase Agreement* [Docket No. 58] as **Exhibit A**, (b) the proposed sale (the "Sale") of substantially all of the Debtors' assets (as defined in, and subject to, the APA, the "Purchased Assets") free and clear of all Encumbrances (as defined below), other than Permitted Encumbrances, pursuant to the terms of the APA, (c) assumption and assignment of certain Contracts of the Debtors (as defined in, and subject to, the APA, the "Purchased Contracts") and assignment of the Purchased Contracts to Purchaser, and (d) other related relief; and the Court having entered an order [Docket No. 80] (the "Bid Procedures Order") approving the bid procedures (the "Bid Procedures"); and the Debtors having identified the bid by Purchaser as the highest or otherwise best bid for the Purchased Assets; and upon the *Declaration of Brent Herlihy in Support of Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (III) Approving the Sale of Substantially All of the Debtors' Assents, and (IV) Granting Related Relief* [Docket No. 17] (the "Herlihy Declaration"), the *Supplemental Declaration of Brent Herlihy in Support of Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (III) Approving the Sale of Substantially All of the Debtors' Assents, and (IV) Granting Related Relief* [Docket No. 209] (the "Supplemental Herlihy Declaration" and, together with the Herlihy Declaration, the "Herlihy Declarations"), and the *Supplemental Declaration of Frank A. Pometti in Support of Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II)*

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA.

*Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (III) Approving the Sale of Substantially All of the Debtors' Assets and (IV) Granting Related Relief* [Docket No. 210] (the "Supplemental Pometti Declaration"); and the Auction having been cancelled  in accordance with the Bid Procedures; and the Court having conducted a hearing on the Motion on June 23, 2023 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having (i) reviewed and considered the Motion, all relief related thereto, the objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (ii) found that, after an extensive marketing process by the Debtors, Purchaser has submitted the highest or otherwise best bid for the Purchased Assets; and that adequate and sufficient notice of the Bid Procedures, the APA, and all transactions contemplated thereunder and in this sale order (this "Sale Order") were given pursuant to and consistent with the Bid Procedures Order; and that reasonable and adequate notice of the Motion and Bid Procedures Order having been provided to all persons required to be served in accordance with the Bankruptcy Code and the Bankruptcy Rules; and that all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and that the Court has jurisdiction to consider the Motion and approve the Sale; and upon the arguments and statements in support of the Motion presented at the Sale Hearing before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory bases for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 6007, 9007, 9008, and 9014, and Local Rules 6004-1 and 6006-1.

C.    **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

D.    **Notice**.  As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, APA, Sale Hearing, Sale, and transactions contemplated thereby has been provided in accordance with the Bid Procedures Order, sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and the Local Rules.  The Debtors have complied with all obligations to provide notice of the Motion, the Auction, the APA, and the Sale Hearing as set forth in the Bid Procedures Order.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, APA, Auction, Sale or Sale Hearing is or shall be required.  The disclosures made by the Debtors concerning the Motion, the APA, the Auction, Sale and Sale Hearing were good, complete, and adequate.  The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

E.    In accordance with the Bid Procedures Order, the Debtors have served a notice of

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, where appropriate. See Bankruptcy Rule 7052.

the Purchased Contracts [Docket No. 86] and the supplemental notices of Purchased Contracts [Docket Nos. 109 and 179] (together, the "Cure Notice"), identifying the amount required to cure any and all defaults and actual pecuniary losses to the non-Debtor counterparty to such Purchased Contracts resulting from such defaults, including, but not limited to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor counterparties can assert under the Purchased Contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to, the Purchased Contracts (the foregoing amounts as stated in the Cure Notice collectively referred to as the "Cure Amounts") upon each non-Debtor counterparty to a Purchased Contract. The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Purchased Contracts or establishing a Cure Amount for any respective Purchased Contract. Non-Debtor counterparties to the Purchased Contracts have had or will have, as applicable, an adequate opportunity to object to assumption and assignment of the applicable Purchased Contract and the Cure Amount set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline for a non-Debtor counterparty to file an objection to the stated Cure Amounts in the Cure Notice as applicable (a "Cure Objection") has expired and, to the extent any such party timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any non-Debtor

counterparty (i) did not timely file a Cure Objection by the applicable objection deadline listed in the Cure Notice (the "Cure Objection Deadline"), such party shall be deemed to have consented to the (x) assumption and assignment of the Purchased Contract and (y) proposed Cure Amount set forth on the Cure Notice.

F.     **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute, deliver, and perform their obligations under the APA and all other documents contemplated thereby and by this Sale Order, and the Debtors' sale of the Purchased Assets has been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, and (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Debtors to consummate such transactions.

G.     The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, the District of Columbia, or any foreign jurisdiction.  Neither the Debtors nor Purchaser is entering into the transactions contemplated by the APA fraudulently, including but not limited to, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

H.     The Debtors are the sole and lawful owner of the Purchased Assets.  Subject to sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Purchased Assets to Purchaser, in accordance with the APA and this Sale Order will be, as of the Closing Date, a legal, valid, binding and effective transfer of the Purchased Assets, which transfer vests or will vest

Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Claims and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities). Claims, as defined in the APA, shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtors or claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, applicable law, equity, or otherwise (including, without limitation, rights with respect to claims and Encumbrances (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Purchaser's interests in the Purchased Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use, or any other type of tax, or (iii) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities.

I.    **Business Judgment**.  Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith and hereunder have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in

the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to preserve and maximize the value of the Debtors' estates.

J.    The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence to implement the APA and to consummate the Sale contemplated thereby without any interruption.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

K.    The consummation of the Sale and the assumption and assignment of the Purchased Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale and the transactions contemplated thereby.

L.    **The Transition Services Agreement**.  In order to facilitate an orderly and efficient transfer of the Debtors' businesses to the Purchaser, the Debtors and the Purchaser anticipate entering into a transition services agreement, which, in consultation with the Committee, shall be in form and substance satisfactory to the Purchaser and the Debtors (the "Transition Services Agreement"); provided that the Debtors will provide the Committee with the Transition Services Agreement no later than three (3) days prior to Closing and the Committee shall have the opportunity to object to the Transition Services Agreement and such objection may be heard on an expedited basis subject to the Court's availability, and the Sale shall not close until the objection is resolved either by agreement among the Debtors, the Committee, and the Purchaser or by an

order of the Court (the "<u>Committee's TSA Objection Right</u>").  The Transition Services Agreement (a) will allow Purchaser to satisfy the internal processes that will, among other things, allow the Purchaser to take the actions necessary for the (i) transfer and integration of the Transferred Employees, (ii) Purchaser to establish its own cash management system to replace the Debtors' bank accounts, and (iii) utilization of the Debtors' headquarters located at 49 South 2nd Street, Brooklyn, NY 11249, and (b) shall be substantially cost neutral to the party providing transition services (either by the Debtors' estates or the Purchaser, as applicable). It also is anticipated, as originally contemplated by the APA, that the Transition Services Agreement will allow the Debtors to wind down their bankruptcy estates through the Purchaser's provision of certain support services in favor of the Debtors' estates.

M.    **<u>Good Faith of Purchaser and Debtors</u>**.  The APA was negotiated, proposed, and entered into by the Debtors and Purchaser, their respective members of management and their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, and representatives, without collusion, in good faith, and as the result of arm's length bargaining positions and is substantively and procedurally fair to all parties. Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither any of the Debtors nor Purchaser has engaged in any conduct that would cause or permit the Sale or the APA to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code.  Specifically, Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders. Purchaser is purchasing the Purchased Assets, in accordance with the APA, in good faith, and is a good faith purchaser within the meaning of sections 363(m) or 364(e) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by such provision and otherwise has

proceeded in good faith in all respects in connection with the Debtors' Chapter 11 Cases.  As demonstrated by (i) the Herlihy Declarations; (ii) the Supplemental Pometti Declaration; (iii) any testimony and other evidence proffered or adduced at the hearing with respect to the approval of the Bidding Procedures held on May 30, 2023 (the "Bid Procedures Hearing") and the Sale Hearing and (iv) the representations of counsel made on the record at the Bid Procedures Hearing and the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order and, among other things:  (a) the Debtors and Purchaser complied with the provisions in the Bid Procedures Order; (b) Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bid Procedures Order; (c) the Debtors and their investment bankers, LionTree Advisors LLC and PJT Partners LP, engaged in a robust and extensive marketing and sale process, including both prior to the Petition Date and through the postpetition sale process pursuant to the Bid Procedures Order and the Bid Procedures; and (d) all payments to be made by Purchaser in connection with the Sale have been disclosed.

N.    **Highest or Otherwise Best Offer**.  The Debtors conducted the Sale in accordance with, and have otherwise complied in all material respects with, the Bid Procedures Order.  The Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Bid Procedures were duly noticed and the Sale was conducted in a non-collusive, fair, and good-faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Purchased Assets.  The APA constitutes the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the APA constitutes the highest or otherwise best offer for the Purchased Assets is a valid and sound exercise of their

fiduciary duties and constitutes a valid and sound exercise of the Debtors' business judgment.

O.    **Consideration**.  The consideration provided by Purchaser pursuant to the APA and this Sale Order (a) was negotiated at arm's-length, (b) is fair and reasonable, (c) is the highest or otherwise best offer for the Purchased Assets, and (d) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, the District of Columbia, or any foreign jurisdiction.  No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than Purchaser.  Approval of the Motion, the APA, the Sale and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

P.    **Secured Claims and Credit Bid**.  The Purchaser is a Delaware limited liability company that was formed on behalf of the Prepetition First Lien Lenders and the DIP Lenders (each term as defined in the *Final Order (I) Authorizing The Debtors To (A) Obtain Postpetition Financing And (B) Use Cash Collateral, (II) Granting Liens And Superpriority Claims, (III) Modifying The Automatic Stay, (IV) Granting Adequate Protection To Prepetition Secured Parties and (V) Granting Related Relief* [Docket No. 138] (the "DIP Order")) (such Prepetition First Lien Lenders and DIP Lenders, the "Purchaser Credit Bid Members") and, upon the Closing Date, will be owned by the Purchaser Credit Bid Members and such other parties as shall be agreed by the Purchaser Credit Bid Members.  Pursuant to the terms of the APA and the DIP Order, the Prepetition First Lien Lenders and DIP Lenders are secured creditors of the Debtors, holding allowed Claims in the amount of the Prepetition First Lien Obligations and DIP Obligations (each

as defined in the DIP Order) secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates and the property of their estates, provided, however, that, for the avoidance of doubt, notwithstanding anything herein to the contrary, such security interests and liens shall not include any security interests or liens on the GUC Cash Reserve and GUC Reserved Litigation Claims (as defined in APA Amendment No. 1) or the Purchased Contract Counterparty Preference Actions (as defined below), of which the full amount of the DIP Obligations will be credit bid in connection with the Sale and APA, with the remaining amount of the Purchase Price satisfied through a credit bid of such amount of the Prepetition First Lien Obligations (such Prepetition First Lien Obligations and DIP Loans, collectively, the "Credit Bid Claim" and, the amount of such Credit Bid Claim, the "Credit Bid Consideration"). For the avoidance of doubt, any amount of the Prepetition First Lien Obligations shall remain valid and enforceable claims against the Debtors, their estates, and any Guarantors (as defined in the DIP Order) and any collateral under the Prepetition Term Loan Documents that does not constitute Purchased Assets. The Prepetition Administrative Agent (as defined in the DIP Order), on behalf of the Prepetition First Lien Lenders, and the DIP Administrative Agent (as defined in the DIP Order), on behalf of the DIP Lenders, have the right under section 363(k) of the Bankruptcy Code and were authorized by this Court pursuant to the DIP Order, to credit bid up to the full amount of the Prepetition First Lien Obligations and DIP Obligations (including, for the avoidance of doubt, the Credit Bid Claim). Pursuant to the APA, the Purchaser agreed to provide, as consideration for the Purchased Assets, the Purchase Price, among other things, which includes an amount up to the full amount of the Credit Bid Consideration.

Q.    **No Successor Liability**.  By virtue of the consummation of the transactions contemplated under the APA:  (i) the Purchaser is not a continuation of the Debtors and their

respective estates, there is not substantial continuity between Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and Purchaser; (ii) the Purchaser is not holding itself out to the public as a continuation of the Debtors or their respective estates; (iii) the transactions do not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors and/or the Debtors' estates; and (iv) Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, privacy, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including. without limitation. filing requirements under any such laws, rules. or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, and Purchaser and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq. or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities, (i) the transfer of the Purchased Assets to Purchaser and (ii) the assumption and assignment to Purchaser of the Purchased Contracts do not and will not subject Purchaser to any liability

whatsoever with respect to the operation of the Debtors' businesses before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, the District of Columbia, or any foreign jurisdiction, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability.

R.    **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and, therefore, the Debtors may sell the Purchased Assets free and clear of any liens, defenses (including rights of setoff and recoupment), and interests, in each case, in, on, or related to the Purchased Assets, including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, purchase options, rights of first refusal or offer, deeds of trust, hypothecations, mechanics' and materialman's liens, rights of way, assignments, preferences, debts, easements, charges, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), covenants, put options, restrictions, title defects, or other survey defects of any kind, indentures, instruments, leases, options, off-sets, causes of action, contract rights and claims, any restriction on or transfer or other assignment, as security or otherwise, of or relating to use, quiet enjoyment, voting, transfer, receipt of income or exercise of any other attribute of ownership, in each case to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Purchased Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non- material, statutory or non-statutory, matured or unmatured,

legal or equitable, including any and all such liabilities, causes of action, contract rights and claims arising out of the Debtors' continued operations following the Closing Date (collectively, "Encumbrances"), other than as expressly contemplated by the APA, including Permitted Encumbrances. Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale to Purchaser and the assumption of any Assumed Liabilities by Purchaser were not free and clear of all Encumbrances other than the Assumed Liabilities and Permitted Encumbrances. The Debtors may sell the Purchased Assets free and clear of any Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each entity with an Encumbrance in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of such Encumbrances who did not object, or withdrew their objections, to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances) are adequately protected by having their Encumbrances attach to the proceeds received by the Debtors (if any) that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances, with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Purchased Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

S.     The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the APA and this Sale Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale is permitted pursuant to Section 363(b)(1)(A) of the Bankruptcy Code.     Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale.

T.     **Cure/Adequate Assurance**.  The assumption and assignment of the Purchased Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, is integral to the Sale and the transactions contemplated pursuant to the APA, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.  Payment of the Cure Amounts by the Purchaser shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchased Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.     Purchaser's financial wherewithal to consummate the transactions contemplated by the APA and the evidence presented at the Sale Hearing demonstrating Purchaser's ability to perform the obligations under the Purchased Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

U.     All objections to the assumption and assignment of any of the Purchased Contracts

by Purchaser in accordance with the APA are hereby overruled.  To the extent that any counterparty failed or fails to timely object to the proposed Cure Amounts, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Purchased Contract(s) to Purchaser in accordance with the APA.

V. **Compelling Circumstances for Immediate Sale**.  To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts occur within the time constraints set forth in the APA.  Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts.

W. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA and this Sale Order, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  The transactions contemplated by the APA and this Sale Order, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and, therefore, do not constitute a *sub rosa* plan.

X. **Time is of the Essence**.  The Court expressly finds that there is no just reason for delay in the implementation of this Sale Order.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      **Motion is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED as set forth herein.

2.      **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice.

3.      **Approval**.  The APA, and all other ancillary documents, and all of the terms and conditions thereof, including the credit bid pursuant to section 363(k) of the Bankruptcy Code in the amount of the Credit Bid Consideration, are hereby approved in all respects subject to the terms hereof.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are hereby authorized to (a) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the APA, the Sale and the transactions contemplated thereby, (b) consummate the Sale in accordance with the terms and conditions of the APA, the instruments to the APA contemplated thereby, and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the APA, including the assumption and assignment to Purchaser (in accordance with the APA) of the Purchased Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, the Sale and this Sale Order.  Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document; *provided*, that prior to the enforcement of any remedy that would relate to taking custody or possession of any property of

the Debtors' estates, the Purchaser shall provide three (3) business days advance notice to the Debtors and the official committee of unsecured creditors (the "Committee"). The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto. The portion of the obligations under the Prepetition First Lien Loan Documents, if any, in excess of the Credit Bid Consideration provided under the APA shall remain outstanding against the applicable Debtors or Guarantors and any of their assets that do not constitute Purchased Assets, and the Prepetition Administrative Agent and the Prepetition First Lien Lenders shall continue to be protected by and entitled to the benefit of the terms and provisions of the Prepetition First Lien Loan Documents, the DIP Order, and other orders entered by this Court in respect thereof. Notwithstanding any provision of this Sale Order, Purchased Assets shall not include the GUC Cash Reserve, GUC Reserved Litigation Claims (as such terms are defined in APA Amendment No. 1), or the Purchased Contract Counterparty Preference Actions (as defined below).

4.       This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Encumbrances or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), Purchaser, and all successors and assigns of Purchaser, the Purchased Assets, and any trustees, if any, subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' Chapter 11 Cases. This Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Committee, the Purchaser, and the respective successors and assigns of each of the foregoing.

5.    **Transition Services Agreement**. The Purchaser and Debtors are hereby authorized, without the need for any further approvals, authorization, or orders of the Court, to enter into, execute, and perform all obligations under the Transition Services Agreement, which, in consultation with the Committee, shall be in form and substance satisfactory to the Purchaser and the Debtors, provided that entry into the Transition Services Agreement shall be subject to the Committee's TSA Objection Right.   Promptly after the execution of the Transition Services Agreement, the Debtors shall file such Transition Services Agreement on the docket of the Chapter 11 Cases. All payments (including prepayments) made by the Purchaser to the Debtors under the Transition Services Agreement for reimbursement of their costs and expenses in performing thereunder shall (i) be held in trust by the Debtors for the exclusive benefit of the applicable recipients associated with such costs and expenses (including without limitation the fees and expenses of estate professionals), (ii) shall not constitute property of the Debtors' estates, and (iii) to the extent not paid to the applicable recipient contemplated under subsection (i) of this paragraph 5, shall be immediately transferred to the Purchaser. The Transition Services Agreement shall be substantially cost neutral to the party providing transition services (either by the Debtors' estates or the Purchaser, as applicable).

6.    In the event that the Transition Services Agreement is entered into in accordance with the terms of this Sale Order, solely for purposes of Section 503(c) of the Bankruptcy Code, the Transferred Employees will be deemed transferred to the Purchaser as of the Closing Date. As a result, without limiting any other provisions of this Sale Order or the APA, following the Closing Date, the Debtors, without further order of the Court, are authorized to pay all costs of the Employee Bonus Programs (as defined in the Supplemental Pometti Declaration) for Transferred

Employees, solely to the extent that the Debtors receive funds to pay such amounts from the Purchaser under the terms of the Transition Services Agreement.

7.      Notwithstanding anything in the APA (including any amendments thereto), any Cure Notice, or this Sale Order to the contrary, the lease governing the Debtors' office space located at 49 South 2nd Street, Brooklyn, NY 11249 (the "Brooklyn Lease") (a) shall only become a Purchased Contract upon written notice from Purchaser to the Debtors of an election to treat the Brooklyn Lease as a Purchased Contract, which notice may be given at any time prior to the Debtors' rejection of the Brooklyn Lease; (b) all the Debtors' and Purchasers' rights and obligations under the Brooklyn Lease will be governed by the Brooklyn Lease as modified by the Transition Services Agreement; and (c) the Debtors shall not reject the Brooklyn Lease without the consent of the Purchaser.

8.      **Transfer of Purchased Assets Free and Clear of Encumbrances**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets to Purchaser in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title in and to the Purchased Assets and, other than the Assumed Liabilities, Purchaser shall take title to and possession of the Purchased Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances), including, but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against

the Purchased Assets or their proceeds, if any, subject to any rights, claims, and defenses the

Debtors or their estates, as applicable, may possess with respect thereto; *provided that* pursuant to

and in accordance with the APA and this Sale Order, the Debtors shall retain the Excluded Assets,

including the Excluded Cash.

9.     Unless otherwise expressly included in the definition of "Assumed Liabilities" or

"Permitted Encumbrances" in the APA, Purchaser shall not be responsible for any Encumbrances,

including, without limitation, in respect of the following: (a) any labor or employment agreements;

(b) any mortgages, deeds of trust, and security interests; (c) any pension, welfare, compensation,

or other employee benefit plans, agreements, practices, and programs, including, without

limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation,

occupational disease, or unemployment or temporary disability related claim, including, without

limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement

Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil

Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations

Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the

Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management

Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act,

(xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive

Environmental Response Compensation and Liability Act, (xv) state discrimination laws, (xvi)

state unemployment compensation laws or any other similar state laws, or (xvii) any other state or

federal benefits or claims relating to any employment with the Debtors or any of its respective

predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without

limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (g) any

escheat or unclaimed property laws; (h) to the extent not included in the foregoing, any of the Excluded Liabilities under the APA; and (i) any theories of successor or transferee liability.

10.    All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to Purchaser in accordance with the APA on the Closing Date or at such time thereafter as Purchaser may request. On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Purchased Assets, if any, other than Permitted Encumbrances, as such Encumbrances may have been recorded or may otherwise exist.

11.    If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances (other than Permitted Encumbrances) on, against, or in, all or any portion of the Purchased Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of such Encumbrances, liens, claims, interests, or other interests that the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized, and Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets and otherwise seek relief from the Court pursuant to this Sale Order, if necessary.

12.    On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to Purchaser of

the Debtors' interests in the Purchased Assets. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interest of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Encumbrances, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected. This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities and other than Permitted Encumbrances.

13.    **Prohibition of Actions Against Purchaser**. Except for the Assumed Liabilities, Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets or other Assumed Liabilities expressly identified in the APA, including, but not limited to, any liability for any Encumbrances (other than Permitted Encumbrances), whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors,

including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

14.    Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the APA, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate) arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to Purchaser in accordance with the APA are hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property or the Purchased Assets or such persons' or entities' Encumbrances in, on, or to the Purchased Assets, including, without limitation, the following actions:  (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its successors, assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements

or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

15.    To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets to the extent transferred in the APA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.

16.    Pursuant to the terms of the APA, Purchaser and the Debtors shall use their reasonable efforts (as provided in the APA) to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary under applicable Law to consummate and make effective the transactions contemplated by the APA, including, without limitation, with respect to any and all Permit Approvals.  If any Permit Approval is not obtained prior to the Closing, then, until the earlier of such time as (a) such Permit Approval is obtained by Debtors, (b) Purchaser separately obtains any such Permit (sufficient to conduct the business of the Company and its Subsidiaries in the Ordinary Course) and (c) the closing of the Chapter 11 Cases, Debtors shall, and shall cause their respective Subsidiaries to continue to, use reasonable best efforts to obtain, or cause to be obtained, such Permit Approval, and Purchaser shall reasonably cooperate with the Debtors, at Purchaser's sole cost and expense, subject to any approval of this Court that may be required, and the Debtors shall and shall cause their Subsidiaries to enter into an arrangement reasonably acceptable to Purchaser as set forth in the APA.  Upon obtaining the relevant Permit Approval,

each Debtor shall, and shall cause any of its applicable Subsidiaries to, promptly sell, convey, assign, transfer and deliver to Purchaser such Permit for no additional consideration.

17.     Nothing in the APA or this Sale Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) lease or (f) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

18.     No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

19.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the APA and this Sale Order.

20.     Purchaser has given substantial consideration under the APA and this Sale Order for the benefit of the Debtors, their estates, and their creditors.  The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of Encumbrances or liens against or interests in, or claims against, any of the Debtors or any of the Purchased Assets, other than with respect to the Assumed Liabilities and other than Permitted Encumbrances.  The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

21.     None of the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the APA and this Sale Order.

22.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Sale Order, including, without limitation, the APA and the Sale.

23.     **Assumption and Assignment of Contracts**.  The Debtors are hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to Purchaser, in accordance with the APA, effective upon the Closing Date, the Purchased Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Encumbrances) and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be reasonably necessary to assign and transfer the Purchased Contracts and the Assumed Liabilities to Purchaser in accordance with the APA.

24.     With respect to the Purchased Contracts:  (a) each Purchased Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Purchased Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Purchased Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the party to such Purchased Contract

to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each Purchased Contract, in accordance with the APA, have been satisfied; (e) the Purchased Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of, Purchaser in accordance with the APA, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment to and assumption by Purchaser in accordance with the APA; (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Purchased Contract; and (g) upon the Closing Date, all actions arising under section 547 of the Bankruptcy Code, or any analogous provision arising under applicable state law, against any non-Debtor counterparty to each Purchased Contract ("Purchased Contract Counterparty Preference Actions") shall be deemed waived, released and extinguished.

25.     All defaults or other obligations of the Debtors under the Purchased Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or promptly thereafter by payment of the Cure Amounts in accordance with the APA.  To the extent that any counterparty to a Purchased Contract did not or does not

object to its Cure Amount by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Purchased Contract(s) to Purchaser in accordance with the APA.

26.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, Purchaser, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the Cure Notice reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Purchased Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Purchaser of the Purchased Contracts in accordance with the APA.

27.     Upon the Debtors' assignment of the Purchased Contracts to Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts by the Debtors, no default shall exist under any Purchased Contract, and no counterparty to any Purchased Contract shall be permitted (a) to declare a default by Purchaser under such Purchased Contract or (b) otherwise take action against Purchaser as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Purchased Contract.  Each non-Debtor party to a Purchased Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against Purchaser, any counterclaim, defense, setoff, recoupment, or any other Claim asserted or assertable against the Debtors, and (ii) imposing or charging against Purchaser any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption

and assignment to Purchaser of any Purchased Contract in accordance with the APA. The validity of such assumption and assignment of each Purchased Contract shall not be affected by any dispute between the Debtors and any non-Debtors party to a Purchased Contract relating to such contract's respective Cure Amounts, provided that the Buyer, in accordance with the terms of the APA, shall be responsible to pay any Cure Amount ultimately determined by the Court.

28. Except as provided in the APA or this Sale Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of Encumbrances, liens, claims, and interests are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property, or their assets or estates. The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Purchased Contracts.

29. Notwithstanding anything herein to the contrary and subject to the APA, prior to the Closing Date, Purchaser may, pursuant to the procedures set forth in the APA, (a) add any Contract to the Original Contract & Cure Schedule at any time prior to five (5) Business Days prior to the Closing Date, and thereby include such Contract in the definition of Purchased Contracts, and (b) remove any Contract from the Original Contract & Cure Schedule at any time prior to one (1) Business Day prior to the Closing Date, and thereby exclude such Contract from the definition of Purchased Contracts. Automatically upon the elimination of any Contract as a Purchased Contract, such Contract will constitute an Excluded Asset and will not be assigned to Purchaser, and no Liabilities arising thereunder or relating thereto shall be assumed by Purchaser. To the extent applicable, the Debtors shall provide the Purchaser with the Contract & Cure Update

Schedule (as defined in the APA) as required pursuant to the terms of the APA, and comply with all requirements pursuant to the terms of the APA, including, without limitation, using commercially reasonable efforts to establish proper Cure Costs for each Purchased Contract, including any added Contract, prior to the Closing Date.

30.    The Purchaser has demonstrated adequate assurance of future performance under the relevant Purchased Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

31.    **A&E Television Networks, LLC**. Notwithstanding anything to the contrary in this Order, in the event that the Amended and Restated Limited Liability Company Agreement of Vice Television Network, LLC (as amended, restated or otherwise modified from time to time, the "Vice TV LLCA") or any Ancillary Agreements (as defined in the Vice TV LLCA) are assumed by the Debtors and assigned to the Purchaser, (i) all rights and obligations (including indemnity obligations regardless of when the indemnified claims arise) under the Vice TV LLCA and the Ancillary Agreements shall continue to be in full force and effect and binding on the Purchaser and the equity interests in Vice Television Network, LLC ("Vice TV").  If the Debtors or Purchaser remove the Vice TV LLCA or any of the Ancillary Agreements, as applicable, from the Original Contract & Cure Schedule (or any subsequently filed contract and cure schedule)  (such removed contracts, the "Removed Contracts"), A&E Television Networks, LLC ("AETN") on behalf of itself or Vice TV shall have **ten (10) days** from the date of notice of such removal to object to the assumption and assignment of any other contract (each, a "Designated Assigned Contract") on the basis that the assumption and assignment of such contracts to the Purchaser is not permitted without the assumption and assignment of the Removed Contracts (an "AETN Contract Dispute"); provided that (i) if an AETN Contract Dispute has been filed with the Court and not resolved prior

to the Closing Date, or the deadline to commence an AETN Contract Dispute has not lapsed prior to the Closing Date, each Designated Assigned Contract shall be deemed assumed by the Debtors and assigned to the Purchaser pursuant to the terms of the Purchase Agreement and Sale Order as of the Closing Date; (ii) the assumption and assignment of a Designated Assigned Contract shall not prejudice the right to commence, prosecute or defend an AETN Contract Dispute pursuant to the terms hereof; and (iii) if the Court enters an order determining that any such Removed Contract must be assumed and assigned with any other Designated Assigned Contract, Purchaser shall be permitted to, within five (5) days of such order, either take assignment of such Removed Contract or redesignate any Designated Assigned Contract as an Excluded Contract consistent with the Court's order, in either case effective as of the Closing Date. AETN reserves the right to object to the Cure Amount if any additional amounts become owing and past due under the Vice TV LLCA or the Ancillary Agreements following the date the updated Cure Amount is filed and prior to the Closing Date and nothing in this Order shall prejudice such right.

32.    **TPG/SSP**. Notwithstanding anything to the contrary set forth in this Sale Order, nothing in this Sale Order shall in any fashion amend, modify, restrict, limit or override any of the rights or obligations of the parties thereto (including, without limitation, Purchaser) under that certain Proceeds Agreement, dated as of March 21, 2023 (the "Proceeds Agreement"), by and among (i) the Prepetition First Lien Lenders, (ii) the Prepetition Administrative Agent and (iii) TPG Virat Holdings 1, L.P., Sixth Street Virat Holdings 2, LLC and Sixth Street Virat Holdings 3, LLC, and acknowledged by Vice Group Holding Inc., for itself and its subsidiaries, and the enforcement or interpretation of the Proceeds Agreement as among the parties thereto is hereby reserved.

33.    **Guilds**. Notwithstanding anything to the contrary in the APA, Purchaser will be responsible for post-Closing Guild Residuals to the extent any Item of Product was produced subject to a Guild Collective Bargaining Agreement (as the foregoing terms are defined in the APA, and collectively, "Covered Motion Pictures").  For the avoidance of doubt, post-Closing Guild Residuals means only those Residuals that have accrued and become payable for the first time after the Closing Date.  Where applicable to the Covered Motion Pictures, perfected security agreements held by the Guilds are Permitted Encumbrances and shall continue to remain in full force and effect without modification or prejudice by this Order.  At Closing or as soon as reasonably practicable thereafter, Purchaser will deliver Guild assumption agreements (in a form that is consistent with customary entertainment industry practices with respect to the Guilds) that limits Purchaser's obligation to post-Closing Guild Residuals only.

34.    **HBO**.  Reference is made to that certain production services agreement dated as of September 29, 2011 (as amended from time to time, including via email agreement dated August 20, 2019, the "HBO Agreement") which, among other things, provides for the production, license, and transfer of certain rights of the Debtors in the television series "Vice News Tonight" to Home Box Office Inc. ("HBO") and "buyback" rights, including, without limitation, rights in and to the certain television episodes constituting "Vice News Tonight" and Vice Weekly Show and Specials (together, the "Rights"), in favor of the Debtors.  For the avoidance of doubt, in the event that the HBO Agreement is not assumed and assigned to Purchaser under the APA and this Sale Order, the Rights shall not constitute Purchased Assets under the APA and this Sale Order and shall not otherwise be included in the Sale.

35.    **Warner Bros. Domestic**. Reference is made to that certain License Agreement, dated as of January 9, 2023, between Warner Bros. Domestic Television Distribution, a division

of Warner Bros. Worldwide Television Distribution Inc. ("Warner") and VTV Productions LLC ("VTV") (as amended from time to time, the "Warner Bros. Agreement") which, among other things, sets forth the terms and conditions upon which Warner licensed to VTV seven (7) feature films listed thereto on Schedule A to the Warner Bros. Agreement ("WBDTD Films"). For the avoidance of doubt, in the event that the Warner Bros. Agreement is not assumed and assigned to Purchaser under the APA and this Sale Order, neither the limited license provided to VTV under the Warner Bros. Agreement nor the WBDTD Films shall not constitute Purchased Assets under the APA and this Sale Order and shall not otherwise be included in the Sale.

36.    **Cigna**. Notwithstanding anything to the contrary in this Sale Order, or any Notice related thereto, the Employee Benefits Agreements (as defined in the *Objection of Cigna to Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 140] (the "Cigna Objection")) shall be assumed by the Debtors on the Closing Date and assigned to the Purchaser either on the Closing Date or a date that is prior to the expiration of the Transition Services Agreement, and, in lieu of cure, all obligations due and unpaid under the Employee Benefits Contracts accruing prior to the assumption of the Employee Benefits Contracts shall pass through to Purchaser and survive assumption and assignment, and nothing in this Sale Order or section 365 of the Bankruptcy Code shall affect such obligations. The Debtors shall provide Cigna with five (5) business days' notice of the assignment effective date.

37.    **Paramount**. Notwithstanding anything herein to the contrary, nothing contained in this Sale Order (including the free and clear or 363(f) findings and provisions in this Sale Order (the "Free and Clear Provisions")) shall extinguish, impair, or otherwise affect any defenses of Paramount Global and its subsidiaries and affiliates, including Pluto Inc. and Showtime Networks, Inc. (collectively, "Paramount") to any claim or right of payment against Paramount,

including any defense of recoupment or setoff; provided, however, that (i) this paragraph 37 shall not preserve any affirmative right of recovery or claim of Paramount against Purchaser or the Purchased Assets, and (ii) this paragraph 37 shall not extinguish, impair, or otherwise affect any defense or response (other than on account of the Free and Clear Provisions) that the Debtors or Purchaser may have to any defense asserted by Paramount, including any defense or response that the Debtors or Purchaser may have as a result of the sale, transfer, or assignment of the Purchased Assets (including any claims or right to recovery from Paramount).

38.    **GMN Cayman**.  The Debtors are party to that certain Termination Deed entered into as of April 26, 2023 (the "Termination Deed"), by and between GMN Cayman Holdco LLC and GMN Cayman Ltd. (collectively, the "GMN Parties"), on the one hand, and Vice Group Holding Inc., Vice Media LLC, Vice Distribution LLC, and Vice Holding Inc. (each on behalf of itself and its bankruptcy estate as a debtor-in-possession, collectively, the "Vice Parties"), on the other hand.  On June 16, 2023, the GMN Parties filed the *Objection And Reservation Of Rights Of GMN Cayman Holdco LLC And GMN Cayman Ltd To The Sale Of Substantially All Of The Debtors' Assets* [Docket No. 167] (the "GMN Objection").  Capitalized terms not otherwise defined herein will have the meaning given to such terms in the APA or the Termination Deed, as applicable.  The inclusion of this paragraph in this Sale Order resolves the GMN Objection as set forth herein.  This paragraph will be effective only upon Closing.  Except as and to the extent expressly supplemented or modified by this paragraph 38, the Termination Deed is not otherwise being amended, modified, or supplemented and remains in full force and effect in accordance with its terms:

    a)  Upon Closing, and notwithstanding anything to the contrary in this Sale Order, the APA, or the Cure Notice (including any supplements or amendments thereto), the

Termination Deed shall constitute a Purchased Contract with no Cure Amount owing with respect thereto, subject to the terms and conditions of this paragraph 38(a);

b) Upon the later of (i) July 17, 2023 and (ii) the Closing Date (such Closing Date and wiring instructions to be provided by Purchaser via email to counsel to the GMN Parties as soon as practicable and no event later than at least three Business Days before the proposed Closing Date), GMN Cayman Holdco LLC shall pay to Purchaser in immediately available funds, without deduction (except as provided in sections 2.01(c) and 2.01(d) of the Termination Deed) or offset, the Second Termination Payment in the amount of US$20,000,000.00;

c) Effective upon Purchaser's receipt of the Second Termination Payment (the "Payment Event"), and without further action required on the part of the GMN Parties, the Vice Parties or Purchaser, Purchaser and the Vice Parties shall be deemed to have released and forever discharged the GMN Parties and their Affiliates of all and/or any actual or potential claims or causes of action, lawsuits, judgements, privileges, counterclaims, defenses, rights of recovery, rights of set-off, rights of subrogation and all other rights of any kind, whether known or unknown, whether direct or derivative, arising under (a) chapter 5 of the Bankruptcy Code, including sections 544, 547, 548, 549 and 550 of the Bankruptcy Code, and any similar Law, and/or (b) any other provision of the Bankruptcy Code or applicable Law based on, relating to, consisting of, or in any manner arising from (i) the Termination Deed, (ii) the GMN Cayman Dispute, and/or (iii) any acts or omissions of Purchaser, the GMN Parties, and/or the Vice Parties in any way relating to the Vice Parties and their affiliates; *provided, however,* such releases shall not include the release of any rights or obligations under the Termination

Deed (except as supplemented or modified herein and for the avoidance of doubt, the obligation of GMN Cayman Holdco LLC to pay the Purchaser pursuant to paragraph (b) above shall not be released) or the release of any claims, causes of action or defenses arising from any breach of the Termination Deed after the date of this Sale Order; *provided, further*, that nothing in this paragraph 28(c) shall modify or amend section 2.4 of the Termination Deed;

d)  Contemporaneous with and effective upon the Payment Event, the GMN Parties shall be deemed to have released and forever discharged the Vice Parties, Purchaser, and their respective Affiliates of all and/or any actual or potential claims or causes of action, lawsuits, judgements, privileges, counterclaims, defenses, rights of recovery, rights of set-off, rights of subrogation and all other rights of any kind, whether known or unknown, whether direct or derivative, arising under (a) the Bankruptcy Code and any similar Law, and/or (b) any other provision of applicable Law based on, relating to, consisting of, or in any manner arising from the (i) Termination Deed, (ii) the GMN Cayman Dispute, and/or (iii) any acts or omissions of Purchaser, the GMN Parties, and/or the Vice Parties in any way relating to the Vice Parties and their affiliates; *provided, however,* such releases shall not include the release of any rights or obligations under the Termination Deed (except as supplemented or modified herein) or the release of any claims, causes of action or defenses arising from any breach of the Termination Deed after the date of this Sale Order; *provided, further*, that nothing in this paragraph 38(d) shall modify or amend section 2.4 of the Termination Deed; and

e)  If the GMN Parties fail to pay the Second Termination Payment to Purchaser pursuant to the foregoing paragraph 38(b), the foregoing paragraphs 38(c) and 38(d) shall not be

effective and the rights, claims, causes of action and defenses of Purchaser, the Vice Parties and GMN Parties shall be fully preserved.

39.     The Court finds and concludes that Purchaser, at Closing, will have acquired all and/or any actual or potential claims or causes of action, lawsuits, judgements, privileges, counterclaims, defenses, rights of recovery, rights of set-off, rights of subrogation and all other rights being released under paragraph 38(c) above and can deliver such releases.

40.     **Pending Objections**. Subject to the terms of any subsequent order of the Court or written stipulation with the applicable objecting party, the entry of this Sale Order does not adjudicate or otherwise make any finding of fact or conclusion of law concerning the rights of the parties that filed the following objections, and the rights of such objecting parties with respect to the issues and matters specified in the respective Pending Objection, including, for the avoidance of doubt, any objection or reservation of rights as to the Transition Services Agreement and any requests to modify the Stalking Horse Agreement solely as to such objecting party (collectively, the "Pending Objections"), are hereby preserved: (i)  *Objection of Entertainment Industry Employers Association to Debtors' Proposed Assumption and Assignment of its Executory Contracts and Reservation of Rights* [Docket No. 141]; (ii) *Limited Objection of Fastly, Inc. to the Proposed Assumption of Certain Executory Contracts and Cure Costs, and Sale of Assets and Reservation of Rights* [Docket No. 159]; (iii) *Oracle's Limited Objection to and Reservation of Rights Regarding: (1) Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (III) Approving the Sale of Substantially All of the Debtors' Assets and (IV) Granting Related Relief; and (2) First Supplemental Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No.

160 and 157]; (iv) *Datasite LLC's Objection to the Debtors' Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and the Debtors' First Supplement to the Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 164]; (v) *Objection and Reservation of Rights of Concur Technologies, Inc. to the Debtors' Cure Notice and the Proposed Assumption and Assignment of its Executory Contract* [Docket No. 169]; (vi) *Objection and Reservation of Rights of Showtime to Debtors' Sale Motion* [Docket No. 174]; (vii) *Objection and Reservation of Rights of GMN Cayman HoldCo LLC and GMN Cayman Ltd to the Sale of Substantially all of the Debtors' Assets* [Docket No. 167]; the (viii) *Limited Objection of CNN Productions, Inc. to Debtors' Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (III) Approving the Sale of Substantially All of the Debtors' Assets and (IV) Granting Related Relief [DKT No. 16]; and Reservation of Rights* [Docket No. 186]; and (iv) the *Reservation of Rights of A&E Television Networks, LLC to (I) Debtors' Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) the Sale of Substantially all of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code* [Docket No. 180].  To the extent any of the Pending Objections remain unresolved, the Court shall conduct a hearing on any such Pending Objection on **June 29, 2023, at 10:00 a.m.** (Eastern Time), or at such later date or time as the Court may determine.  Notwithstanding anything herein to the contrary, this Sale Order is binding and effective as to any person or entity that did not file a Pending Objection, and any relief with respect to the Pending Objections, if not consensually resolved, shall be limited to the person or entity that filed the applicable Pending Objection.

41.    **Good Faith**.    The transactions contemplated by the APA are undertaken by Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Purchased Contracts) with Purchaser, unless such authorization is duly stayed pending such appeal.    Purchaser is a good faith purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

42.    **Failure to Specify Provisions**.    The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Sale Order shall govern if there is any inconsistency between the APA (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

43.    **Non-Material Modifications**.    The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

44.    **Amounts Payable by Debtors**.    Any amounts payable by any Debtor to the Purchaser under the agreements or any of the documents delivered by any Debtor in connection

with the APA or this Sale Order shall be paid in the manner provided in the APA and the Bid

Procedures Order, without further order of this Court, shall be allowed administrative claims in an

amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the

Bankruptcy Code, shall have the other protections provided in the Bid Procedures Order, and shall

not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor,

except by an express agreement with Purchaser, its successors, or assigns.

45.    **Purchaser Release**.  Effective immediately following the Closing, each Debtor for

itself and for its successors and assigns shall be deemed to fully and forever release and discharge

Purchaser and its Affiliates (including the DIP Secured Parties and the Prepetition Secured Parties)

and its and their respective directors, officers, control persons (as defined in Section 15 of the

Securities Act, or Section 20 of the Exchange Act), members, employees, agents, attorneys,

financial advisors, consultants, representatives, shareholders, partners, successors and assigns

solely in their capacity as such (each, a "Purchaser Released Person"), from any liability

whatsoever on or otherwise in relation to all Released Claims. For purposes of this paragraph, the

term "Released Claims" means any claim, counterclaim, setoff, recoupment, action or cause of

action of any kind or nature whatsoever and other similar rights, demands, lawsuits and complaints,

debts, losses, obligations, liabilities, rights, rights of recovery and damages of every kind or nature

whatsoever, whether known or unknown, asserted or unasserted, and whether for general, special,

statutory, punitive or other damages, sanctions, costs, or attorney's fees, or for equitable,

declaratory, injunctive, reimbursement, or other relief, in each case including all derivative claims

and whether currently pending or in process and whether arising in the past, present or future and

in respect of the Sale or action or failure to take action at any time at or prior to the Closing Date

that any Debtor has or is entitled to make or assert, file or bring against any Purchaser Released

Person; *provided that* "Released Claims" shall not refer to or include any claim, cause of action, obligation, suit, judgment, damage, demand, loss, or liability stemming from the actual fraud, willful misconduct, or gross negligence of any Purchaser Released Person as determined by a court of appropriate jurisdiction. Notwithstanding anything set forth herein to the contrary, the releases set forth herein do not extend to any obligations of the parties under the APA or any other Transaction Document pursuant to the terms thereof.

46.    **Other Provisions**.    Nothing in the APA or this Sale Order shall be deemed to amend, modify, or limit the rights and claims of the DIP Agents, the Prepetition Term Agents, the DIP Lenders, or the Prepetition First Lien Lenders pursuant to the DIP Order, the DIP Documents, or the Prepetition First Lien Loan Documents, or in respect of the DIP Obligations or the Prepetition First Lien Loan Obligations, or the liens, security interests, or claims of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent, or the Prepetition First Lien Lenders, until the Closing Date of the Sale and only to the extent permitted and as contemplated by the APA and the transactions contemplated thereunder.    For the avoidance of doubt, any claims on account of the Prepetition First Lien Loan Obligations not included in the Credit Bid Consideration pursuant to section 363(k) of the Bankruptcy Code shall remain outstanding against the relevant Debtors until the repayment in full in cash or other agreed treatment of the Prepetition First Lien Obligations and all claims in respect of the Prepetition First Lien Obligations shall remain outstanding until the consummation of the Sale.

47.    To the extent that the Debtors receive any of the Purchased Assets (including for the avoidance of doubt any receivables) following the Closing, such Assets (i) shall be held in trust by the Debtors for the exclusive benefit of the Purchaser, (ii) shall not constitute property of the Debtors' estates, and (iii) shall be immediately transferred to the Purchaser.

48.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the APA or this Sale Order.

49.    **Survival**.  The terms and provisions of this Sale Order and the terms and provisions of the APA and any actions taken pursuant hereto or thereto as of the date of the entry of the Sale Order shall survive the entry of any order that may be entered, including, without limitation, converting the Debtors' cases from chapter 11 to chapter 7 or dismissing the Debtors' cases, and the terms and provisions of the APA, as well as the rights and interests granted pursuant to this Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon the Debtors and all other parties and their respective successors and permitted assigns, including any trustee, examiner, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

50.    **Staged Closing**.  Notwithstanding anything to the contrary herein and in furtherance of section 7.03 of the APA, in the event any notices, approvals or clearances identified in the APA will not be obtained by the July 9, 2023, in accordance with the Bankruptcy Court Milestones, the Debtors are authorized, with the consent of Purchaser and in consultation with the Committee, to close the sale of the Purchased Assets through multiple staged closings, and to take all steps reasonably necessary in connection therewith.

51.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately

upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors and Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

52. **Calculation of Time**.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006.

53. **Further Assurances**.  From time to time, as and when requested by any party and to the extent contemplated by the APA, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the APA, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Purchased Assets.

54. **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to Purchaser in accordance with the APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the APA, (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, (c) protect Purchaser against any Encumbrances or other interests in the Debtors or the Purchased Assets of any kind or nature whatsoever, attaching

to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts.

Dated: June 23, 2023

/s/John P. Mastando III
UNITED STATES BANKRUPTCY JUDGE