Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:    rfeinstein@pszjlaw.com
            bsandler@pszjlaw.com
            plabov@pszjlaw.com
            crobinson@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :         **Chapter 11**
                                                            :
**VICE GROUP HOLDING INC.,** *et al.,*[1]                   :         **Case No. 23-10738 (JPM)**
                                                            :
                                                            :         **(Jointly Administered)**
                        **Debtors.**                        :
------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' MOTION TO (I) DENY REIMBURSEMENT
OF CERTAIN FEES AND EXPENSES OF FORTRESS AND (II) COMPEL
DISGORGEMENT OF AN IMPROPER POSTPETITION TRANSFER TO FORTRESS**

  **PLEASE TAKE NOTICE** that upon the *Motion of the Official Committee of Unsecured*

*Creditors to (I) Deny Reimbursement of Certain Fees and Expenses of Fortress and (II) Compel*

*Disgorgement of an Improper Postpetition Transfer to Fortress* (the "<u>Motion</u>"), the Official

---

[1]   The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their respective federal tax identification numbers is not provided herein.  Such list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned bankruptcy cases of Vice Group Holding Inc., *et al.*, debtors and debtors in possession (the "Debtors"), will present to the Honorable John P. Mastando III, United States Bankruptcy Judge, for signature, on **October 19, 2023 at 12:00 p.m. (Eastern Time)**, the proposed *Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of May 25, 2023* attached to the Motion as **Exhibit B**.

PLEASE TAKE FURTHER NOTICE that any responses or objections ("Objections"), if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, so as to be so filed and received by: (i) the Honorable James P. Mastando III, United States Bankruptcy Judge for the Southern District of New York, United States Bankruptcy Court for the Southern District of New York One Bowling Green, Courtroom 501, New York, NY 10004-1408; (ii) proposed counsel to the Committee, Pachulski, Stang, Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017, Attn: Bradford J. Sandler (bsandler@pszjlaw.com) and Robert J. Feinstein (rfeinstein@pszjlaw.com); (iii) proposed counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119, Attn: Albert Togut, Esq. (altogut@teamtogut.com) and Kyle J. Ortiz, Esq. (kortiz@teamtogut.com); (iv) proposed special

counsel for the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn.: Fredric Sosnick. Esq. (FSosnick@Shearman.com) and Shearman & Sterling LLP, 2601 Olive Street, 17th Floor, Dallas, TX 75201, Attn.: Ian E. Roberts, Esq. (Ian.Roberts@Shearman.com); and (v) the Office of the United States Trustee for the Southern District of New York (the "United States Trustee"), One Bowling Green, Room 534, New York, NY 10004, Attn: Andrea B. Schwartz, Esq. (Andrea.B.Schwartz@usdoj.gov) and Annie Wells, Esq. (Annie.Wells@usdoj.gov).

    **PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not filed and served by the Objection Deadline, the Bankruptcy Court may enter an order granting the relief sought without a hearing.

Dated:  September 28, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Robert J. Feinstein*
Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
           bsandler@pszjlaw.com
           plabov@pszjlaw.com
           crobinson@pszjlaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:    rfeinstein@pszjlaw.com
          bsandler@pszjlaw.com
          plabov@pszjlaw.com
          crobinson@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :          **Chapter 11**
                                                            :
**VICE GROUP HOLDING INC.,** *et al.,*[2]                   :          **Case No. 23-10738 (JPM)**
                                                            :
                                                            :          **(Jointly Administered)**
                    **Debtors.**                            :
------------------------------------------------------------x

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO (I) DENY REIMBURSEMENT OF CERTAIN FEES AND EXPENSES OF FORTRESS AND (II) COMPEL DISGORGEMENT OF AN IMPROPER POSTPETITION TRANSFER TO FORTRESS

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-

captioned bankruptcy cases of Vice Group Holding Inc., *et al.*, debtors and debtors in possession

(the "Debtors"), hereby files this motion the ("Motion"): (i) to deny the release of a fee reserve set

---

[2]   The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large
      number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their
      respective federal tax identification numbers is not provided herein. Such list may be obtained on the website of
      the Debtors' claims and noticing agent at https://cases.stretto.com/vice. The location of the Debtors' service
      address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

aside for the reimbursement of Fortress Credit Corp. on behalf of the ad hoc group of prepetition secured lenders and debtor-in-possession lenders (collectively, "Fortress") on account of fees and expenses of its financial advisor Houlihan Lokey ("Houlihan") pursuant to the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Granting Adequate Protection to Prepetition Secured Parties, and (V) Granting Related Relief* [Dkt. No. 138] (the "Final DIP Order");[3] and (ii) compel disgorgement of an unauthorized postpetition transfer to Fortress of $150,000 on account of Houlihan Lokey fees.

In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.    These cases are on the verge of conversion to chapter 7 because the Debtors were forced to consummate the sale of their assets to their senior secured creditor on the basis that they were left deeply administratively insolvent. The Committee makes this motion so that the claims and issues addressed herein are preserved for consideration and prosecution by a chapter 7 trustee appointed after the inevitable conversion of these cases in the near future.

2.    It has become apparent to the Committee that, in violation of the Final DIP Order, months ago, Fortress improperly sought and received reimbursement of $150,000 on account of its financial advisor's fees without compliance with the requirements of the DIP order, including providing a copy of the invoice to the Committee along with a ten-day opportunity to object. Notwithstanding this requirement, the process was completely ignored and payment was made anyway, and thus it should be returned to the estate as it was not properly authorized. Additionally, another unfortunate development is that Fortress seeks the release to it of a

---

[3]    Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Final DIP Order.

$475,000 fee reserve (the "<u>Houlihan Fee Reserve</u>").  The Houlihan Fee Reserve was set aside by the Debtors ostensibly to reimburse Fortress for a portion of Houlihan's fees that also were not submitted to the Committee to review until after the Committee recently complained that Fortress did not comply with the DIP Order and Sale Order.[4]

3.    Put simply, Fortress is not entitled to the Houlihan Fee Reserve because, as set forth in the correspondence attached hereto, the reimbursement request is a "DIP Obligation" that was already satisfied at the sale closing since Fortress was required to, and did, credit bid all DIP Obligations first and its prepetition debt second. Thus, any professional fees that had not yet been reimbursed as of the sale closing were DIP  Obligations (as Fortress agreed) that had to be and were in fact credit bid and therefore already satisfied and should not be paid a second time.  Nevertheless, Fortress now seeks to double dip and take the cash in the Houlihan Fee Reserve.

4.    Specifically, Fortress's purchase price of $350 million exceeded the total outstanding "DIP Obligations," so Fortress was required to credit bid the entirety of the outstanding DIP Obligations (including the amounts it owed to Houlihan) and a portion of their prepetition secured debt to pay the purchase price. The term "DIP Obligations" as defined in the Final DIP Order and the DIP Loan Agreement includes principal, interest and fees, including the Fortress's professional fees.  Houlihan's invoices for which Fortress is now seeking reimbursement were part of the "DIP Obligations" that were credit bid.  Once the credit bid was accepted and Fortress was deemed to be the winning bidder (and closed on the sale), its outstanding and unpaid fees and expenses were satisfied in full.  Accordingly, no further

---

[4]    *Order (a) Approving the Asset and Equity Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Dkt. No. 214].

reimbursement or payment of Fortress's professional fees, including those for Houlihan, is appropriate.

5.     In addition to denying Fortress access to the Houlihan Fee Reserve and any additional payment of the Houlihan Invoices, the Committee seeks to compel disgorgement of the unauthorized postpetition transfer of $150,000 on account of Houlihan's invoice for July 2023 services.  Fortress does not deny (nor could it) that it received that payment without having complied with the Final DIP Order requirement that invoices be circulated to the Committee for review and approval and an opportunity to object. Accordingly, the $150,000 payment to Fortress was an unauthorized postpetition transfer and must be returned to the estate.

6.     Based on the foregoing and for the reasons set forth below, the Committee urges the Court deny the release of the Houlihan Fee Reserve (and permit it to be released to the Debtors' estates free and clear of any liens), and compel the repayment of the unauthorized postpetition transfer in the amount of $150,000.

## BACKGROUND

### A.     General Background

7.     On May 15, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

8.     On May 23, 2023, the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  The

Committee consists of: (a) Wipro LLC; (b) OMnet LLC; (c) Horizon Media LLC; (d) XWP Co. Pty Ltd.; and (e) Wolftech Broadcast Solutions AS.

9.     The Final DIP Order was entered on June 13, 2023 [Dkt. No. 138].  The Sale Order was entered ten days later on June 23, 2023.

10.   As the record of the case will reflect, Fortress demanded that the Debtors waive a condition in the asset purchase agreement that the Debtors have adequate funds to conduct an orderly wind-down.  The funds were not available and Fortress refused to budge, requiring the Debtors to waive that contract condition, leaving the estates administratively insolvent upon closing.  Nonetheless, Fortress has continued to seek reimbursement of its professional fees and expenses, but completely disregarded the requirements of the Final DIP Order.

11.   By email dated August 23, 2023, counsel to Fortress emailed to counsel for the Committee, for the first time, copies of the Houlihan Invoices.  On August 28, 2023, counsel for the Committee delivered via email its specific objections to the Disputed Invoiced Fees.  A copy of the Committee's objection letter is attached hereto as **Exhibit A**.  This motion is a follow-up to that letter so that the matter may be adjudicated by the Court.

12.   Specifically, because the Committee and Fortress have not resolved their dispute over the Houlihan Invoices, relief requested herein in accordance with the Final DIP Order. *See* Final DIP Order, ¶20(b) ("The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or other pleading).

13. This relief requested herein is also critical in light of the procedural posture of these cases. The sale left the estates administratively insolvent and with conversion to chapter 7 imminent, the Committee asserts these significant fees disputes now so that they are preserved for the Chapter 7 trustee to address. Additionally, Fortress is not entitled to the Houlihan Fee Reserve, the funds of which should be made available to the Debtors' estates (including the future Chapter 7 trustee).

**ARGUMENT**

**A.     Fortress Failed to Properly Submit the Houlihan Invoices to the Committee**

14. The plain language of the Final DIP Order provides that Fortress was required to circulate the Houlihan Invoices to the Committee. The Final DIP Order provides, in pertinent part:

> The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in Paragraphs 3(e)(3) and 9(c) of this Final Order (collectively, the "Lender Professionals" and, each, a "Lender Professional") no later than ten (10) business days (the "Review Period") after the receipt by counsel for the Debtors, the Committee and the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date . . .
>
> The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or other pleading).

Final DIP Order, ¶20(b).

15. Fortress cannot dispute that until August 23, 2023, over two months after entry of the Final DIP Order and Sale Order, it never provided the Houlihan Invoices to the Committee

for approval. By this point in time, Fortress had already received $150,000 improperly. Nor did it provide a copy of Houlihan's engagement letter or indicate in the post-sale period it would seek reimbursement of Houlihan's fees and expenses. Failure to adhere to the DIP Order for over two months alone should suffice to deny Fortress's request.

16. Putting aside Fortress's failure to provide notice to the Committee of the Houlihan Invoices until August 23, 2023 and receiving an unauthorized postpetition transfer, the release of the Houlihan Reserve Fee and any further payment of the Houlihan Invoices, in whole, or in part, must be denied because the expenses were unsatisfied as of the time of the closing of the credit bid sale of the Debtors' assets to Fortress. And those DIP Obligations were satisfied by the credit bid.

17. The Sale Order required Fortress to first, credit bid all of its DIP Obligations, including, without limitation, any unreimbursed professional fees that were part of the DIP Obligations, and then, second, its prepetition secured debt.

18. The Sale Order in paragraph P states in pertinent part:

> Pursuant to the terms of the APA and the DIP Order, the Prepetition First Lien Lenders and DIP Lenders are secured creditors of the Debtors, holding allowed Claims in the amount of the Prepetition First Lien Obligations and DIP Obligations (each as defined in the DIP Order) secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates and the property of their estates …. of which the full amount of the DIP Obligations will be credit bid in connection with the Sale and APA, with the remaining amount of the Purchase Price satisfied through a credit bid of such amount of the Prepetition First Lien Obligations …."

Sale Order, ¶P.

19. Because Fortress's purchase price of $350 million exceeded the total outstanding "DIP Obligations," Fortress was required to credit bid the entirety of its then outstanding DIP

Obligations and a portion of their prepetition secured debt to pay the purchase price. The term "DIP Obligations" is defined as follows:

20. The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Loan Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and all other obligations under the DIP Loan Documents (collectively, the "DIP Obligations"). DIP Order, ¶E(iii).

21. Additionally, the term "Obligations" also is defined in the DIP Credit Agreement as:

> "**Obligations**" means all obligations (whether now existing or hereafter arising, absolute or contingent, joint, several, or independent, including as a guarantor) of every nature of each Credit Party from time to time owed to the Agents (including former Agents) or the Lenders, under any Credit Document, in each case whether for principal, interest (including interest which, but for the filing of a petition in bankruptcy with respect to such Credit Party, would have accrued on any Obligation, whether or not a claim is allowed against such Credit Party for such interest in the related bankruptcy proceeding), **fees (including the Exit Fee and fees accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), expenses, Attorney Costs, indemnification or otherwise** …."

(emphasis supplied).

22. The plain language of the Final DIP Order (and DIP Credit Agreement) unequivocally support the conclusion the Houlihan Invoices were a part of the "DIP Obligations" that were included in Fortress's credit bid. The acceptance and approval of the credit bid by the Sale Order, and closing the transaction contemplated therein, satisfied any purported obligation to reimburse Fortress for the fees and expenses of its professionals as they were part of its credit bid. Releasing the Houlihan Fee Reserve would grant Fortress a windfall

by allowing it to credit bid Houlihan's fees and then separately and subsequently charge the estates cash for the same amout it previously credit bid. That is a classic "double dip" and should not be allowed.

**B.      Fortress Must Disgorge the Unauthorized Postpetiton Transfer**

23.  The payment to Fortress of the $150,000 for July services provided by Houlihan must be disgorged because it was paid in violation of the express terms of the Final DIP Order.[5]

24.  Before seeking reimbursement of any amounts for its professionals, Fortress was required to comply with paragraph 20(b) of the Final DIP Order and provide the proposed fees and expenses for review to the Committee (and Debtors and U.S. Trustee).  Fortress failed to do so.  The payment to Fortress on account of Houlihan's July fees was made in contravention of the process set forth in the Final DIP Order.

25.  It is indisputable that this Court can order disgorgement of the unauthorized payment to Fortress.  *See In re Soussis,* 624 B.R. 559, 563 (Bankr. E.D.N.Y. 2020)*, aff'd sub nom. Soussis v. Macco,* 20-CV-05673 (JMA), 2022 U.S. Dist. LEXIS 12386, 2022 WL 203751 (E.D.N.Y. Jan. 24, 2022) ("Disgorgement is an equitable remedy which requires [a] [c]ourt to exercise its powers under § 105(a) of the Bankruptcy Code.").  Disgorgement is appropriate here where Fortress has run afoul of the Court's DIP Order that established a clear process for the reimbursement of fees and expenses.

26.  Moreover, section 362(a)(3) prohibits the exercise of control over property of the estate.  Here, the Debtors reimbursed Fortress for Houlihan's July fees and expenses without

---

[5]      The Committee does not dispute that under the DIP Order, the portion of the June 12, 2023 invoice relating to prepetition services (the balance due from May) need not be circulated to the Debtors, Committee and U.S. Trustee, but all other invoices were required to be circulated to those parties as a pre-condition to being paid.

following the process set out in the DIP Order.  Disgorgement of the improper transfer to remedy the violation of section 362(a)(3) is warranted.

## RESERVATION OF RIGHTS

27.  The Committee, on behalf of itself and the Debtors' bankruptcy estates, including a future Chapter 7 trustee, expressly reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Motion, to raise further and other objections, and to introduce evidence prior to or at any hearing on this matter.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**: (i) deny the release of the Houlihan Fee Reserve to Fortress, but instead releasing those funds to the estate free and clear of any lien, and (ii) compel Fortress to repay $150,000; and (iii) grant such other and further relief as may be just and proper under the circumstances.

Dated:  September 28, 2023          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Robert J. Feinstein*
Robert J. Feinstein
Bradford J. Sandler
Paul J. Labov
Colin R. Robinson
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
      bsandler@pszjlaw.com
      plabov@pszjlaw.com
      crobinson@pszjlaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

# EXHIBIT A



PACHULSKI

STANG

ZIEHL

JONES

L A W   O F F I C E S
LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
HOUSTON, TX

780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212.561.7700
FACSIMILE: 212.561.7777

LOS ANGELES
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

TELEPHONE: 310.277.6910
FACSIMILE: 310.201.0760

SAN FRANCISCO
ONE SANSOME STREET
34th FLOOR, SUITE 3430
SAN FRANCISCO
CALIFORNIA 94104

TELEPHONE: 415.263.7000
FACSIMILE: 415.263.7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302.652.4100
FACSIMILE: 302.652.4400

TEXAS
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

TELEPHONE: 713.691.9385
FACSIMILE: 713.691.9407

WEB: WWW.PSZJLAW.COM

Robert J. Feinstein

August 28, 2023

212.561.7710
rfeinstein@pszjlaw.com

**VIA E-MAIL**

Michael S. Neumeister, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Re:   *In re Vice Group Holding, Inc., et al.*
      Case No. 23-20738 (JPM)

Dear Michael:

By email transmitted to us on August 23, 2023, as counsel to
Fortress and other lenders (hereinafter, the "Lender Group"), you
sent to us a copy of Houlihan Lokey's ("Houlihan") engagement
letter along with two invoices rendered by Houlihan, (i) one dated
June 12, 2023 in the amount of $152,613.48 for fees for services
rendered to the Lender Group during the month of June and related
expenses and reflecting a balance due of $151,871.91 outstanding
from a pre-petition invoice dated May 11, 2023, and (ii) a second
invoice dated July 28, 2023 in the amount of $3,153.086.72
comprised of a charge of $150,000 for the month of July, a
$3,000,000 transaction fee, and out of pocket expenses. As you
have acknowledged, prior to August 23, 2023, the Lender Group had
never circulated any invoices seeking reimbursement for Houlihan's
fees and expenses in compliance with paragraph 20(b) of the Final
Order (I) Authorizing the Debtors to (A) Obtain Postpetition
Financing and (B) Use Cash Collateral, (II) Granting Liens and
Superpriority Claims, (III) Modifying the Automatic Stay, (IV)
Granting Adequate Protection to Prepetition Secured Parties, (V)
Scheduling a Final Hearing, and (VI) Granting Related Relief [Dckt.
138] (the "Final DIP Order"), insofar as the Lender Group had not
previously sent any of Houlihan's invoices to the counsel to the
Committee. Thus, we consider your August 23, 2023 email as the
first time these invoices were circulated for review in compliance
with paragraph 20(b) of the DIP Order affording the Committee ten
(10) business days to respond. Please consider this letter as the
Committee's written objection to these invoices



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

The basis for the Committee's objection is that these Lender Professional expenses were and remained unsatisfied as of the time of the closing of the credit bid sale of the Debtors' assets to the Lender Group. As you are aware, the Court's Order approving the sale of assets to the Lender Group unambiguously required the Lender Group to credit bid all of its DIP Obligations, including any unreimbursed professional fees that were part of those Obligations, first, and then its prepetition secured debt second.[1] The Lender Group's purchase price of $350 million was well in excess of the total outstanding "DIP Obligations," so the Lender Group was thus required to credit bid the entirety of its then outstanding DIP Obligations and a portion of their prepetition secured debt to pay the purchase price. The term "DIP Obligations" as defined in the Final DIP Order and the DIP Loan Agreement includes principal, interest and fees, including Lender Professional fees.[2] Thus, it is beyond

---

[1] The Sale Order in paragraph P states in pertinent part:

> Pursuant to the terms of the APA and the DIP Order, the Prepetition First Lien Lenders and DIP Lenders are secured creditors of the Debtors, holding allowed Claims in the amount of the Prepetition First Lien Obligations and DIP Obligations (each as defined in the DIP Order) secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates and the property of their estates .... of which the full amount of the DIP Obligations will be credit bid in connection with the Sale and APA, with the remaining amount of the Purchase Price satisfied through a credit bid of such amount of the Prepetition First Lien Obligations ...."

Docket No. 214.

[2] The Definition of DIP Obligations is set forth in the Final DIP Order. The term is defined in para E (iii) as:

> The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Loan Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and all other obligations



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

dispute that the Houlihan invoices for which the Lender Group is seeking reimbursement are a part of the "DIP Obligations" that were already used as currency in Fortress's credit bid to purchase the Debtors' assets. The acceptance of that credit bid constituted a satisfaction of all reimbursement claims extant as of the date of the closing and thus no further payment is warranted or required.

We are advised that at the closing, the sum of $475,000 was set aside by the Debtors earmarked to reimburse the Lender Group for a portion of Houlihan's fees. Further, we are advised that the Debtors paid the invoice dated June 12, 2023 for $152,613.48 for fees for services rendered to the Lender Group during the month of June and related expenses and $151,871.91 outstanding from a pre-petition invoice dated May 11, 2023, even though that invoice was never circulated to the Committee as required by paragraph 20(b) of the Final DIP Order. The payment of the $152,613.48 for June was

---

under the DIP Loan Documents (collectively, the "DIP Obligations").

Also, the term Obligations also is defined in the DIP Credit Agreement as:

> "**Obligations**" means all obligations (whether now existing or hereafter arising, absolute or contingent, joint, several, or independent, including as a guarantor) of every nature of each Credit Party from time to time owed to the Agents (including former Agents) or the Lenders, under any Credit Document, in each case whether for principal, interest (including interest which, but for the filing of a petition in bankruptcy with respect to such Credit Party, would have accrued on any Obligation, whether or not a claim is allowed against such Credit Party for such interest in the related bankruptcy proceeding), **fees (including the Exit Fee and fees accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), expenses, Attorney Costs, indemnification or otherwise ...."**

(emphasis supplied).



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

thus unauthorized under the Final DIP Order and must be returned to the estate as an unauthorized postpetition transfer pursuant to section 549(a) of the Bankruptcy Code. The Committee hereby demands such repayment be made immediately. (We acknowledge that under the Final DIP Order, the portion of the June 12, 2023 invoice relating to prepetition services (the balance due from May) need not be circulated to the Debtors, Committee and United States Trustee, but all other invoices were required to be circulated to those parties as a condition to being paid.) Thus, the Committee's objection extends to the post-petition fees and expenses covered by the June 12, 2023 invoice, and the entirety of the July 28, 2023 invoice, including the $3,000,000 transaction fee. All of these unpaid DIP obligations were credit bid in the sale and thus already satisfied under the terms of the Sale Order.

The Committee reserves all of its and the estates' rights and remedies, including seeking disgorgement of Lender Professional fees and expenses paid without compliance with paragraph 20(b) of the DIP Order.

Sincerely yours,

Robert J. Feinstein

RJF:kgb

cc:     Frederic Sosnick, Esq. (*via email*)
        Kyle Ortiz, Esq. (*via email*)
        Andrea Schwartz, Esq. (*via email*)
        Official Committee of Unsecured Creditors (*via email*)

# EXHIBIT B

Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Colin R. Robinson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:      rfeinstein@pszjlaw.com
            bsandler@pszjlaw.com
            plabov@pszjlaw.com
            crobinson@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11**
                                          :
**VICE GROUP HOLDING INC., *et al.*,[1]**  :        **Case No. 23-10738 (JPM)**
                                          :
                                          :        **(Jointly Administered)**
                     **Debtors.**         :
-------------------------------------------------------------x

### ORDER DENYING REIMBURSEMENT OF CERTAIN FEES AND EXPENSES OF FORTRESS AND (II) COMPELLING DISGORGEMENT OF AN IMPROPER POSTPETITION TRANSFER TO FORTRESS

Upon consideration of the *Motion of the Official Committee of Unsecured Creditors to (I) Deny Reimbursement of Certain Fees and Expenses of Fortress and (II) Compel Disgorgement of an Improper Postpetition Transfer to Fortress* (the "Motion"),[2] for an order (i) denying the release

---

[1]   The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their respective federal tax identification numbers is not provided herein. Such list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice. The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of the Houlihan Fee Reserve to Fortress, and instead releasing those funds to the estate free and

clear of any lien, and (ii) compelling Fortress to repay $150,000; and the Court having jurisdiction

to consider the Motion and the relief requested therein; and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it also appearing that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and

other parties in interest; and the Committee having provided adequate and appropriate notice of

the Motion under the circumstances; and after due deliberation and good and sufficient cause

appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      The release of the Houlihan Fee Reserve is denied.

3.      The Lender Group shall disgorge $150,000 to the Debtors' estates.

4.      The Lender Group is not entitled to the reimbursement of its fees and expenses.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.

Dated: _____, 2023
       New York, New York

_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE