**Hearing Date: February 28, 2024 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 21, 2024 at 4:00 p.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, NY 10119
Phone: (212) 594-5000
Email: frankoswald@teamtogut.com
kortiz@teamtogut.com
bmoore@teamtogut.com
jgallego@teamtogut.com

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al* | Case No. 23-10738 (JPM) |
| Debtors.[1] | Jointly Administered |

**NOTICE OF HEARING**
**TO CONSIDER DEBTORS' OMNIBUS MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363(b) AND 363(f) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT STIPULATIONS**
***(Via "Zoom for Government")***

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") will be held on **February 28, 2024 at 11:00 a.m. (ET)** (the "Hearing Date"), before the Honorable John P.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Venus Liquidation Inc., f/k/a Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); VTV Productions LLC (6854); and Goldie Films, Inc. (1241). The location of the Debtors' service address for purposes of these chapter 11 cases is: c/o Alix Partners, 909 Third Avenue, 30th Floor, New York, New York 10022.

Mastando III, United States Bankruptcy Judge for the Southern District of New York, to consider the annexed motion (the "Motion")[2] of Venus Liquidation Inc. f/k/a/ Vice Group Holding, Inc. and its affiliated debtors and debtors in possession (collectively the "Debtors" or the "Company") for entry of an order, substantially in the form annexed to the Motion as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363(b), and 363(f) of title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving settlement stipulations.

**PLEASE TAKE FURTHER NOTICE THAT** the Hearing will take place via Zoom for Government. Those wishing to appear before the Court at the Hearing, must register their appearance utilizing the Electronic Appearance portal located on the Court's website: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be entered no later than 4:00 p.m. (Prevailing Eastern Time) one business day before the hearing.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of the Proposed Order or the relief requested in the Motion must be made in writing, filed with the Bankruptcy Court, One Bowling Green, New York, NY 10004-1408, and served so as to be received by the following parties no later than **February 21, 2024, at 4:00 p.m. (Prevailing Eastern Time) (the "Objection Deadline")**:

(i) the Honorable John P. Mastando III, United States Bankruptcy Judge for the Southern District of New York, United States Bankruptcy Court for the Southern District of New York One Bowling Green, Courtroom 501, New York, NY 10004-1408;

(ii) counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119, Attn: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Brian F. Moore (bmoore@teamtogut.com);

---

2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(iii) co-counsel for the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn.: Fredric Sosnick. Esq. (FSosnick@Shearman.com) and Shearman & Sterling LLP, 2601 Olive Street, 17th Floor, Dallas, TX 75201, Attn.: Ian E. Roberts, Esq. (Ian.Roberts@Shearman.com);

(iv) the Office of the United States Trustee for the Southern District of New York, One Bowling Green, Suite 534, New York, NY 10004, Attn: Andrea B. Schwartz, Esq. (Andrea.B.Schwartz@usdoj.gov) and Annie Wells, Esq. (Annie.Wells@usdoj.gov); and

(v) counsel to the Committee, Pachulski, Stang, Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017 (Attn: Bradford J. Sandler).

**PLEASE TAKE FURTHER NOTICE THAT** if no objections to the entry of the Proposed Order are timely filed and served on or before the Objection Deadline, the Proposed Order may be entered by the Court.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Proposed Order and the Motion along with its other underlying exhibits can be viewed and/or obtained by: (i) accessing the Court's website a www.nysb.uscourts.gov, (ii) on the Debtors' case website at: https://cases.stretto.com/vice, or (iii) by contacting the Office of the Clerk of the United States Bankruptcy Court, Southern District of New York. Please note that a PACER password is required to access documents on the Bankruptcy Court's Website.

Dated: New York, New York
January 30, 2024

VENUS LIQUIDATION INC., *et al.*
*Debtors and Debtors-in-Possession*
By Their Counsel
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Frank A. Oswald*

FRANK A. OSWALD
KYLE J. ORTIZ
BRIAN F. MOORE
JOHN C. GALLEGO
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000

**Hearing Date: February 28, 2024 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 21, 2024 at 4:00 p.m. (Prevailing Eastern time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore
John C. Gallego

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.*, | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OMNIBUS MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363(b) AND 363(f) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT STIPULATIONS**

TO THE HONORABLE JOHN P. MASTANDO III,
UNITED STATES BANKRUPTCY JUDGE:

Venus Liquidation Inc. (f/k/a Vice Group Holding, Inc.) and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby make this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363(b), and 363(f) of title

[1] The Debtors in these chapter 11 cases and the last four digits of their respective tax identification numbers are: Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is: c/o Alix Partners, 909 Third Avenue, 30th Floor, New York, New York 10022.

11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving:

i. the *Stipulation and Agreed Order Resolving Claims Among and Between the Debtors, the Buyer Entities, and the Antenna Entities*, annexed to the Proposed Order as **Exhibit 1** (the "Antenna Stipulation"), by and among the Debtors, Vice Acquisition Holdco, LLC (the "Buyer," and together with Buyer's direct and indirect subsidiaries, the "Buyer Entities"), and Antenna Group B.V., Antenna TV S.A., and Antenna Internet Ventures B.V. (collectively, the "Antenna Entities,") and Vice Antenna B.V. (the "Joint Venture", together with the Debtors and Buyer Entities, the "Antenna Stipulation Parties"); and

ii. the *Stipulation and Agreed Order Resolving Claims Among and Between the Debtors, the Buyer Entities, and the Committee*, annexed to the Proposed Order as **Exhibit 2** (the "Committee Stipulation" and together with the Antenna Stipulation, the "Stipulations"), by and among the Debtors, the Buyer Entities, and the Official Committee of Unsecured Creditors (the "Committee," together with the Debtors and Buyer Entities, the "Committee Stipulation Parties" and collectively with the Antenna Parties and the Joint Venture, the "Settling Parties").

In support of the Motion, the Debtors respectfully submit the Declaration of Frank A. Pometti, the Debtors' Chief Restructuring Officer, annexed hereto as **Exhibit B** (the "Pometti Declaration"), which is incorporated herein by reference. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully state:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order"). Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are sections 105(a), 363(b), and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### I. The Chapter 11 Cases

3. On May 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.[2] On May 17, 2023 and June 13, 2023, the Court entered orders authorizing the joint administration of the Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 42, 137].

4. The Debtors are managing their post-Sale affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On May 23, 2023, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee in the Chapter 11 Cases [Docket No. 66]. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

6. Facts relating to the Debtors' businesses and capital structure, and the commencement of these Chapter 11 Cases, are set forth in the *Declaration of Frank A. Pometti in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, filed on the Petition Date [Docket No. 2] and incorporated herein by reference.

### II. The Sale and the Transition Services Agreement

7. On May 30, 2023, the Court entered the *Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and*

---

[2] On May 30, 2023, Debtor Goldie Films, Inc. ("Goldie Films") also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. As defined herein, the term "Petition Date" includes May 30, 2023 solely as to Goldie Films.

*Approving the Debtors' Entry into the Stalking Horse Agreement, and (III) Granting Related Relief* [Docket No. 80], which, among other things, authorized the Debtors to commence a sale process for substantially all the Debtors assets (the "Sale") based upon an asset purchase agreement (the "Purchase Agreement") between the Debtors, as sellers, and the Buyer.

8. On June 23, 2023, the Court entered the *Order (A) Approving the Asset and Equity Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, And (D) Granting Related Relief* [Docket No. 214], which, among other things, approved the Sale to the Buyer.

9. The Debtors closed the Sale on July 31, 2023 [Docket No. 337] (the "Sale Closing")

10. Upon the Sale Closing, the Debtors ceased business operations and their focus moved to completing the wind down of their affairs through a chapter 11 liquidating plan.

11. On July 31, 2023, the Debtors entered into that certain transition services agreement (the "TSA") with the Buyer [Docket No. 337] to effectuate the smooth transition of the Debtors' assets and business operations to the Buyer.

## III. The Plan

12. On December 15, 2023, the Debtors filed the *Chapter 11 Plan of Liquidation for Venus Liquidation Inc. (f/k/a Vice Group Holding, Inc.) and Certain of its Affiliates* [Docket No. 664] (as may be amended, restated, supplemented or modified from time to time, the "Plan").

13. The Plan is based on the terms of the settlement (the "Initial Committee Settlement") that is incorporated into the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens*

*and Super priority Claims, (III) Modifying the Automatic Stay, (IV) Granting Adequate Protection to Prepetition Secured Parties, and (V) Granting Related Relief* [Docket No. 138] (the "Final DIP Order"), entered on June 13, 2023.

14. Pursuant to the Initial Committee Settlement and as provided for in the Committee Stipulation, the Plan is a liquidating plan that, among other things, provides for the establishment of a cash reserve to be distributed to the Debtors' general unsecured creditors and for the post-confirmation estates to be administered by a plan administrator. To facilitate confirmation, the Plan also provides for a voluntary reduction in fees by the Debtors' retained professionals.

15. The feasibility of the Plan is contingent on the Stipulations, which, as discussed in more detail below, (i) settle disputes that otherwise would require costly, uncertain and protracted litigation (which the estates cannot afford) and (ii) return value to the Debtors' estates.

## IV. The Stipulations

16. The Debtors have taken considerable efforts to negotiate the Stipulations with the Settling Parties.

### A. The Antenna Stipulation

17. The Antenna Stipulation arises out of the series of agreements between the Debtors and the Antenna Entities entered into prior to the Petition Date concerning the access to and distribution of the Debtors' and it non-debtor affiliates award-winning content in Greece, Romania and Serbia, Hungary, Bulgaria, Czech Republic, Slovakia, Slovenia, Croatia, Poland, Albania, North Macedonia (FYROM), Bosnia, Cyprus, Montenegro, the Commonwealth of Independent States (CIS) (comprising Armenia, Azerbaijan, Belarus, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine and Uzbekistan), Estonia, Latvia and

Lithuania through the Joint Venture, with Debtor Vice Europe Holding Limited owning a 51% interest in this joint venture (the "Joint Venture") and Antenna Internet Ventures B.V. ("Antenna B.V.") owning a 49% interest in this Joint Venture.

18. In connection with the Sale, the Buyer and/or its designees acquired certain assets of the Debtors, including interests of the Debtors in certain non-debtor affiliates, which may be interested parties to claims and interests in connection with, or arising under, the contracts annexed to the Antenna Stipulation as Exhibit A and/or the Joint Venture.

19. The Debtors, in their business judgment, determined that their interest in the Joint Venture could be monetized for the benefit of the estates.

20. Following good faith negotiations between the Antenna Stipulation Parties and their respective counsel, and in order to avoid the cost and uncertainty of investigating and litigating the issues related to potential claims, including potential intercompany claims arising from the termination of the Antenna Contracts, the wind down of the Joint Venture, and/or related claims in connection with the Sale and the TSA, the Antenna Stipulation Parties have agreed to resolve such matters on the terms set forth in the Antenna Stipulation. The material terms of the Antenna Stipulation are:[3]

i. Upon entry of an order substantially in the form of the Proposed Order (the "Antenna Stipulation Effective Date"), the Antenna Contracts, annexed to the Antenna Stipulation as Exhibit A, will be deemed rejected and terminated as of July 31, 2023. The Antenna Entities and the Joint Venture will retain their right to assert general unsecured claims against the Debtors in connection with the rejection of the Antenna Contracts within thirty (30) days after the Antenna Stipulation Effective Date.

ii. Within fifteen (15) business days of the Antenna Stipulation Effective Date, Debtor Vice Europe Holding Limited shall convey all of its right, title, and interest in the 51% interest in Antenna B.V. to the other Antenna

[3] This summary of the material terms of the Antenna Stipulation is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between this summary and the terms of the Antenna Stipulation, the terms of the Antenna Stipulation shall control.

Entities (the "JV Interest Sale") and in exchange those Antenna Entities shall pay Vice Europe Holding Limited or its designee €937,875 (the "Antenna Payment").

iii. The Antenna Entities and the Joint Venture will assume responsibility for the continuation or wind down of the affairs of the Joint Venture.

iv. The Debtors will complete the transfer of any foreign equity interests of the Debtors and the non-debtor affiliates of the Debtors as contemplated by the Sale and the Purchase Agreement, and take all such steps as reasonably necessary to accomplish the same (including the appointment of directors or managers to implement such corporate action), and complete the corporate name changes as required by the Purchase Agreement.

v. Subject to the Debtors' receipt of the Antenna Payment, on the Antenna Stipulation Effective Date, the Antenna Stipulation Parties will exchange mutual releases; *provided, however*, that such release shall not affect the obligations of the parties under the Antenna Stipulation.

**B. The Committee Stipulation**

21. On September 28, 2023, the Committee filed *The Official Committee of Unsecured Creditors' Motion to (I) Deny Reimbursement of Certain Fees and Expenses of Fortress and (II) Compel Disgorgement of an Improper Postpetition Transfer to Fortress* (the "Committee Motion") [Docket No. 507]. Among other things, the Committee Motion sought to deny the release of funds from a fee reserve that was set aside pursuant to the Final DIP Order for the reimbursement of Fortress Credit Corp., on behalf of the ad hoc group of prepetition secured lenders and debtor in possession lenders, on account of fees and expenses of its financial advisor Houlihan Lokey. The Committee Motion also sought to compel the disgorgement of a postpetition transfer to Fortress Credit Corp. on account of Houlihan Lokey's fees.

22. Following good faith negotiations among the Committee Stipulation Parties and their respective counsel, in connection with the Debtors' intention to confirm the Plan with the support of the Committee and in order to avoid the cost and uncertainty of investigating and litigating claims related to the Sale, Final

DIP Order and the Committee Motion, the Committee Stipulation Parties have agreed to resolve such matters on the terms set forth in the Committee Stipulation. The material terms of the Committee Stipulation are:[4]

i. Within two (2) business days of entry of an order substantially in the form of the Proposed Order (the "Committee Stipulation Effective Date") –

(a) the Committee will withdraw the Committee Motion with prejudice;

(b) the Reserved Lender Fee Amount (as defined in the Amendment No. 3 to the Purchase Agreement, dated July 31, 2023 [Docket No. 334] shall be paid to the Buyer pursuant to wire instructions provided by the Buyer to the Debtors prior to the Committee Stipulation Effective Date; and

(c) the Debtors shall pay the Buyer $30,000 on account of its allowed administrative expense claim, allowed pursuant to the terms of the Committee Stipulation and pursuant to section 503 of the Bankruptcy Code in connection with its reasonable legal fees incurred during the resolution of claims in connection with Committee Stipulation.

ii. The Initial Committee Settlement, including, among other things, the reserve established for distribution to holders of allowed general unsecured claims, shall be implemented in a Chapter 11 liquidating plan in form and substance agreeable to the Committee Stipulation Parties.

## RELIEF REQUESTED

23. By this Motion, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Stipulations.

---

[4] This summary of the material terms of the Committee Stipulation is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between this summary and the terms of the Committee Stipulation, the terms of the Committee Stipulation shall control.

## BASIS FOR RELIEF

### I. The Stipulations Are Fair and Equitable and in the Best Interests of the Debtors' Estates

24. This Court has discretion to approve a debtor's entry into settlement agreement pursuant to section 363(b) of the Bankruptcy Code after notice and a hearing. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1066 (2d Cir. 1983). The procedure for approving a settlement in bankruptcy is set forth in Bankruptcy Rule 9019(a), which provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

25. In addition, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]." 11 U.S.C. § 105(a). The settlement of disputes is encouraged and generally favored in bankruptcy cases. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *see also In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (the bankruptcy court may exercise its discretion in determining whether to approve a settlement "in light of the general public policy favoring settlements").

26. Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is both (i) fair and equitable, and (ii) in the best interests of a debtor's estate. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (applying the "fair and equitable" standard to settlements pursuant to Bankruptcy Rule 9019); *In re Enron Corp.*, Case No. 02-Civ-8489 (AKH), 2003 WL 230838, at *2 (S.D.N.Y. Jan. 31, 2003) ("A bankruptcy court may approve a settlement where the proposed settlement is both fair

and equitable and in the best interests of the estate.") (internal quotation marks and citations omitted).

27. To evaluate whether a settlement is fair and equitable, courts in the Second Circuit consider factors including the following: (a) the balance between the possibility of success in any litigation and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay; (c) the paramount interests of creditors, including the relative benefits, and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (d) whether other parties in interest support the settlement; (e) the competency and experience of counsel supporting the settlement; and (f) the extent to which the settlement is the product of arm's-length bargaining. *See Iridium*, 478 F.3d at 462. Not all of these factors are relevant to all cases. *See Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC)*, 401 B.R. 87, 96 (Bankr. E.D.N.Y. 2009).

28. Although a court should evaluate all factors "relevant to a fair and full assessment of the wisdom of the proposed compromise," (*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)), a court need not conduct a "mini-trial" of the merits of the claims being settled (*see In re Purofied Down Prod. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993)), or conduct a full independent investigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). The court is not required to decide every question of law or fact raised by litigation, but rather should canvass the issues to determine whether the settlement "falls below the lowest point in the range of reasonableness." *See W.T. Grant Co. v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Adelphia*

*Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y.), *adhered to on reconsideration*, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

29. The Debtors respectfully submit that the Stipulations satisfy the standards for approval under Bankruptcy Rule 9019 because the Stipulations are both fair and equitable and in the best interests of the Debtors' estates.

30. The Stipulations resolve months of arm's-length and good faith, yet hard-fought, post-Sale Closing negotiations among the Settling Parties concerning the claims and disputed issues underlying the Stipulations. The period between the Sale Closing and the filing of this Motion demonstrates the complexity of the issues that the Stipulations will consensually resolve and the potential for protracted litigation that will be avoided. Given the liquidity position of the Debtors' estates, time is of the essence to confirm the Plan and any delays or costs associated with the potential litigation described herein, the results of which are uncertain given the variety of disputed factual and legal issues, would be significantly detrimental to the Debtors' stakeholders.

31. Moreover, the paramount interests of the Debtors' creditors are served by the terms of the Stipulations. Specifically, the Stipulations pave the way for confirmation of the Plan, which will implement the Initial Committee Settlement to establish a reserve of funds to be distributed to the Debtors' general unsecured creditors. In addition, the Antenna Payment will bring additional funds into the estates for the benefit of the Debtors' general unsecured creditors. Absent the Initial Committee Settlement contemplated by the Plan, conversion to Chapter 7 would have been unavoidable, which would have destroyed the value otherwise protected under the Plan and reduced general unsecured creditor recoveries.

32. The Stipulations will also allow the Debtors to fulfill any outstanding obligations under the Purchase Agreement regarding the transfer of their foreign equity interests, as well as complete the corporate name changes, which will eliminate claims under the Purchase Agreement from the Buyer Entities.

33. Finally, it is beyond dispute that the Stipulations are the result of, and are supported by, experienced and competent counsel for each of the Settling Parties.

34. The Debtors considered the foregoing in their business judgment when determining to enter into the Stipulations. Based on these considerations, the Debtors respectfully submit that the Stipulations are fair, equitable, in the best interests of the Debtors' estates, and well above the lowest point in the range of reasonable potential outcomes.

## II. The Sale of the Joint Venture Interests Free and Clear of Liens, Claims, Encumbrances, and Interests is Justified

35. The Antenna Stipulation contemplates that the sale of interests that constitutes the JV Interest Sale be authorized free and clear any and all liens, claims, interests, and other encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, a court may approve the sale of debtor property under section 363(b) of the Bankruptcy Code free and clear of any interests if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim or interest consents to the sale; (iii) the interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *See* 11 U.S.C. § 363(f); *see also In re Smart World Tech., LLC*, 423

F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows Purchaser … to acquire assets [from a debtor] without any accompanying liabilities."); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

36. Here, the Debtors will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. Specifically, the Buyer Entities, as the lender parties holding security interests in the Joint Venture have consented to the JV Interest Sale. In addition, none of the other Settling Parties have expressed any objection to the Antenna Stipulation despite the opportunity to do so prior to the filing of this Motion. *In re Enron Corp.*, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)); *see also Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted). Consequently, it is anticipated that section 363(f)(2) of the Bankruptcy Code will be satisfied prior to entry of the Proposed Order.

37. Based on the foregoing, the Debtors respectfully submit that cause exists for the JV Interest Sale to be approved free and clear of any and all liens, claims, interests, and other encumbrances

## RESERVATION OF RIGHTS

38. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, or (d) a promise to pay any claim, in each case except to the extent provided for under the Stipulations. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim, except to the extent provided for under the Stipulations.

## NOTICE

39. Notice of this Motion and its exhibits, including the Proposed Order, has been given to (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel for the Buyer Entities; (d) the other entities on the Master Service List (available of the Debtors' case website at http://www.cases.stretto.com/vice/); and (d) any other party which has filed a request for notice in these Chapter 11 Cases. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

40. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, approving the Stipulations, and grant such other and further relief as may be just and proper.

Dated: January 30, 2024
New York, New York

VENUS LIQUIDATION INC. (f/k/a)
VICE GROUP HOLDING INC., *et al.*
*Debtors and Debtors in Possession*
*By their Counsel*
TOGUT, SEGAL & SEGAL LLP,
By:

*/s/ Frank A. Oswald*
FRANK A. OSWALD
KYLE J. ORTIZ
BRIAN F. MOORE
JOHN C. GALLEGO
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
frankoswald@teamtogut.com
kortiz@teamtogut.com
bmoore@teamtogut.com
jgallego@teamtogut.com

# <u>Exhibit A</u>

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.*, | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**ORDER GRANTING DEBTORS' OMNIBUS MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363(b) AND 363(f) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT STIPULATIONS**

Upon the motion [Docket No. __] (the "Motion")[2] of Venus Liquidation Inc. (f/k/a Vice Group Holding, Inc.) and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases for entry of an order (this "Order"), pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019, approving:

i. the *Stipulation and Agreed Order Resolving Claims Among and Between the Debtors, the Buyer Entities, and the Antenna Entities*, annexed to this Order as **Exhibit 1** (the "Antenna Stipulation") by and among the Debtors, Vice Acquisition Holdco, LLC (the "Buyer," and together with Buyer's direct and indirect subsidiaries, the "Buyer Entities"), Antenna Group B.V., Antenna TV S.A., and Antenna Internet Ventures B.V. (collectively, the "Antenna Entities"), and Vice Antenna B.V. (the "Joint Venture", together with the Debtors and Buyer Entities, the "Antenna Stipulation Parties"); and

ii. the *Stipulation and Agreed Order Resolving Claims Among and Between the Debtors, the Buyer Entities, and the Committee*, annexed to this Order as **Exhibit 2**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective tax identification numbers are: Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is: c/o Alix Partners, 909 Third Avenue, 30th Floor, New York, New York 10022.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

(the "Committee Stipulation" and together with the Antenna Stipulation, the "Stipulations") by and among the Debtors, the Buyer Entities, and the Official Committee of Unsecured Creditors (the "Committee," together with the Debtors and Buyer Entities, the "Committee Stipulation Parties" and collectively with the Antenna Parties and the Joint Venture, the "Settling Parties");

and upon the Pometti Declaration in support of the Motion, a copy of which is attached to the Motion as **Exhibit B**; and it appearing that the Court has jurisdiction to consider the Motion and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this Court having reviewed the Motion, the Pometti Declaration and the Stipulations; and good and sufficient notice of the Motion having been given to all parties entitled thereto, and no other or further notice need be given; and upon the record of all of the proceedings held before the Court; and no objections to the Motion having been timely filed; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion [Docket No. __] is **GRANTED** to the extent set forth herein.

2. The Stipulations, the terms of which are incorporated herein, are approved.

3. All objections, if any, to the Motion and the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice.

4. The failure to include any particular provision of the Stipulations in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Stipulations be authorized and approved in their entirety.

5. The Debtors and the other Settling Parties are authorized to take all necessary actions as may be reasonably necessary or appropriate to carry out this Order without seeking further Court approval.

6. Section 363(f) of the Bankruptcy Code is satisfied with respect to the JV Interest Sale.

7. The JV Interest Sale is approved free and clear of any liens, defenses (including rights of setoff and recoupment), and interests, in each case, in, on, or related to the 51% interest in the Joint Venture, including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, purchase options, rights of first refusal or offer, deeds of trust, hypothecations, mechanics' and materialman's liens, rights of way, assignments, preferences, debts, easements, charges, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), covenants, put options, restrictions, title defects, or other survey defects of any kind, indentures, instruments, leases, options, off-sets, causes of action, contract rights and claims, any restriction on or transfer or other assignment, as security or otherwise, of or relating to use, quiet enjoyment, voting, transfer, receipt of income or exercise of any other attribute of ownership, in each case to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the 51% interest in the Joint Venture (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or

unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non- material, statutory or non-statutory, matured or unmatured, legal or equitable, including any and all such liabilities, causes of action, contract rights and claims arising out of the Debtors' 51% interest in the Joint Venture.

8. The Stipulations and any related agreements, documents, or other instruments, if any, may be further modified, amended, or supplemented by the parties thereto, in a writing signed by the respective Settling Parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a materials adverse effect on the Debtors' estates.

9. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

10. The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: Febraury [__], 2024
New York, New York

/s/______________________________
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

# <u>Exhibit 1</u>

## Antenna Stipulation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.*, | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**STIPULATION RESOLVING CLAIMS AMONG AND BETWEEN THE DEBTORS, THE BUYER ENTITIES, AND THE ANTENNA ENTITIES**

By and through their undersigned counsel, each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), Vice Acquisition Holdco, LLC ("Buyer," and together with Buyer's direct and indirect subsidiaries, the "Buyer Entities"), Antenna Group B.V., Antenna TV S.A., and Antenna Internet Ventures B.V. (collectively, the "Antenna Entities"), and Vice Antenna B.V. (the "Joint Venture," and together with the Debtors, the Buyer Entities and the Antenna Entities, the "Parties") hereby enter into this stipulation (this "Stipulation") as set forth below.

**RECITALS**

**WHEREAS,** on May 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

[1] The debtors in these chapter 11 cases and the last four digits of their respective tax identification numbers are: Venus Liquidation Inc. f/k/a Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854).

**WHEREAS,** prior to the Petition Date, the Debtors and the Antenna Entities were parties to a series of agreements concerning the potential access to and distribution of the Debtors' and their non-debtor affiliates' content in Greece, Romania and Serbia, Hungary, Bulgaria, Czech Republic, Slovakia, Slovenia, Croatia, Poland, Albania, North Macedonia (FYROM), Bosnia, Cyprus, Montenegro, the Commonwealth of Independent States (CIS) (comprising Armenia, Azerbaijan, Belarus, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine and Uzbekistan), Estonia, Latvia and Lithuania through the Joint Venture, with Debtor Vice Europe Holding Limited owning a 51% interest in the Joint Venture and Antenna Internet Ventures B.V. ("Antenna") owning a 49% interest in the Joint Venture.

**WHEREAS,** on May 15, 2023, the Debtors filed the *Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse Agreement, (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 16], which, among other things, sought approval of bidding procedures and the sale of substantially all of the Debtors' assets to the Buyer (the "Sale") as well as the procedures for the assumption and assignment of executory contracts and leases in connection with the Sale.

**WHEREAS,** on May 23, 2023, the Office of the United States Trustee for the Southern District of New York appointed an Official Committee of Unsecured Creditors in the Chapter 11 Cases.

**WHEREAS,** on May 30, 2023, the Court entered the *Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (III) Authorizing and Approving The Debtors' Entry Into The Stalking Horse Agreement, and (III) Granting Related Relief* [Docket No. 80].

**WHEREAS,** on June 23, 2023, the Court entered the *Order (A) Approving the Asset and Equity Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. 214], which, among other things, approved the Sale to the Buyer (the "Sale Order"), pursuant to the terms of that Asset and Equity Purchase Agreement, dated as of May 19, 2023, by and between Buyer, Vice Group Holding Inc., and the other sellers named therein (as amended from time to time, the "Purchase Agreement").

**WHEREAS,** pursuant to the *Order Approving procedures for the Rejection of Executory Contracts and Unexpired Leases*, entered by the Court on July 18, 2023 [Docket No. 315], the Debtors provided notice, [Docket No. 338] (the "First Rejection Notice"), of their intent to reject, *inter alia*, the Debtors' executory contracts with the Antenna Entities and the Joint Venture (the "Antenna Contracts") set forth on **Exhibit A**.

**WHEREAS,** the Debtors closed the Sale on July 31, 2023, and filed: (1) the *Notice of (1) Closing of the Sale and (2) Filing of the Transition Services Agreement* (the "Sale Closing Notice") [Docket No. 337]. Under the Sale, the Buyer or its designees acquired certain assets of the Debtors, including interests of the Debtors in certain non-debtor affiliates, which may be interested parties to claims and interests in connection with, or arising under, the Antenna Contracts and/or the Joint Venture.

**WHEREAS**, on July 31, 2023, the Debtors entered into that certain transition services agreement (the "TSA") with the Purchaser [Docket No. 337] to effectuate an orderly transition of the Debtors' assets and business operations to the Buyer Entities.

**WHEREAS,** on August 4, 2023, in connection with good faith negotiations, the Debtors filed the *Notice of Withdrawal of Rejection of Executory Contracts And/Or Unexpired Leases* [Docket No. 381] with respect to the Antenna Contracts.

**WHEREAS,** following good faith negotiations between the Parties and their respective counsel, and in order to avoid the cost and uncertainty of investigating and litigating the issues related to the claims that could arise under rejection of the Antenna Contracts, the wind down of the Joint Venture and its subsidiaries, and claims in connection with the Sale and the TSA, the Parties have agreed to resolve as provided in this Stipulation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

1. This Stipulation will be effective upon entry of orders by the Bankruptcy Court, in form and substance acceptable to the Parties, approving (i) this Stipulation, and (ii) that *Stipulation and Agreed Order Resolving Claims Among and Between the Debtors, the Buyer Entities, and the Committee*, dated as of the date hereof, in each case pursuant to Fed. R. Bankr. P. 9019 (the "Effective Date").

2. The Antenna Contracts identified in **Exhibit A** hereto are rejected and deemed terminated effective as of July 31, 2023, and the Antenna Entities and the Joint Venture retain the right to assert general unsecured claims against the Debtors in connection with the rejection of the Antenna Contracts within thirty (30) days after the Effective Date.

3. Within fifteen (15) business days after the Effective Date, (i) Debtor Vice Europe Holding Limited shall convey all of its right, title, and interest in its 51% interest in the Joint Venture to Antenna free and clear of all Encumbrances (as defined in the Sale Order) pursuant to a deed of transfer, and (ii) the Antenna Entities shall pay Vice Europe Holding Limited or its designee €937,875 (the "Antenna Payment").

4. The consideration provided by the Antenna Entities pursuant to this Stipulation (a) was negotiated at arm's-length, (b) is fair and reasonable, and (c)

constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, the District of Columbia, or any foreign jurisdiction.

5. The Antenna Entities and the Joint Venture and its direct and indirect subsidiaries (collectively, the "Joint Venture Entities") assume responsibility for the continuation or wind down of the affairs of the Joint Venture Entities, including, but not limited to, use of the remaining cash on hand at the Joint Venture Entities and the proceeds of any account receivables owed directly to the Joint Venture Entities (and not any account receivables owed to the Debtors or the Buyer Entities) to satisfy any payables and obligations that may be asserted against the Joint Venture Entities, including claims relating to social security, salaries, severance and taxes arising under applicable law.

6. For the avoidance of doubt, all rights in and ownership of existing content and other Intellectual Property Rights (defined below) created or produced by the Joint Venture Entities in the course of their business prior to the Effective Date (collectively, the "Existing Content") shall vest in the Joint Venture Entities, as applicable; provided that (a) to the extent such Existing Content incorporates any Intellectual Property Rights of the Debtors or the Buyer Entities (such portion of content and Intellectual Property Rights, collectively, the "Vice IPR"), such Vice IPR shall remain owned by, and the exclusive property of, the Debtors or the Buyer Entities, as applicable, (b) the Joint Venture Entities shall not be permitted to retain any right or Interest in any Existing Content to the extent it was created or produced in violation of any contract or agreement with the Debtors or the Buyer Entities, including but not limited to the Antenna Contracts. The Joint Venture Entities, as applicable, may continue to exploit the Vice IPR

on a non-exclusive basis (a) solely in the format and manner incorporated in the Existing Content and exploited by the Joint Venture Entities as of the date hereof, (b) solely as may be necessary in order to comply with ongoing contractual obligations (existing and binding as of the date hereof) of the Joint Venture Entities under the sublicenses set forth on **Exhibit B**, (c) solely as permitted by the sublicenses set forth on **Exhibit B**, and (d) solely until such contractual obligations expire or terminate by their terms without a right or option for renewal. For the avoidance of doubt, the limited license set forth in the preceding sentence does not grant the Joint Venture Entities any rights whatsoever in the Vice IPR except as set forth in the sublicenses set forth on **Exhibit B** and in no event shall the Joint Venture Entities be permitted to generate any new content incorporating, or otherwise use or exploit, any Vice IPR. Notwithstanding anything herein to the contrary, (i) the Buyer Entities retain all rights in and ownership of all Vice IPR licensed to the Antenna Entities pursuant to the sublicenses set forth on Exhibit B, and (ii) such licensed Vice IPR shall remain subject to any and all restrictions, in all respects, set forth by the Licensor (as defined in the applicable sublicense), including but not limited to any use restrictions, confidentiality and non-disparagement obligations contained or incorporated therein, including but not limited to Sections 4 and 15 of the applicable sublicense. For purposes of this paragraph 5, "Intellectual Property Rights" means patents, rights to inventions, copyright and related rights, moral rights, trade marks, business names and domain names, rights in get-up, goodwill and the right to sue for passing off, rights in designs, rights in computer software, database rights, rights to use and protect the confidentiality of, confidential information (including know-how), and all other intellectual property rights, in each case, whether registered or unregistered and including all applications and rights to apply for and to be granted, renewals or extensions of, and rights to claim priority from, such rights and all similar or equivalent

rights or forms of protection which subsist now or in the future in any part of the world. To the fullest extent permissible by applicable law, Debtors and the Buyer Entities hereby expressly disclaim all warranties, express or implied, with respect to the Vice IPR, including any warranty of title or non-infringement, and all liability with respect to the use of the Vice IPR by the Joint Venture Entities. In the event the Joint Venture Entities violate the license restrictions with respect to the Vice IPR as set forth in this paragraph or in the sublicenses set forth in Exhibit B, the licenses set forth in this paragraph shall automatically terminate and all rights shall revert to the Debtors and Buyer Entities, as applicable.

7. The Debtors shall complete the transfer of all of their direct and indirect interests in the Purchased Entities (as defined in the Purchase Agreement) as contemplated under the Purchase Agreement, and take all such steps reasonably necessary to accomplish the same (including the appointment of directors or managers to implement such corporate action), and complete the corporate name changes as required by the Purchase Agreement. Specifically,

(a) the Debtors are authorized to appoint Jeffrey Serota, Jame Donath, and Moshin Meghji as directors (the "<u>Proposed Directors</u>") of Debtors: (i) Vice Holding, Inc., (ii) Vice Europe Holding Limited, (iii) Vice International Holding, Inc., and (iv) Vice Europe Pulse Holding Ltd., and such other entities as necessary to complete the transfer of the Debtors' direct and indirect interests of the Purchased Entities to the Buyer Entities (collectively, the "<u>New Director Entities</u>"); and

(b) the Proposed Directors, accepting appointment as directors of the New Director Entities, and acting in their discretion to take such corporate actions as are necessary or desirable to facilitate completion of post-closing items in

connection with the Sale to the Buyer Entities, are acting within the scope of their fiduciary duties and consistent with the exercise of their reasonable business judgment.

8. Except as set forth in paragraph 2 of this Stipulation, upon the Debtors' receipt of the Antenna Payment and the effective transfer of the Debtors' interests in the Joint Venture to Antenna free and clear of all Encumbrances, each of the Parties, on behalf of itself and its respective Affiliates (as defined in the version of the Purchase Agreement attached to the Sale Order), hereby fully and forever releases, acquits and discharges each other Party and its Affiliates, and its and their respective directors, officers, control persons (as defined in Section 15 of the Securities Act or Section 20 of the Exchange Act), lenders, administrative or other agents under any loan facility, members, employees, agents, attorneys, financial advisors, consultants, representatives, direct and indirect shareholders, partners, successors and assigns (collectively, the "Released Parties"), in each case, solely in their capacity as such, from any and all claims, counterclaims, actions, causes of action, suits, debts, liens, obligations, liabilities, demands, complaints, rights of recovery, damages, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, asserted or unasserted, fixed or contingent, including, but not limited to, claims for payment, reimbursement, setoff, recoupment, indemnity, contribution, or indemnification, or causes of action arising under Chapter 5 of the Bankruptcy Code, arising in whole or in part under, related to, based on or in connection with the Joint Venture and/or the Antenna Contracts or the subject matter thereof, whether now existing or hereafter arising and whether sounding in tort or contract or otherwise (collectively, the "Claims"); provided, however, that such release shall not affect the obligations of the Parties under this Stipulation or any Claims by Antenna Entities against the Joint Venture or its direct and indirect subsidiaries.

9. Vice Europe Holding Limited and each of the other Debtors is authorized to implement and effectuate the terms of this Stipulation and take such action as may be necessary or desirable to consummate the transactions contemplated by this Stipulation, including, but not limited to, executing such documents that may be necessary to give effect to the deed of transfer.

10. From time to time, as and when requested by any Party and to the extent contemplated by this Stipulation, each Party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other Party may reasonably deem necessary or desirable to consummate the transactions contemplated by this Stipulation, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Antenna all of the right, title, and interest in and to the Joint Venture free and clear of all Encumbrances, which may include documents and instruments evidencing the release of any Encumbrance held by Wilmington Trust, National Association, in its capacity as Collateral Agent under the Prepetition Senior Secured Credit Agreement (as defined in the Sale Motion) (in such capacity, the "Collateral Agent"). Notwithstanding anything herein to the contrary, the Debtors shall (i) be responsible for any reasonable out-of-pocket fees, costs or expenses (including reasonable attorneys' fees and expenses) incurred in connection with transferring the Debtors' Interests in the Joint Venture free and clear of all Encumbrances, including in connection with the release of any Encumbrances held by the Collateral Agent, (ii) as a condition to the release of any Encumbrances held by the Collateral Agent, pay to Collateral Agent a $5,000 fee and the fees, costs and expenses described in subparagraph (i), and (iii) be responsible for any reasonable out-of-pocket fees, costs or expenses incurred by the Collateral Agent in connection with the release of any Encumbrances against the Debtors'

property upon the effective date of any chapter 11 plan. For the avoidance of doubt, any chapter 11 plan of the Debtors shall incorporate the Debtors' obligations set forth in the immediately preceding sentence.

11. Each Party represents and warrants that it has full authority to enter into this Stipulation.

12. Each Party represents and warrants that neither it nor its Affiliates has transferred or assigned any of the Claims, or any interests therein.

13. This Stipulation and the attached exhibits constitute the entire agreement and understanding of the Parties relating to the subject matter hereof and supersede all prior agreements and understandings relating to the subject matter hereof.

14. No statement made or action taken in the negotiation of this Stipulation may be used by any party for any purpose whatsoever.

15. Each Party represents and warrants to the other Parties that it: (a) made this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) has been represented by counsel of its own choice in the negotiations preceding the execution of this Stipulation and in connection with the preparation and execution of this Stipulation.

16. This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

17. This Stipulation shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

18. All of the recitals stated above are incorporated by reference as if fully set forth herein. No modification, amendment or waiver of any of the provisions of this Stipulation shall be effective unless in writing and signed by the Parties and approved by the Court.

19. The Parties acknowledge that they have participated in and jointly consented to the drafting of this Stipulation and the exhibits and that any claimed ambiguity shall not be construed for or against any Party on account of such drafting.

20. This Stipulation shall be binding on and inure to the benefit of each of the Parties and each of their respective heirs, executors, administrators, successors, and permitted assigns. For the avoidance of doubt, each Released Party is an express third party beneficiary of the releases in paragraph 7 hereof.

21. Notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, and 9014, or otherwise, the terms and conditions of this Stipulation shall be effective and enforceable immediately upon entry.

**IN WITNESS WHEREOF**, the parties have executed, or caused this Stipulation to be executed, by their duly authorized representatives as of the date set forth above.

**For the Debtors**

TOGUT, SEGAL & SEGAL LLP,

/s/ Frank A. Oswald
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, New York 10119
Tel: (212) 594-5000
frankoswald@teamtogut.com
kortiz@teamtogut.com
bmoore@teamtogut.com

**For Antenna Internet Ventures B.V.**

/s/ Jochem de Koning
Jochem de Koning
Director

/s/ Marc Zagar
Marc Zagar
Director

**For Antenna Group B.V.**

/s/ Jochem de Koning
Jochem de Koning
Director

/s/ Marc Zagar
Marc Zagar
Director

**For Antenna TV S.A.**

/s/ George Rallis
George Rallis
Group A Signatory by Board Authority

/s/ Fotini Raxi
Fotini Raxi
Group A Signatory by Board Authority

**For the Purchaser**

GIBSON, DUNN & CRUTCHER LLP

/s/ Michael S. Neumeister
Michael S. Neumeister
(admitted pro hac vice)
333 South Grand Avenue

**For the Joint Venture**

/s/ Jochem de Koning
Jochem de Koning
Director

Los Angeles, California 90071
Tel: (213) 229-7000
MNeumeister@gibsondunn.com

-and-
David M. Feldman
Tommy Scheffer
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
DFeldman@gibsondunn.com
TScheffer@gibsondunn.com

/*s*/ Marc Zagar
Marc Zagar
Director

## EXHIBIT A

## SCHEDULE OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

| COUNTERPARTY | ADDRESS | ADDITIONAL DESCRIPTION |
|---|---|---|
| Vice Antenna B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Service Agreement: Consultancy Services Agreement, dated as of December 27, 2019, by and between Vice Antenna BV and Vice Media LLC. |
| Antenna TV S.A. | 10-12 Kifissias Avenue<br>151 25 Maroussi, Athens<br>Greece | Service Agreement: Consultancy Services Agreement, dated as of December 27, 2019, by and between Antenna TV SA, Vice Media LLC, and Vice Group Holding Inc. |
| Antenna TV S.A. | 10-12 Kifissias Avenue<br>Maroussi, Athens 151 25<br>Greece | Service Agreement: Excerpting Agreement, dated as of December 27, 2019, by and between Antenna TV SA and Vice Media LLC |
| Antenna Internet Ventures B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Joint Venture Agreement: Amended and Restated Joint Venture Agreement, dated as of October 24, 2019, by and between Antenna Internet Ventures B.V., Vice Europe Holding Limited, Antenna TV S.A., Antenna Group B.V., Vice Antenna B.V., Vice Greece S.A., Vice Distribution LLC and Vice Group Holding Inc. |
| Antenna Internet Ventures B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Joint Venture Agreement: Amendment Agreement, dated as of December 31, 2019, by and between Antenna Internet Ventures B.V., Vice Europe Holding Limited, Antenna TV S.A., Antenna Group B.V., Vice Antenna B.V., Vice Greece S.A., Vice Distribution LLC and Vice Group Holding Inc., relating to that certain Amended and Restated Joint Venture Agreement. |
| Vice Antenna B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | License Agreement: License Agreement, dated as of March 27, 2020, by and between Vice Europe Holding Limited, Vice Antenna B.V. and Vice UK Limited. |
| Antenna Internet Ventures B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Dividend Waiver Side Letter: Dividend Waiver Side Letter, dated as of March 27, 2020, by and between Vice Europe Holding Limited, Antenna Internet Ventures B.V. and Vice Antenna B.V. |
| Antenna Internet Ventures B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Amendment Agreement: Amendment Agreement, dated as of August 23, 2021, by and between Antenna Internet Ventures B.V., Vice Europe Holding Limited, Antenna TV S.A., Antenna Group B.V., Vice Antenna B.V., Vice Greece S.A., Vice Antenna S.R.L., Vice Media d.o.o., Vice Distribution LLC and Vice Group Holding Inc., relating to that certain Amended and Restated Joint Venture Agreement. |
| Antenna Internet Ventures B.V. | De Boelelaan 7 | Notice of Deferral of Exercise: Notice of Deferral of Exercise of Tranche 1 Put Option, dated as of August |

| COUNTERPARTY | ADDRESS | ADDITIONAL DESCRIPTION |
|---|---|---|
| | 1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | 24, 2021, from Antenna Internet Ventures B.V. to Vice Group Holding Inc. |
| Antenna Internet Ventures B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Notice of Deferral of Exercise: Notice of Deferral of Exercise of Tranche 2 Put Option, dated as of March 28, 2022, from Antenna Internet Ventures B.V. to Vice Group Holding Inc. |
| Antenna Internet Ventures B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Notice of Deferral of Exercise: Notice of Deferral of Exercise of Tranche 3 Put Option, dated as of March 27, 2023, from Antenna Internet Ventures B.V. to Vice Group Holding Inc. |
| Antenna TV S.A. | 10-12 Kifisias Ave<br>Maroussi<br>Greece | Statement of Work: Statement of Work Agreement, dated as of December 27, 2019, by and between Antenna TV S.A. and Vice Media LLC relating to that certain Consultancy Services Agreement. |
| Vice Antenna B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Statement of Work Agreement, dated as of December 27, 2019, by and between Vice Antenna B.V. and Vice Media LLC relating to that certain Consultancy Services Agreement. |
| Vice Antenna B.V. | De Boelelaan 7<br>1083 HJ, Amsterdam,<br>Noord-Holland<br>Netherlands | Deed of Release and Undertakings: Deed of Release and Undertakings, dated as of December 27, 2019, by and between Vice Group Holding Inc., Vice Media LLC, Vice Distribution LLC, Global News and Antenna Group B.V. |

## EXHIBIT B

## SCHEDULE OF JOINT VENTURE SUB-LICENSES

1. **VICE Specials Documentary - Season 11 (2022)**
   Total Episodes: 12
   License Expiration Date: January 31, 2024
   Contract Date: February 1, 2022

   S11 - Episode 1: VICE SPECIALS - The "Misunderstood" Students, Duration: 1:03:20
   S11 - Episode 2: VICE SPECIALS - The Persistent Alpinist, Duration: 0:41:27
   S11 - Episode 3: VICE SPECIALS - Human Trafficking, Duration: 0:47:59
   S11 - Episode 4: VICE SPECIALS - The Industry of Influencers, Duration: 0:45:31
   S11 - Episode 5: VICE SPECIALS - The Mental Health Odyssey in Greece, Duration: 0:46:16
   S11 - Episode 6 : VICE SPECIALS - Foster Care: From the Institution to the Family, Duration: 0:41:21
   S11 - Episode 7: VICE SPECIALS - Prespa, a Lake Threatened, Duration: 0:48:43
   S11 - Episode 8: VICE SPECIALS - The "Colorful" Children We Hurt, Duration: 0:42:38
   S11 - Episode 9: VICE SPECIALS - Profession Delivery Driver, Duration: 0:38:09
   S11 - Episode 10: VICE SPECIALS - Made in Greece, Duration: 0:44:34
   S11 - Episode 11: VICE SPECIALS - Roma: Breaking the Stereotypes, Duration: 0:45:50
   S12 - Episode 12: VICE SPECIALS - The "Orphans" From Greece, Duration: 0:43:09

2. **VICE Specials Documentary - Season 12 (2023)**
   Total Episodes: 8
   License Expiration Date: December 31, 2024
   Contract Date: January 1, 2023

   S11 - Episode 1: VICE SPECIALS - The Donors, Duration: 0:44:29mins
   S12 - Episode 3: VICE SPECIALS - Sexual Abuse: Unprotected Children, Duration: 0:58:27
   S12 - Episode 6: VICE SPECIALS - The Hidden Children, Duration: 0:48:03
   S12 - Episode 4: VICE SPECIALS - Turkey: The Earthquake That Will Judge The Election, Duration: 0:39:39
   S12 - Episode 5: VICE SPECIALS - After Prison, , Duration: 0:43:36
   S12 - Episode 2: VICE SPECIALS - The Cannabis Industry, , Duration: 0:39:45
   S12 - Episode 7: VICE SPECIALS - The Greeks in the Occupied Ukraine, Duration: 1:02:01
   S12 - Episode 8: VICE SPECIALS - The Routes of Cocaine, Duration: 0:42:36

3. **VICE on ANT1+ - Season 1 (2022)**
   Total Episodes: 15
   License Expiration Date: May 31, 2024
   Contract Date: June 1, 2022 (as amended on April 10, 2023)

   S1 - Episode 1: VICE on ANT1+ - Football Docs: Life Games, Duration: 0:33:40
   S1 - Episode 2: VICE on ANT1+ - Football Docs: Women on the Field, Duration: 0:32:37
   S1 - Episode 3: VICE on ANT1+ - Football Docs: The Nurseries, Duration: 0:31:17

S1 - Episode 4: VICE on ANT1+ - Football Docs: The Greeks of the World Cup, Duration: 0:31:12
S1 - Episode 5: VICE on ANT1+ - Human Rights Docs: Marriage Equality, Duration: 0:30:07
S1 - Episode 6: VICE on ANT1+ - Human Rights Docs: Equal Opportunities, Duration: 0:31:29
S1 - Episode 7: VICE on ANT1+ - Human Rights Docs: Call Me Disabled, Duration: 0:30:30
S1 - Episode 8: VICE on ANT1+ - Gen Z Docs: Youth, Political Parties and Social Media, Duration: 0:32:48
S1 - Episode 9: VICE on ANT1+ - Gen Z Docs: The Great Resignation, Duration: 0:30:54
S1 - Episode 10: VICE on ANT1+ - Gen Z Docs: What Disappoints Me in the Education System, Duration: 0:30:26
S1 - Episode 11: VICE on ANT1+ - Motor World Docs: Born for Speed, Duration: 0:30:04
S1 - Episode 12: VICE on ANT1+ - Motor World Docs: The Pilots, Duration: 0:32:08
S1 - Episode 13: VICE on ANT1+ - Motor World Docs: From Track to Ground, Duration: 0:30:51
S1 - Episode 14: VICE on ANT1+ - Motor World Docs: The Wheels of Time, Duration: 0:31:36
S1 - Episode 15: VICE on ANT1+ - Motor World Docs: The Modified, Duration: 0:30:08

# **Exhibit 2**

## **Committee Stipulation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.*, | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**STIPULATION RESOLVING CLAIMS AMONG AND BETWEEN THE DEBTORS, THE BUYER ENTITIES, AND THE COMMITTEE**

By and through their undersigned counsel, each of the debtors and debtors in possession in these chapter 11 cases (collectively, the "Debtors"),[2] Vice Acquisition Holdco, LLC ("Buyer," and together with Buyer's direct and indirect subsidiaries, the "Buyer Entities"), and Official Committee of Unsecured Creditors (the "Committee," and together with the Debtors and the Buyer Entities, the "Parties") hereby enter into this stipulation (this "Stipulation") as set forth below.

**RECITALS**

**WHEREAS,** on May 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

[1] The location of the debtors' service address for purposes of these chapter 11 cases is c/o Alix Partners 909 Third Avenue 30th Floor, New York, NY 10022

[2] The debtors in these chapter 11 cases and the last four digits of their respective tax identification numbers are: Venus Liquidation Inc. f/k/a Vice Group Holding Inc. (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854).

**WHEREAS,** on the Petition Date, the Debtors filed the *Motion for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Authorizing and Approving the Debtors' Entry into the Stalking Horse Agreement, (III) Approving the Sale of Substantially all of the Debtors' Assets and (IV) Granting Related Relief* [Docket No. 16], which, among other things, sought approval of bidding procedures and the sale of substantially all of the Debtors' assets to the Buyer Entities (the "Sale"), as well as the procedures for the assumption and assignment of executory contracts and leases in connection with the Sale.

**WHEREAS,** on the Petition Date, the Debtors also filed a motion (the "DIP Financing Motion") [Docket No. 13] to approve a senior secured postpetition financing facility provided by the DIP Lenders (as defined In the DIP Financing Order (defined below)), authorizing Debtor Vice Group Holding Inc., in its capacity as borrower to obtain post-petition financing, and for each of the other Debtors to guarantee unconditionally on a joint and several basis, the borrower's obligations in connection with a senior secured superpriority debtor-in-possession multi-draw term loan facility (the "DIP Facility"), which was approved on an interim basis pursuant to a Bankruptcy Court order dated May 17, 2023 [Docket No. 40] (the "Interim DIP Financing Order").

**WHEREAS,** on May 23, 2023, the Office of the United States Trustee for the Southern District of New York appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases.

**WHEREAS,** on May 30, 2023, in furtherance of a Sale, the Court entered the *Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (III) Authorizing and Approving the Debtors' Entry Into The Stalking Horse Agreement, and (III) Granting Related Relief* [Docket No. 80].

**WHEREAS**, the Debtors, the Committee, and the DIP Secured Parties and Prepetition Secured Parties (each, as defined In the DIP Financing Order (defined below)) proceeded to consensually resolve informal objections and concerns raised by the Committee in connection with the Sale, DIP Facility, and the Interim DIP Financing Order, pursuant to a settlement (the "Committee Settlement") embodied in paragraph 42 of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Granting Adequate Protection to Prepetition Secured Parties, and (V) Granting Related Relief* which was approved by the Bankruptcy Court on June 13, 2023 [Docket No. 138] (the "DIP Financing Order").

**WHEREAS,** on June 23, 2023, the Court entered the *Order (A) Approving the Asset and Equity Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief (*the "Sale Order") [Docket No. 214], which, among other things, approved the Sale to the Buyer Entities.

**WHEREAS,** the Debtors closed the Sale on July 31, 2023, and filed: (1) the *Notice of (1) Closing of the Sale and (2) Filing of the Transition Services Agreement* [Docket No. 337].

**WHEREAS,** on September 28, 2023, the Committee filed a motion *(I) Deny Reimbursement of Certain Fees and Expenses of Fortress and (II) Compel Disgorgement of an Improper Postpetition Transfer to Fortress (*the "Committee Motion") [Docket No. 507].

**WHEREAS,** following good faith negotiations between the Parties' respective counsel in connection with the Debtors' intention to move forward with a Chapter 11 plan of liquidation with the support of the Committee and in order to avoid the cost and uncertainty of investigating and litigating claims related to the Sale and the Committee Motion, the Parties have agreed to resolve as provided in this Stipulation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

1. This Stipulation will be effective upon entry of orders by the Bankruptcy Court, in form and substance acceptable to the Parties, approving (i) this Stipulation, and (ii) that *Stipulation and Agreed Order Resolving Claims Among and Between the Debtors, the Buyer Entities, and the Antenna Entities*, dated as of the date hereof (the "Antenna Stipulation"), in each case pursuant to Fed. R. Bankr. P. 9019 (the "Effective Date").

2. Within two (2) business days of the Effective Date,

(i) the Committee will withdraw the Committee Motion with prejudice;

(ii) the Reserved Lender Fee Amount (as defined In that Amendment No. 3 to Asset and Equity Purchase Agreement, dated as of July 31, 2023 [Docket No. 334] shall be indefeasibly paid to the Buyer pursuant to written wire instructions to be provided by Buyer to the Debtors prior to the Effective Date, free and clear of all liens, claims and Interests; and

(iii) the Buyer shall be indefeasibly paid $30,000 in full and final satisfaction of the Buyer Administrative Expense Claim (defined below).

3. As of the Effective Date, the Buyer shall have an allowed administrative claim in the amount $30,000 under section 503 of the Bankruptcy Code in connection with its reasonable legal fees incurred in connection with the resolution of claims in connection with Stipulation (the "Buyer Administrative Expense Claim").

4. The Parties agree that (a) the $500,000 GUC Cash Reserve established for general unsecured claims in connection with the Committee Settlement will remain with the Debtors' estates, and (b) the Committee Settlement set forth in the DIP Financing Order shall be implemented in a chapter 11 plan in form and substance agreeable to the Debtors, the Committee, the DIP Secured Parties, and the Prepetition Secured Parties.

5. Subject to third party claims asserted against the Debtors in the Chapter 11 Cases that have been identified in writing to the Buyer Entities prior to the Buyer Entities' execution hereof and subject to a reservation of rights and with no admission by the Buyer Entities as to liability, the Debtors agree, and the Committee acknowledges, that the Debtors' estates have, and hereby release, acquit and discharge, any claims or causes of action against the Buyer Entities, the DIP Secured Parties, or the Prepetition Secured Parties related to or in connection with the Sale, the Transition Services Agreement (as defined in the Sale Order), the DIP Facility, or the administration of the Chapter 11 Cases.

6. The Buyer Entities agree and acknowledge that, provided the Debtors, after the date hereof, promptly take all reasonably necessary actions to transfer any remaining interests in the Purchased Entities (as defined in the APA (as defined in the Sale Order)), the Buyer Entities shall not assert an administrative expense claim against the Debtors' or their estates as a result of the Debtors' failure to transfer such Interests in the Purchased Entities as of the date hereof.

7. Effective as of the date hereof, the obligation to respond or object to the Committee Motion is hereby stayed and tolled, and no response or objection to the Committee Motion shall be due until 21 days after entry by the Court of any order denying either or both of this Stipulation or the Antenna Stipulation.

8. The Parties represent and warrant that they have full authority to enter into this Stipulation.

9. This Stipulation constitute the entire agreement and understanding of the Parties relating to the subject matter hereof and supersede all prior agreements and understandings relating to the subject matter hereof.

10. No statement made or action taken in the negotiation of this Stipulation may be used by any party for any purpose whatsoever.

11. Each Party represents and warrants to the other Parties that it: (a) made this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) has been represented by counsel of its own choice in the negotiations preceding the execution of this Stipulation and in connection with the preparation and execution of this Stipulation.

12. This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

13. This Stipulation shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

14. All of the recitals stated above are incorporated by reference as if fully set forth herein. No modification, amendment or waiver of any of the provisions of this Stipulation shall be effective unless in writing and signed by the Parties and approved by the Court.

15. The Parties acknowledge that they have participated in and jointly consented to the drafting of this Stipulation and the exhibits and that any claimed ambiguity shall not be construed for or against any Party on account of such drafting.

16. This Stipulation shall be binding on and inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and permitted assigns.

17. Notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, and 9014, or otherwise, the terms and conditions of this Stipulation shall be effective and enforceable immediately upon entry.

**IN WITNESS WHEREOF**, the parties have executed, or caused this Stipulation to be executed, by their duly authorized representatives as of the date set forth above.

**For the Debtors**

TOGUT, SEGAL & SEGAL LLP,

/s/ Frank A. Oswald
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, New York 10119
Tel: (212) 594-5000
frankoswald@teamtogut.com
kortiz@teamtogut.com
bmoore@teamtogut.com

**For Purchaser**

GIBSON, DUNN & CRUTCHER LLP

/s/ Michael S. Neumeister
Michael S. Neumeister
(admitted pro hac vice)
333 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 229-7000
MNeumeister@gibsondunn.com

-and-

David M. Feldman
Tommy Scheffer
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
DFeldman@gibsondunn.com
TScheffer@gibsondunn.com

**For the Committee**

PACHULSKI, STANG, ZIEHL & JONES LLP

/s/ Robert J. Feinstein
Bradford J. Sandler
Robert J.Feinstein
780 Third Avenue, 34th Floor,
New York, New York 10017,
Tel: (212) 561-7700
bsandler@pszjlaw.com
rfeinstein@pszjlaw.com

**Exhibit B**

**Declaration of Frank A. Pometti**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.*, | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF FRANK A. POMETTI IN SUPPORT OF DEBTORS' OMNIBUS MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363(b) AND 363(f) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT STIPULATIONS**

I, Frank A. Pometti, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer of the Debtors in these Chapter 11 Cases and a partner and managing director of AlixPartners, LLP. The Debtors have authorized me to submit this declaration (the "Declaration").

2. I submit this Declaration in support of the *Debtors' Omnibus Motion for an Order Pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Stipulations* (the "Motion").[2]

3. Except as otherwise noted herein, all statements in this Declaration are based on: (a) my personal knowledge of the Motion's subject matter and these

[1] The Debtors in these chapter 11 cases and the last four digits of their respective tax identification numbers are: Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) (4250); Vice Impact Inc. (9603); Vice Media LLC (5144); Villain LLC (3050); Boy Who Cried Author LLC (6199); Carrot Operations LLC (1596); Carrot Creative LLC (8652); Channel 271 Productions LLC (1637); Clifford Benski, Inc. (9387); Dana Made LLC (1065); Inverness Collective LLC (6542); JT Leroy Holding LLC (7555); PLDM Films LLC (5217); Project Change LLC (2758); R29 Pride, LLC (7011); R29 Productions, LLC (6344); Refinery 29 Inc. (7749); Valvi LLC (6110); Vice Content Development, LLC (5165); Vice Distribution LLC (5515); Vice Europe Holding Limited (N/A); Vice Europe Pulse Holding Limited (N/A); Vice Food LLC (1693); Vice Holding Inc. (2658); Vice International Holding, Inc. (5669); Vice Music Publishing LLC (3022); Vice Payroll LLC (6626); Vice Productions LLC (5399); Vice Project Services LLC (6473); Virtue Worldwide, LLC (7212); Visur LLC (9336); and VTV Productions LLC (6854). The location of the Debtors' service address for purposes of these chapter 11 cases is: c/o Alix Partners, 909 Third Avenue, 30th Floor, New York, New York 10022.

[2] Capitalized terms not defined herein have the meanings ascribed to such terms in the Motion.

Chapter 11 Cases; (b) my review of relevant documents; (c) information provided to me by employees of the Debtors and/or AlixPartners working under my supervision; (d) information provided to me by, or discussions with, other members of the Debtors' management team, other employees, or the Debtors' other advisors; and/or (e) my general experience and knowledge. If called upon to testify, I can and will testify competently as to the facts set forth herein.

## BACKGROUND

4. I have reviewed the Motion and believe that the factual recitations contained therein, which are incorporated herein, are accurate.

## I. The Plan

5. On December 15, 2023, the Debtors filed the Plan [Docket No. 664].

6. The Plan is based on the terms of the Initial Committee Settlement that is incorporated into the Final DIP Order [Docket No. 138], entered on June 13, 2023.

7. Pursuant to the Initial Committee Settlement and as provided for in the Committee Stipulation, the Plan is a liquidating plan that, among other things, provides for the establishment of a cash reserve to be distributed to the Debtors general unsecured creditors and for the post-confirmation estates to be administered by a plan administrator. To facilitate confirmation, the Plan also provides for an agreed-upon and voluntary reduction in fees by the Debtors' retained professionals.

8. I believe that the feasibility of the Plan is contingent on the Stipulations, which, as discussed in more detail in the Motion and below, settle disputes that otherwise would require costly, uncertain and protracted litigation (which the estates cannot afford) and return value to the Debtors' estates.

## II. The Stipulations

9. I believe that the Debtors have taken considerable efforts to negotiate the Stipulations with the Settling Parties.

### A. The Antenna Stipulation

10. The Antenna Stipulation arises out of the series of agreements between the Debtors and the Antenna Entities entered into prior to the Petition Date concerning the access to and distribution of the Debtors' and it non-debtor affiliates award-winning content in Greece, Romania and Serbia, Hungary, Bulgaria, Czech Republic, Slovakia, Slovenia, Croatia, Poland, Albania, North Macedonia (FYROM), Bosnia, Cyprus, Montenegro, the Commonwealth of Independent States (CIS) (comprising Armenia, Azerbaijan, Belarus, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Turkmenistan, Ukraine and Uzbekistan), Estonia, Latvia and Lithuania through the Joint Venture, with Debtor Vice Europe Holding Limited owning a 51% interest in this joint venture (the "Joint Venture") and Antenna Internet Ventures B.V. ("Antenna B.V.") owning a 49% interest in this Joint Venture.

11. In connection with the Sale, the Buyer and/or its designees acquired certain assets of the Debtors, including interests of the Debtors in certain non-debtor affiliates, which may be interested parties to claims and interests in connection with, or arising under, the contracts annexed to the Antenna Stipulation as Exhibit A and/or the Joint Venture.

12. The Debtors, in their business judgment, determined that their interest in the Joint Venture could be monetized for the benefit of the estates.

13. Following good faith negotiations among the Antenna Stipulation Parties and their respective counsel, and in order to avoid the cost and uncertainty of investigating and litigating the issues related to potential claims, including potential

intercompany claims arising from the termination of the Antenna Contracts, the wind down of the Joint Venture, and/or related claims in connection with the Sale and the TSA, the Antenna Stipulation Parties have agreed to resolve such matters on the terms set forth in the Antenna Stipulation. The material terms of the Antenna Stipulation are:[3]

i. Upon entry of an order substantially in the form of the Proposed Order (the "Antenna Stipulation Effective Date"), the Antenna Contracts, annexed to the Antenna Stipulation as Exhibit A, will be deemed rejected and terminated as of July 31, 2023. The Antenna Entities and the Joint Venture will retain their right to assert general unsecured claims against the Debtors in connection with the rejection of the Antenna Contracts within thirty (30) days after the Antenna Stipulation Effective Date.

ii. Within fifteen (15) business days of the Antenna Stipulation Effective Date, Debtor Vice Europe Holding Limited shall convey all of its right, title, and interest in the 51% interest in Antenna BV to the Antenna Entities (the "JV Interest Sale") and in exchange the Antenna Entities shall pay Vice Europe Holding Limited or its designee €937,875 (the "Antenna Payment").

iii. The Antenna Entities and the Joint Venture will assume responsibility for the continuation or wind down of the affairs of the Joint Venture.

iv. The Debtors will complete the transfer of any foreign equity interests of the Debtors and the non-debtor affiliates of the Debtors as contemplated by the Sale and the Purchase Agreement, and take all such steps as reasonably necessary to accomplish the same (including the appointment of directors or managers to implement such corporate action), and complete the corporate name changes as required by the Purchase Agreement.

v. Subject to the Debtors' receipt of the Antenna Payment, on the Antenna Stipulation Effective Date, the Antenna Stipulation Parties will exchange mutual releases; *provided, however*, that such release shall not affect the obligations of the parties under the Antenna Stipulation.

**B. The Committee Stipulation**

14. On September 28, 2023, the Committee filed the Committee Motion [Docket No. 507]. Among other things, the Committee Motion sought to deny the release of funds from a fee reserve that was set aside pursuant to the Final DIP Order for the reimbursement of Fortress Credit Corp., on behalf of the ad hoc group of

---

[3] This summary of the material terms of the Antenna Stipulation is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between this summary and the terms of the Antenna Stipulation, the terms of the Antenna Stipulation shall control.

prepetition secured lenders and debtor in possession lenders, on account of fees and expenses of its financial advisor Houlihan Lokey. The Committee Motion also sought to compel the disgorgement of a postpetition transfer to Fortress Credit Corp. on account of Houlihan Lokey's fees.

15. Following good faith negotiations among the Committee Stipulation Parties and their respective counsel, in connection with the Debtors' intention to confirm the Plan with the support of the Committee and in order to avoid the cost and uncertainty of investigating and litigating claims related to the Sale, Final DIP Order and the Committee Motion, the Committee Stipulation Parties have agreed to resolve such matters on the terms set forth in the Committee Stipulation. The material terms of the Committee Stipulation are:[4]

i. Within two (2) business days of entry of an order substantially in the form of the Proposed Order (the "Committee Stipulation Effective Date") –

(a) the Committee will withdraw the Committee Motion with prejudice;

(b) the Reserved Lender Fee Amount (as defined in the Amendment No. 3 to the Purchase Agreement, dated July 31, 2023 [Docket No. 334] shall be paid to the Buyer pursuant to wire instructions provided by the Buyer to the Debtors prior to the Committee Stipulation Effective Date; and

(c) the Debtors shall pay the Buyer $30,000 on account of its allowed administrative expense claim, allowed pursuant to the terms of the Committee Stipulation and pursuant to section 503 of the Bankruptcy Code in connection with its reasonable legal fees incurred during the resolution of claims in connection with Committee Stipulation.

ii. The Initial Committee Settlement, including, among other things, the reserve established for distribution to holders of allowed general unsecured claims, shall be implemented in a Chapter 11 liquidating plan in form and substance agreeable to the Committee Stipulation Parties.

---

[4] This summary of the material terms of the Committee Stipulation is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between this summary and the terms of the Committee Stipulation, the terms of the Committee Stipulation shall control.

**THE STIPULATIONS ARE FAIR AND EQUITABLE AND**
**IN THE BEST INTERESTS OF THE DEBTORS' ESTATES**

16. I believe that the Stipulations satisfy the standards for approval under Bankruptcy Rule 9019 because the Stipulations are both fair and equitable and in the best interests of the Debtors' estates.

17. The Stipulations resolve months of arm's-length and good faith, yet hard-fought, post-Sale Closing negotiations among the Settling Parties concerning the claims and disputed issues underlying the Stipulations. The period between the Sale Closing and the filing of this Motion demonstrates the complexity of the issues that the Stipulations will consensually resolve and the potential for protracted litigation that will be avoided. Given the liquidity position of the Debtors' estates, time is of the essence to confirm the Plan and any delays or costs associated with the potential litigation described herein, the results of which are uncertain given the variety of disputed factual and legal issues, would be significantly detrimental to the Debtors' stakeholders.

18. Moreover, the paramount interests of the Debtors' creditors are served by the terms of the Stipulations. Specifically, the Stipulations pave the way for confirmation of the Plan, which will implement the Initial Committee Settlement to establish a reserve of funds to be distributed to the Debtors' general unsecured creditors. In addition, the Antenna Payment will bring additional funds into the estates for the benefit of the Debtors' general unsecured creditors. Absent the Initial Committee Settlement contemplated by the Plan, conversion to Chapter 7 would have been unavoidable, which would have destroyed the value otherwise protected under the Plan and reduced general unsecured creditor recoveries.

19. The Stipulations will also allow the Debtors to fulfill any outstanding obligations under the Purchase Agreement by effecting the transfer of their foreign equity interests, as well as complete the corporate name changes, which will eliminate claims under the Purchase Agreement from the Buyer Entities.

20. Finally, I believe that the Stipulations are the result of, and are supported by, experienced and competent counsel for each of the Settling Parties.

21. The Debtors considered the foregoing in their business judgment when determining to enter into the Stipulations. Based on these considerations, the Debtors respectfully submit that the Stipulations are fair, equitable, in the best interests of the Debtors' estates, and well above the lowest point in the range of reasonable potential outcomes.

**THE SALE OF THE JOINT VENTURE INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS IS JUSTIFIED**

22. The Antenna Stipulation contemplates the sale of interests that constitutes the JV Interest Sale be authorized free and clear any and all liens, claims, interests, and other encumbrances.

23. I believe that the Debtors will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. Specifically, the Buyer Entities, as the lender parties holding security interests in the Joint Venture have consented to the JV Interest Sale. In addition, none of the other Settling Parties have expressed any objection to the Antenna Stipulation despite the opportunity to do so prior to the filing of this Motion.

[*Remainder of page left blank intentionally*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the Declaration is true and correct.

Dated: January 30, 2024
New York, New York

By: */s/ Frank A. Pometti*

Name: Frank A. Pometti
Title: Chief Restructuring Officer