**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.* | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MEMORANDUM OF LAW**
**IN SUPPORT OF CONFIRMATION OF THE AMENDED**
**CHAPTER 11 PLAN OF LIQUIDATION FOR VENUS LIQUIDATION INC.**
**(F/K/A VICE GROUP HOLDING, INC.) AND CERTAIN OF ITS AFFILIATES**

TOGUT, SEGAL & SEGAL LLP
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore
John C. Gallego
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel to the Debtors*
*and Debtors in Possession*

Dated:  April 25, 2024
       New York, New York

---

[1]    The location of the debtors' service address for purposes of these chapter 11 cases is c/o Alix Partners
909 Third Avenue 30th Floor, New York, NY 10022

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................2

FACTS ...........................................................................................................................3

ARGUMENT ...................................................................................................................3

I.   The Plan Should Be Approved .........................................................................4

    A.   The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ...........4

    B.   The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code .........................................................................................5

    C.   The Plan Complies with Section 1123(a) of the Bankruptcy Code ...............8

    D.   The Plan Complies with Section 1123(b) of the Bankruptcy Code..............10

    E.   Section 1123(d) Is Inapplicable to the Plan ...................................................10

    F.   The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code .........11

II.   The Debtors Have Complied with the Disclosure and  Solicitation Requirements of Section 1125 of the Bankruptcy Code.......................................................12

III.   The Debtors Have Satisfied the Plan Acceptance Requirements of Section 1126 of the Bankruptcy Code.......................................................................................14

    A.   The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code .........15

    B.   The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code .........16

    C.   The Plan Complies With Section 1129(a)(5) of the Bankruptcy Code.........17

    D.   Section 1129(a)(6) of the Bankruptcy Code Is Inapplicable to the Plan ......18

    E.   The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code .........18

    F.   Section 1129(a)(8) of the Bankruptcy Code ...................................................20

    G.   The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code .........21

    H.   The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code. .................23

    I.   The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code .......23

    J.   The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code .......24

    K.   Sections 1129(a)(13), (14), (15) and (16) of the Bankruptcy Code Are Not Applicable to the Plan ....................................................................................25

L.    The Plan Satisfies the "Cram Down" Requirements under Section 1129(b) of the Bankruptcy Code .................................................................................26

M.    Section 1129(c) of the Bankruptcy Code Is Inapplicable to the Plan ...........30

N.    The Plan Complies with Section 1129(d) of the Bankruptcy Code.............30

O.    Section 1129(e) is Inapplicable to the Plan ......................................................30

P.    The Plan's Consolidation of the Debtors' for Procedural Purposes Only Should be Approved ............................................................................................30

Q.    The Plan's Release, Exculpation and Injunction Provisions Are Appropriate and Should Be Approved ..........................................................32

IV.    The Debtor Release .......................................................................................................33

V.    Exculpation ....................................................................................................................36

VI.    Injunction .......................................................................................................................38

VII.    The Rejection of Executory Contracts and Unexpired Leases Should Be Approved .....................................................................................................39

VIII.  The Modifications Comply with Section 1127 of the Bankruptcy Code.................39

REQUEST FOR WAIVER OF BANKRUPTCY RULE 3020(e)............................................42

CONCLUSION.....................................................................................................................43

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993) ...................................................................6

*Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom
    Argentina, S.A.)*, 528 F.3d 162 (2d Cir. 2008) ..........................................21

*Boston Post Rd. L.P. v. FDIC (In re Boston Post Rd, L.P.)*,
    21 F.3d 477 (2d Cir. 1994) ......................................................................11

*Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater)*,
    57 B.R. 354 (D. Utah 1985) .....................................................................47

Cosoff v. Rodman (In re W.T. Grant Co.),
    699 F.2d 599 (2d Cir. 1983) ......................................................................6

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
    416 F.3d 136 (2d Cir. 2005) ............................................................37, 38, 40, 41

*Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*,
    627 F.3d 496 (2d Cir. 2010) ....................................................................34

*Enron Corp. v. New Power Co., (In re New Power Co.)*,
    438 F.3d 1113 (11th Cir. 2006) ...............................................................45

*Frito-Lay v. LTV Steel Co. (In re Chateaugay Corp.)*,
    10 F.3d 944 (2d Cir. 1993) ......................................................................11

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*,
    994 F.2d 1160 (5th Cir. 1993) .................................................................25

*In re 500 Fifth Ave. Assocs.*,
    148 B.R. 1010 (Bankr. S.D.N.Y. 1993) ...................................................11

*In re Adelphia Bus. Solutions, Inc.*,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) .....................................................30

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...........................................6, 25, 34

*In re Am. Solar King*,
    90 B.R. 808 (Bankr. W.D. Tex. 1988) .....................................................45

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    Case No. 07-12395, 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007) ...................12, 34

iv

*In re Best Prods. Co., Inc.,*
    168 B.R. 35 (Bankr. S.D.N.Y. 1994)......................................................................6, 25

*In re Calpine Corp.,*
    Case No. 05-60200 (BRL), 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007)..........35, 46

*In re Cano Petroleum, Inc.,*
    Case No. 12-31549 (BJH), 2012 WL 2931107 (Bankr. N.D. Tex. July 18, 2012) ..............35

*In re Charter Commc'ns,*
    419 B.R. 221 (Bankr. S.D.N.Y. 2009).......................................................................5, 7

*In re Chassix Holdings, Inc.,*
    533 B.R. 64 (Bankr. S.D.N.Y. 2015)..........................................................................38

*In re Chateaugay Corp.,*
    89 F.3d 942 (2d Cir. 1996).........................................................................................12

*In re CIT Grp., Inc.,*
    Case No. 09-16565 (ALG), 2009 WL 4824498 (Bankr. S.D.N.Y. Dec. 8, 2009)................46

*In re Crowthers McCall Pattern, Inc.,*
    120 B.R. 279 (Bankr. S.D.N.Y. 1990).........................................................................25

*In re Dana Corp.,*
    Case No. 06-10354 (BRL) 2007 WL 4589331 (Bankr. S.D.N.Y. Dec. 26, 2007)................46

*In re DBSD N. Am., Inc.,*
    419 B.R. 179 (Bankr. S.D.N.Y. 2009).........................................................................34

*In re Dewey & LeBoeuf LLP,*
    478 B.R. 627 (Bankr. S.D.N.Y. 2012).......................................................................6, 7

*In re Drexel Burnham Lambert Group, Inc. (Drexel I),*
    138 B.R. 714 (Bankr. S.D.N.Y. 1992).........................................................................12

*In re Drexel Burnham Lambert Group, Inc.,*
    138 B.R. 723 (Bankr. S.D.N.Y. 1992).........................................................................11

*In re EUSA Liquidation Inc.,*
    Case No. 09-15008 (SMB), 2010 WL 4916559 (Bankr. S.D.N.Y. June 10, 2010)..............30

*In re Finlay Enterprises, Inc.,*
    Case No. 09–14873 (JMP), 2010 WL 6580629 (Bankr. S.D.N.Y. May 18, 2010)..............30

*In re Fur Creations by Varriale, Ltd.,*
    188 B.R. 754 (Bankr. S.D.N.Y. 1995).........................................................................25

*In re Genco Shipping & Trading Ltd.,*
    513 B.R. 233 (Bankr. S.D.N.Y. 2014)......................................................................38, 39

*In re Glanasol Holdings Inc., et al.,*
    Case No. 18-14102 (MEW) (Bankr. S.D.N.Y. Aug. 2, 2019)..............................................50

*In re Granite Broad. Corp.*,
   369 B.R. 120 (Bankr. S.D.N.Y. 2007)....................................................21, 40

*In re Hibbard Brown & Co.*,
   217 B.R. 41 (Bankr. S.D.N.Y. 1998)..............................................................7

*In re Hollander Sleep Prods., LLC*,
   Case No. 19-11608 (MEW) (Bankr. S.D.N.Y. Sept. 5, 2019).....................38, 41

*In re Ionosphere Clubs, Inc.*,
   98 B.R. 174 (Bankr. S.D.N.Y. 1989)............................................................12

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007)........................................................................7

*In re JCK Legacy Company*, Case
   No. 20-10418 (MEW) (Bankr. S.D.N.Y. Sept. 25, 2020) ........................42, 50

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986)..............................................10, 17, 23

*In re Koelbl*,
   751 F.2d 137 (2d Cir. 1984).......................................................................21

*In re Lear Corp.*,
   Case No. 09-14326 (ALG), 2009 WL 6677955 (Bankr. S.D.N.Y. Nov. 5, 2009)...............34

*In re Lionel L.L.C.*,
   2008 Bankr. LEXIS 1047 (Bankr. S.D.N.Y. March 31, 2008)........................22

*In re LSC Commc'ns, Inc.*,
   Case No. 20-10950 (SHL) (Bankr. S.D.N.Y. Feb. 23, 2021)........................37

*In re MPM Silicones, LLC*,
   Case No. 14-22503 (RDD), 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014 .............39

*In re NII Holdings, Inc.*,
   536 B.R. 61 (Bankr. S.D.N.Y. 2015)..........................................................6, 7

*In re Northeast Dairy Co-op. Federation, Inc.*,
   73 B.R. 239 (Bankr. N.D.N.Y. 1987) .........................................................25

*In re One Times Square Assocs. Ltd. P'ship*,
   159 B.R. 695 (Bankr. S.D.N.Y. 1993)........................................................30

*In re Oneida Ltd.*,
   351 B.R. 79 (Bankr. S.D.N.Y. 2006)......................................................21, 40

*In re Pacific Drilling S.A.*,
   Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Nov. 2, 2018)........................41

*In re Relativity Media, LLC*,
   Case No. 18-11358 (MEW) (Bankr. S.D.N.Y. Jan. 31, 2019)........................41

*In re Residential Cap., LLC,*
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) ................................................39

*In re Sabine Oil & Gas Corp.,*
    555 B.R. 180 (Bankr. S.D.N.Y. 2016)........................................................................................7

*In re Sea Launch Co., L.L.C.,*
    2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30, 2010).....................................................32

*In re Stearns Holdings, LLC,*
    Case No. 19-12226 (SCC) (Bankr. S.D.N.Y. Oct. 24, 2019)................................................38

*In re Texaco, Inc.,*
    84 B.R. 893 (Bankr. S.D.N.Y. 1988).......................................................................................11

*In re Toy & Sports Warehouse, Inc.,*
    37 B.R. 141 (Bankr. S.D.N.Y. 1984).......................................................................................17

*In re Victory Constr. Co., Inc.,*
    42 B.R. 145 (Bankr. C.D. Cal. 1984).......................................................................................25

*In re WorldCom,*
    Case No. 02-13533, 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003)..........................23

*In re Young Broad. Inc.,*
    430 B.R. 99 (Banker. S.D.N.Y. 2010)........................................................................................5

*JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns),*
    419 B.R. 221 (Bankr. S.D.N.Y. 2009).....................................................................................34

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
    843 F.2d 636 (2d Cir. 1988)...............................................................................................21, 30

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
    837 F.2d 89 (2d Cir. 1988).................................................................................................34, 41

*Pub. Fin. Corp. v. Freeman (In re Pub. Fin. Corp.),*
    712 F.2d 219 (5th Cir. 1983)....................................................................................................21

*Rosenberg v. XO Commc'ns, Inc. (In re XO Commc'ns, Inc.),*
    330 B.R. 394 (Bankr. S.D.N.Y. 2005).....................................................................................39

*SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),*
    960 F.2d 285 (2d Cir. 1992)..........................................................................................20, 26, 41

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.),*
    326 B.R. 497 (S.D.N.Y. 2005) .................................................................................................40

**Statutes**

11 U.S.C. § 365 ...............................................................................................................................43

11 U.S.C. § 503(b) ..........................................................................................................................27

11 U.S.C. § 507(a)(1)...........................................................................................................28

11 U.S.C. § 507(a)(2)...........................................................................................................27

11 U.S.C. § 507(a)(4)...........................................................................................................28

11 U.S.C. § 507(a)(7)...........................................................................................................28

11 U.S.C. § 507(a)(8)...........................................................................................................28

11 U.S.C. § 542....................................................................................................................50

11 U.S.C. § 1122............................................................................................................11, 47

11 U.S.C. § 1123............................................................................................................11, 47

11 U.S.C. § 1123(a)................................................................................................13, 16, 22

11 U.S.C. § 1123(a)(1)....................................................................................11, 13, 14

11 U.S.C. § 1123(a)(2)............................................................................................13, 14

11 U.S.C. § 1123(a)(2)...................................................................................................16

11 U.S.C. § 1123(a)(3)...................................................................................................14

11 U.S.C. § 1123(a)(4)...................................................................................................14

11 U.S.C. § 1123(a)(5)..................................................................................14, 15, 42

11 U.S.C. § 1123(a)(6)............................................................................................14, 15

11 U.S.C. § 1123(a)(7)............................................................................................14, 15

11 U.S.C. § 1123(a)(8)...................................................................................................14

11 U.S.C. § 1123(b)........................................................................................................16

11 U.S.C. § 1123(b)(1)-(6)............................................................................................33

11 U.S.C. § 1123(b)(2)...................................................................................................43

11 U.S.C. § 1123(b)(3)(A)...............................................................................................6

11 U.S.C. § 1123(b)(6)...................................................................................................42

11 U.S.C. § 1123(b)(6).....................................................................................................6

11 U.S.C. § 1123(d)........................................................................................................16

11 U.S.C. § 1125(b)........................................................................................................18

11 U.S.C. § 1125(c)........................................................................................................19

11 U.S.C. § 1126............................................................................................................17

11 U.S.C. § 1126 .................................................................................................................. 20

11 U.S.C. § 1126(c) ............................................................................................................. 26

11 U.S.C. § 1126(d) ............................................................................................................. 26

11 U.S.C. § 1126(f) ................................................................................................. 20, 25, 26

11 U.S.C. § 1127(a) ............................................................................................................. 45

11 U.S.C. § 1127(d) ....................................................................................................... 45, 46

11 U.S.C. § 1129(a) ............................................................................................................. 32

11 U.S.C. § 1129(a)(1) ........................................................................................................ 10

11 U.S.C. § 1129(a)(10) ...................................................................................................... 29

11 U.S.C. § 1129(a)(11) ...................................................................................................... 30

11 U.S.C. § 1129(a)(12) ...................................................................................................... 31

11 U.S.C. § 1129(a)(13) ...................................................................................................... 31

11 U.S.C. § 1129(a)(14) ...................................................................................................... 31

11 U.S.C. § 1129(a)(15) ...................................................................................................... 31

11 U.S.C. § 1129(a)(16) ...................................................................................................... 32

11 U.S.C. § 1129(a)(3) ................................................................................................... 21, 22

11 U.S.C. § 1129(a)(4) ........................................................................................................ 22

11 U.S.C. § 1129(a)(5) ........................................................................................................ 23

11 U.S.C. § 1129(a)(5)(A)(i) ............................................................................................... 24

11 U.S.C. § 1129(a)(5)(A)(ii) .............................................................................................. 24

11 U.S.C. § 1129(a)(5)(A)(ii) .............................................................................................. 24

11 U.S.C. § 1129(a)(5)(B) ................................................................................................... 24

11 U.S.C. § 1129(a)(5)(B) ................................................................................................... 24

11 U.S.C. § 1129(a)(6) ........................................................................................................ 24

11 U.S.C. § 1129(a)(7) ............................................................................................... 24, 25, 26

11 U.S.C. § 1129(a)(8) ............................................................................................... 26, 27, 32

11 U.S.C. § 1129(a)(9) ........................................................................................................ 27

11 U.S.C. § 1129(a)(9)(A) ................................................................................................... 27

11 U.S.C. § 1129(a)(9)(B)..................................................................................28

11 U.S.C. § 1129(b) ........................................................................................32

11 U.S.C. § 1129(c) ........................................................................................32

11 U.S.C. § 1129(d) ...................................................................................32, 33

28 U.S. Code § 1930.......................................................................................31

**Rules**

Fed. R. Bankr. P. 2002(b) ..............................................................................19

Fed. R. Bankr. P. 3017 ...................................................................................17

Fed. R. Bankr. P. 3017(d)-(f) .........................................................................19

Fed. R. Bankr. P. 3018 ...................................................................................17

Fed. R. Bankr. P. 3019 ...................................................................................46

Fed. R. Bankr. P. 3020(e) ...............................................................................51

Fed. R. Bankr. P. 9019.....................................................................................6

**Other Authorities**

H.R. Rep. No. 31, 109th Cong., 1st Sess. 145 (2005) ..................................32

H.R. Rep. No. 595, 95th Cong., 1st Sess.  412 (1977) ..................11, 16, 17

S. Rep. No. 989, 95th Cong., 2d Sess. 123 (1978)........................................27

S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978)........................................11

TO THE HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE:

Venus Liquidation, Inc. (f/k/a Vice Group Holding, Inc.) and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (this "Chapter 11 Cases") hereby submit this memorandum of law (this "Memorandum") in support of confirmation of the *Amended Chapter 11 Plan of Liquidation for Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) and Certain of its Affiliates* (as it may be amended, modified, and/or supplemented from time to time, the "Plan"),[2] a copy of which was attached to the notice filed on April 25, 2024 [Docket No. 961] (the "Amended Plan Notice"), and approval of the *Disclosure Statement for Chapter 11 Plan of Liquidation for Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) and Certain of its Affiliates*, filed on February 8, 2024 [Docket No. 836] (the "Disclosure Statement") on a final basis.[3]

In support of this Memorandum, the Debtors rely upon and incorporate herein by reference:

(i)   the Declaration of Frank A. Pometti, the Debtors' Chief Restructuring Officer, a copy of which is attached hereto as **Exhibit A** (the "Pometti Declaration");

(ii)  the *Affidavit of Service,* dated March 8, 2024 [Docket No. 840], the *Supplemental Affidavit of Service*, dated March 19, 2024 [Docket No. 858], and the *Supplemental Affidavit of Service*, dated March 26, 2024 [Docket No. 863] (the "Solicitation Declarations"); and

(iii) the *Certification of Adam J. Fialkowski of Stretto, Inc. Regarding the Voting and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation for Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.)*

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[3]   Pursuant to the Scheduling Order (as defined below), the Court approved the Disclosure Statement on a provisional basis, subject to final approval at the Combined Hearing (as defined below).

*and Certain of its Affiliates*, filed on April 3, 2024 [Docket No. 902] (the "<u>Voting Declaration</u>");

(iv)    the *Amended Certification of Adam J. Fialkowski of Stretto, Inc. Regarding the Voting and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation for Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) and Certain of its Affiliates*, filed on April 5, 2024 [Docket No. 905] (the "<u>Amended Voting Declaration</u>");  and

(v)    the *Second Amended Certification of Adam J. Fialkowski of Stretto, Inc. Regarding the Voting and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation for Venus Liquidation Inc. (f/k/a Vice Group Holding Inc.) and Certain of its Affiliates*, filed on April 16, 2024 [Docket No. 955] (the "<u>Second Amended Voting Declaration</u>" and, collectively with the Pometti Declaration, the Solicitation Declarations, the Voting Declaration and the Amended Voting Declaration, the "<u>Declarations</u>").

In support of confirmation of the Plan and approval of the Disclosure Statement on a final basis, the Debtors respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.    The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") should confirm the Plan because it is in the best interests of the Debtors' estates, is the product of extensive good-faith and arm's length negotiations by and among the Debtors and all of their significant stakeholders, and has been accepted by the requisite Holders of Claims.

2.    The Plan is based on the Committee Settlement, which the Court approved pursuant to the DIP Financing Order.  Embodying the Committee Settlement, the Plan is a liquidating plan that, among other things, provides for the establishment of a cash reserve to be distributed to the Debtors' general unsecured creditors and the post-confirmation estates to be administered by the Plan Administrator.

3.    The Debtors commenced these Chapter 11 Cases to pursue a sale of all, or substantially all, of the Debtors assets, which, among other things, would effectuate transfer the Debtors' valuable Executory Contracts and intellectual property

in exchange for fair consideration.  The Debtors accomplished this goal within three months of the Petition Date.  The Debtors thereafter engaged in robust good-faith and arm's length negotiations with key stakeholders of their Estates resulting in Court approval of the Committee Stipulation and the Antenna Stipulation, each a condition precedent to the Effective Date.  The Debtors' professionals have each agreed to a voluntary reduction in their fees to facilitate the feasibility of the Plan.

4.      The Debtors respectfully submit that failure to confirm the Plan would inevitably result in the Chapter 11 Cases being converted to a case under Chapter 7 of the Bankruptcy Code.  Such a result is in no Estate stakeholder's best interests as distributions to creditors would be significantly delayed if made at all.  Accordingly, the Plan is consistent with the Debtors' fiduciary responsibility to maximize recoveries for all creditors.

5.      As demonstrated herein, the Plan satisfies each of the requirements for confirmation under the Bankruptcy Code.  In addition, the Plan is supported by the Creditors' Committee.  Therefore, and for the reasons set forth in more detail below and in the Declarations, the Court should confirm the Plan.

## FACTS

6.      The factual background relevant for confirmation of the Plan and approval of the Disclosure Statement on a final basis is set forth in the Disclosure Statement, the Declarations, and, to the extent necessary, the evidence that will be presented or adduced at the Combined Hearing.

## ARGUMENT

7.      To obtain confirmation of the Plan, the Debtors must establish by a preponderance of the evidence that the Plan has satisfied the requirements set forth in section 1129 of the Bankruptcy Code.  *See JPMorgan Chase Bank, N.A. v. Charter*

*Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 243–44 (Bankr. S.D.N.Y. 2009) (finding that the plan proponent bears the burden of establishing compliance with the factors set forth in section 1129 by a preponderance of the evidence); *see also In re Young Broad. Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (same).  The Debtors respectfully submit that the Plan complies with, and satisfies, each of the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence, and thus should be confirmed.

## I.    The Plan Should Be Approved[4]

## A.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code

8.    Section 1129(a)(1) of the Bankruptcy Code provides that a plan must comply with the applicable provisions of the Bankruptcy Code—notably, those governing classification of claims and interests and the contents of a plan.  *See* 11 U.S.C. § 1129(a)(1); *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (noting that "[o]bjections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123"), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization.").  Thus, to satisfy section 1129(a)(1), the Plan must comply with sections 1122 and 1123 of the Bankruptcy Code.[5]

---

[4]    Notwithstanding the relief sought in this Memorandum or anything contained herein to the contrary, the Debtors reserve the right to make non-substantive and/or technical modifications to the Plan, Disclosure Statement, Plan Supplement, and related documents, without further order of the Court.

[5]    *See Kane v. Johns-Manville Corp.*, 843 F.2d at 648–49 (suggesting that Congress intended the phrase "'applicable provisions' in this subsection to mean provisions of Chapter 11 . . . such as section 1122

9.      As demonstrated below, the Plan fully complies with sections 1122 and 1123 of the Bankruptcy Code.

**B.      The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code**

10.     Under section 1122 of the Bankruptcy Code, claims or interests within a given class must be "substantially similar" to the other claims or interests in the class. *See* 11 U.S.C. § 1122. Such claims or interests may be placed in separate classes provided a rational basis exists for doing so. *See Boston Post Rd. L.P. v. FDIC (In re Boston Post Rd. L.P.)*, 21 F.3d 477, 483 (2d Cir. 1994) (holding that a debtor may classify unsecured claims in separate classes if the debtor adduces credible proof of a legitimate reason for separate classification of similar claims); *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis;  separate classification was based on bankruptcy court-approved settlement); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993) (finding that plan proponent "has considerable discretion to classify claims and interests according to the facts and circumstances of the case . . . ."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177–78 (Bankr. S.D.N.Y. 1989) (allowing classification of claims of same rank in different classes).

11.     Courts in this district have identified several grounds justifying the separate classification of claims, including (a) where members of a class possess different legal rights and (b) where the debtor has good business reasons for separate classification. *See In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996) (finding that

---

and 1123"); *see also In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (same); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978) ("Paragraph (1) requires that the plan comply with the applicable provisions of chapter 11, such as section 1122 and 1123, governing classification and contents of plan."); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977) (same).

separate classification of similarly situated claims is appropriate where supported by credible proof to justify separate classification of unsecured claims); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL), 2007 WL 2779438, at *3 (Bankr. S.D.N.Y. Sept. 17, 2007) (same); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 714, 715–16 (Bankr. S.D.N.Y. 1992) (same).

12.    Under the Plan, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. *See* Plan, Art. III. Specifically, the Plan provides for the following Classes of Claims and Interests:

| Class | Classification |
|-------|----------------|
| Class 1 | Secured Tax Claims |
| Class 2 | Other Secured Claims |
| Class 3 | Other Priority Claims |
| Class 4 | Prepetition Senior Secured Credit Agreement Claims |
| Class 5 | JPM Overdraft Facility Claims |
| Class 6 | Senior Subordinated Notes Claims |
| Class 7 | Pulse Notes Claims |
| Class 8 | General Unsecured Claims |
| Class 9 | Interests |

13.    The Plan's classification scheme is supported by valid business, legal, and factual reasons. For example, the Prepetition Senior Secured Credit Claims (Class 4), JPM Overdraft Facility Claims (Class 5), Senior Subordinated Notes Claims

(Class 6) and the Pulse Notes Claims (Class 7) are in different classes because such Claims arise under separate prepetition loan agreements and/or pursuant to different rights under such agreements.  General Unsecured Claims (Class 8) are classified separately because such claims are entitled to different priority under section 507(a) of the Bankruptcy Code.  In addition, other aspects of the Plan's classification scheme are related to the different legal or factual of each Class, such as Other Secured Claims (Class 2), Other Priority Claims (Class 3), and Interests (Class 9), which are classified separately due to their required treatment under the Bankruptcy Code.  The Plan's classifications not only serve the purpose of facilitating ease of Distributions on the Effective Date, but also acknowledge the fundamental differences between those types of Claims and Interests.  Accordingly, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan satisfies section 1122 of the Bankruptcy Code.

14.    The facts and circumstances of these Chapter 11 cases also support the consolidation of the Debtors' estates for Plan purposes.  Prior to the Petition Date, the Debtors utilized a shared cash management system.  As described in the Disclosure Statement, each of the Debtors were obligated under prepetition financing agreements for certain secured obligations.  The Debtors also filed their taxes as part of a consolidated tax return.  After the Petition Date, substantially all of the Debtors' assets were sold, pursuant to the Sale Order.  There was no allocation of the purchase price to the individual Debtor entities.  Consolidating the Debtors' estates into a single entity for purposes of the Plan, including Distributions in full on account of Allowed Claims, is therefore in the best interests of creditors.

**C.**    **The Plan Complies with Section 1123(a) of the Bankruptcy Code**

15.    Section 1123(a) of the Bankruptcy Code sets forth seven

requirements with which the Plan must comply.  11 U.S.C. § 1123(a).  Specifically, the

Plan must:

a.    designate classes of claims and interests, other than administrative expense claims under section 507(a)(2) of the Bankruptcy Code, and priority tax claims under section 507(a)(8) of the Bankruptcy Code (11 U.S.C. § 1123(a)(1));

b.    specify any class of claims or interests that is not impaired under the plan (11 U.S.C. § 1123(a)(2));

c.    specify the treatment of any class of claims or interests that is impaired under the plan (11 U.S.C. § 1123(a)(3));

d.    provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest (11 U.S.C. § 1123(a)(4));

e.    provide adequate means for the plan's implementation (11 U.S.C. § 1123(a)(5));

f.    provide that the debtor's organizational documents prohibit the issuance of non-voting securities (11 U.S.C. § 1123(a)(6));  and

g.    contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee (11 U.S.C. § 1123(a)(7)).[6]

16.    The Plan satisfies these requirements.  *First*, the Plan designates

Classes of Claims and Interests as required by section 1123(a)(1).  *See* Plan § 3.3.

17.    *Second*, as required by sections 1123(a)(2) and (3) of the Bankruptcy

Code, the Plan specifies which Classes of Claims and Interests are Impaired and

Unimpaired and sets forth the treatment of such Classes.  *See* Plan § 3.4.

---

[6]    Section 1123(a)(8), added with the enactment of the 2005 Bankruptcy Code amendments, is only applicable to individual debtor cases and, therefore, not addressed herein.

18.    *Third*, unless a Holder of a Claim or Interest agrees to less favorable treatment, the Plan provides for the same treatment for each Claim or Interest. Therefore, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code. *See id.*

19.    *Fourth*, the Plan provides adequate means for its implementation as required under section 1123(a)(5) of the Bankruptcy Code. *See* Plan, Art. V. The Plan, together with the documents and forms of agreement included in the Plan Supplement, provides a detailed blueprint for the transactions contemplated by the Plan including its primary features: implementation of the Plan by the Plan Administrator and the establishment of the GUC Cash Reserve. Article V of the Plan further describes the implementation of the Plan, including: (a) the vesting of assets in the post-confirmation Debtors; (b) the primary source of Distributions; (c) the powers and obligations of the Plan Administrator; and (d) the dissolution of the Debtors.

20.    In addition to these core features of the Plan, the Article V of the Plan sets forth the other critical mechanics of the Plan, such as the preservation of the GUC Reserved Litigation Claims, the preservation of insurance, and compliance with the Asset Purchase Agreement and the Antenna Stipulation. The precise terms governing the implementation of the Plan are set forth in greater detail in the Plan, and, where applicable, the relevant definitive documents or forms of agreements included in the Plan Supplement. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

21.    *Fifth*, the requirement under section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan. Upon the Effective Date, the Debtors, other than Venus Liquidation Inc., will be deemed dissolved, their cases closed and a final decree shall be deemed entered for each Debtor. Accordingly, the Debtors will not be issuing

securities.  Thus, the requirement that the Debtors' organizational documents prohibit
the issuance of non-voting equity securities does not apply in these Chapter 11 Cases.

22.    *Finally*, the Plan complies with section 1123(a)(7) as it contains only
those provisions that are consistent with the interests of Holders of Claims and Interests
and with public policy with respect to the manner of selection of any officer, director, or
trustee under the Plan and any successor to such officer, director, or trustee.  On the
Effective Date, the Debtors will not have directors and officers.  The Debtors have
disclosed the identity of the Plan Administrator in the Plan Supplement, which is
consistent with the interest of creditors and with public policy.  Accordingly, the
Debtors submit that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

**D.    The Plan Complies with Section 1123(b) of the Bankruptcy Code**

23.    In addition to the provisions required by section 1123(a) of the
Bankruptcy Code, the Plan also contains numerous discretionary provisions permitted
by section 1123(b) of the Bankruptcy Code.  Among other things, the Plan provides for
the:  (a) impairment of certain Claims;  (b) retention of the GUC Reserved Litigation
Claims, which may be pursued by the Plan Administrator;  (c) rejection of executory
contracts and unexpired leases;  and (d) release, injunction, and/or exculpation of
certain parties.  *See* Plan, Arts. III, V, VIII, & X.  Each of these provisions of the Plan is
consistent with section 1123(b) of the Bankruptcy Code and permissible under
applicable law.

**E.    Section 1123(d) Is Inapplicable to the Plan**

24.    Section 1123(d) of the Bankruptcy Code provides that "if it is
proposed in a plan to cure a default the amount necessary to cure the default shall be
determined in accordance with the underlying agreement and applicable
nonbankruptcy law."  11 U.S.C. § 1123(d).  As the Debtors are not planning to assume

any Executory Contracts (*see* Plan Supplement), the Debtors are not proposing to cure

any defaults. Thus, section 1123(d) of the Bankruptcy Code is inapplicable in these

Chapter 11 Cases.

**F.      The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code**

25.    Section 1129(a)(2) of the Bankruptcy Code also requires the

proponent of a chapter 11 plan to comply with the applicable provisions of the

Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(2). Notably, the legislative history provides

that section 1129(a)(2) is intended to encompass the disclosure and solicitation

requirements contained in sections 1125 and 1126 of the Bankruptcy Code. *See* S. Rep.

No. 989, 95th Cong., 2d Sess. 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that

the proponent of the plan comply with the applicable provisions of chapter 11, such as

section 1125 regarding disclosure."); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977)

(same); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986)

("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged

failure of the plan proponent to comply with § 1125 & § 1126 of the Code."); *In re Toy*

*& Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) ("Code § 1129(a)(2)

requires that the proponent of the plan must comply with chapter 11. Thus, the

proponent must comply with the ban on post-petition solicitation of the plan

unaccompanied by a written disclosure statement approved by the court in accordance

with Code §§ 1125 and 1126.").

26.    As set forth below, the Debtors have complied with the applicable

provisions of the Bankruptcy Code, including sections 1125 and 1126, as well as

Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting

acceptances of the Plan through Stretto, Inc. ("<u>Stretto</u>"), in accordance with the *Order (I)*

*Approving Certain Key Dates Relating to Confirmation of the Debtors' Plan, Including*

*Scheduling a Combined Hearing to Consider approval of the Debtors' Disclosure Statement and*
*Plan;  (II) Approving the Form and Manner of Combined Hearing Notice;  (III) Approving*
*Debtors' Disclosure Statement on a Provisional Basis;  (IV) Approving (A) Procedures for*
*Solicitation, (B) Forms of Ballots, (C) Procedures for Tabulation of Votes, and (D) Procedures*
*for Objections* [Docket No. 798] (the "<u>Scheduling Order</u>").  Among other things, the
Scheduling Order:  (a) approved the Disclosure Statement on a provisional basis, subject
to final approval at the Combined Hearing;  (b) scheduled the Combined Hearing to
consider approval of the Disclosure Statement on a final basis and confirmation of the
Plan (the "<u>Combined Hearing</u>");  (c) approved certain procedures for solicitation and
tabulation of votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>");  and
(d) approved the Ballots (as defined in the Scheduling Order) and the other materials
distributed by the Debtors in connection with Confirmation of the Plan (collectively,
the "<u>Solicitation Materials</u>").

## II.    The Debtors Have Complied with the Disclosure and Solicitation Requirements of Section 1125 of the Bankruptcy Code

27.    Section 1125(b) of the Bankruptcy Code prohibits the solicitation of
acceptances or rejections of a plan "unless, at the time of or before such solicitation,
there is transmitted . . . the plan or a summary of the plan, and a written disclosure
statement approved, after notice and a hearing, by the court as containing adequate
information."  11 U.S.C. § 1125(b).  The Debtors satisfy section 1125(b) of the
Bankruptcy Code.

28.    Before the Debtors began soliciting votes on the Plan, the Court,
under the Scheduling Order, approved the Disclosure Statement as containing adequate
information pursuant to section 1125 of the Bankruptcy Code on a provisional basis,
and further approved the Solicitation Procedures.

29.     The Debtors complied in all respects with the Solicitation

Procedures outlined in the Scheduling Order.  On or before March 6, 2024, the Debtors

caused Stretto to transmit the Solicitation Materials in accordance with the Scheduling

Order.  *See* Second Amended Voting Decl. ¶¶ 8, 9.  Specifically, Stretto caused copies of

the following documents to be served, via first-class mail, to the Holders of Claims and

Interests in Classes 4, 5, 6, 7, and 8 (*i.e.,* the Voting Classes, as defined in the Scheduling

Order):  (a) the Combined Hearing Notice (as defined in the Scheduling Order);  (b) a

copy of the Scheduling Order;  (c) instructions detailing how to access copies of the

Disclosure Statement and Plan on the website for these Chapter 11 Cases maintained by

Stretto, with hard copies made available upon request;  and (d) the appropriate

personalized Ballot.  In accordance with the Scheduling Order, the Debtors also caused

Stretto to send the Combined Hearing Notice (as defined in the Scheduling Order) to

the Holders of Claims and Interests in Classes 1, 2, 3, and 9 of the Plan (*i.e.* the Non-

Voting Classes, as defined in the Scheduling Order).  Pursuant to the Scheduling Order,

the Debtors were not required to distribute copies of the Plan or Disclosure Statement to

Holders of Claims or Interests in the Non-Voting Classes (as defined in the Scheduling

Order), but instead made copies available upon request and provided instructions in

the Combined Hearing Notice (as defined in the Scheduling Order) for requesting the

same.

30.     The Voting Declaration and the Solicitation Declaration

demonstrate that the Debtors served the Solicitation Packages in accordance with the

requirements of Bankruptcy Rules 2002(b) and 3017(d)–(f), and the Scheduling Order.

The Debtors, through Stretto, also complied in all respects with the content and delivery

requirements of the Scheduling Order, thereby satisfying sections 1125(a) and (b) of the

Bankruptcy Code.  The Debtors also caused the same solicitation version of the

13

Disclosure Statement to be made available to all parties entitled to vote on the Plan as authorized by the Scheduling Order in compliance with section 1125(c) of the Bankruptcy Code.  Finally, the Debtors did not solicit acceptances of the Plan from any creditor or interest holder prior to the transmission of the Disclosure Statement. As such, the Debtors have complied with section 1125 of the Bankruptcy Code.

### III.    The Debtors Have Satisfied the Plan Acceptance Requirements of Section 1126 of the Bankruptcy Code

31.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan and provides which holders of claims or interests are entitled to vote on the plan.  *See* 11 U.S.C. § 1126.  Specifically, section 1126 of the Bankruptcy Code details the requirements for acceptance of a plan, providing, in relevant part, that only holders of allowed claims in impaired classes that will receive or retain property under a plan on account of such claims may vote to accept or reject a plan.  *See id.*  A class that is not impaired under a plan, and each holder of a claim or interest in such class, is conclusively presumed to have accepted the plan.  *See* 11 U.S.C. § 1126(f);  *see also SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired class is presumed to have accepted the plan);  S. Rep. No. 989, 95th Cong., 2d Sess. 123 (1978) (same).

32.    Pursuant to the Plan, and in accordance with section 1126 of the Bankruptcy Code, the Debtors did not solicit votes on the Plan from Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims), and Class 3 (Other Priority Claims), which Classes are unimpaired under the Plan and hence deemed to accept the Plan.  *See* 11 U.S.C. § 1126(f).  The Debtors did not solicit votes from Class 9 (Interests) because such Class is impaired, and not receiving or retaining any value under the Plan and, thus, deemed to reject the Plan.

33.     The Debtors solicited votes from Holders of Claims in Class 4
(Prepetition Senior Secured Credit Agreement Claims), Class 5 (JPM Overdraft Facility
Claims), Class 6 (Senior Subordinated Notes Claims), Class 7 (Pulse Notes Claims), and
Class 8 (General Unsecured Claims) because the Holders of Allowed Claims in these
Classes are Impaired and may be entitled to receive a distribution under the Plan.
Therefore, the Debtors submit that its solicitation of votes on the Plan was conducted in
compliance with sections 1125 and 1126 of the Bankruptcy Code.

A.     **The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code**

34.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be
"proposed in good faith and not by any means forbidden by law." 11 U.S.C.
§ 1129(a)(3).  Courts in the Second Circuit have found that the good faith standard
requires "a showing that the plan [was] proposed with honesty, good intentions and
with a basis for expecting that a reorganization can be effected." *In re Granite Broad.
Corp.*, 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007)  (alteration in original) (internal quotation
marks omitted); *Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs.
of Telecom Argentina, S.A.)*, 528 F.3d 162, 174 (2d Cir. 2008) (same) (citing *In re Koelbl*, 751
F.2d 137, 139 (2d Cir. 1984)); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843
F.2d 636, 649 (2d Cir. 1988) (quoting *Koelbl*).

35.     Additionally, good faith is to be determined "in light of the totality
of the circumstances surrounding" formulation of the plan.  *Pub. Fin. Corp. v. Freeman
(In re Pub. Fin. Corp.)*, 712 F.2d 219, 221 (5th Cir. 1983); *see also In re Oneida Ltd.*, 351 B.R.
79, 85 (Bankr. S.D.N.Y. 2006) ("Good faith should be evaluated in light of the totality of
the circumstances surrounding confirmation."); *In re Lionel L.L.C.*, Case No. 04-17324
(BRL), 2008 Bankr. LEXIS 1047, at *15–16 (Bankr. S.D.N.Y. Mar. 31, 2008) (looking to the

totality of the circumstances in order to determine that a plan was proposed in good faith under section 1129(a)(3)).

36.     Here, the Plan is the product of extensive arm's-length negotiations among the Debtors, as proponent of the Plan, the Creditors' Committee and other key stakeholders of the Debtors' Estates, which were conducted in good faith and culminated in the Plan, which provides for the fair allocation of the Debtors' assets consistent with the requirements of the Bankruptcy Code and other applicable law. Indeed, the Plan provides for the payment in full of all Priority Claims against the Debtors and contains a mechanism for recoveries for holders of Allowed General Unsecured Claims by the re-vesting of all of the Debtors' remaining assets, including the GUC Cash Reserve and GUC Reserved Litigation Claims, to the post-confirmation Debtors to be administered by the Plan Administrator.  It is beyond dispute that the Plan formulation process was conducted in good faith and all participants in the process are sophisticated and independently represented by competent counsel. Furthermore, the broad support of the Plan, as evidenced by the Second Amended Voting Declaration, is strong evidence that the Plan has a proper purpose.  Thus, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

**B.     The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code**

37.     Section 1129(a)(4) of the Bankruptcy Code requires that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved, or is subject to approval of, the court as reasonable."  11 U.S.C. § 1129(a)(4).  This section has been construed to require that all payments of professional fees that are made from assets of a debtor's estate be subject to bankruptcy court review and approval as to their reasonableness. *See In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 WL 23861928, at *54 (Bankr.

S.D.N.Y. Oct. 31, 2003) ("Section 1129(a)(4) has been construed to require that all

payments of professional fees that are made from estate assets be subject to review and

approval as to their reasonableness by the Court."); *see also In re Johns-Manville Corp.*, 68

B.R. at 632 (holding that a bankruptcy court is not required to rule on fees paid by

individual creditors to their counsel, but only those fees that affect the administration of

a debtor's estate).

38.    Pursuant to the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331*

*Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of*

*Professionals* [Docket No. 782] entered on February 12, 2024, the Court has authorized

and approved the procedures for payment of certain fees and expenses of Professionals

retained in the Chapter 11 Cases.  All Professional Fee Claims remain subject to final

review and approval by the Court under the applicable provisions of the Bankruptcy

Code.  *See* Plan § 2.3.  Moreover, Section 2.3 of the Plan provides that all Professionals

shall submit final fee applications seeking approval of all Professional Fee Claims no

later than thirty (30) days after the Effective Date.  *See id.*  As soon as reasonably

practicable after the Confirmation Date, and no later than the Effective Date, the

Debtors shall escrow funds from its Cash sufficient to pay the Allowed Professional Fee

Claims, which are subject to Court approval.[7]

**C.    The Plan Complies With Section 1129(a)(5) of the Bankruptcy Code**

39.    Section 1129(a)(5) of the Bankruptcy Code requires the proponent

of a plan to disclose the identity and affiliation of any individual proposed to serve as a

director or officer of the debtor, or a successor to the debtor under the plan.  *See* 11

---

[7]    The Debtors' professionals have agreed to a voluntary reduction of their Allowed Professional Fee
Claims sufficient to facilitate the payment of other administrative and priority claims in accordance
with the Plan.

U.S.C. § 1129(a)(5)(A)(i).  Section 1129(a)(5)(A)(ii) further requires that the appointment

or continuance of such officers and/or directors be consistent with the interests of

creditors and equity security holders and with public policy.  *See* 11 U.S.C.

§ 1129(a)(5)(A)(ii).  Finally, section 1129(a)(5)(B) requires the plan proponent to disclose

the identity of any insider that will be employed or retained by the reorganized debtor,

and the nature of any compensation for such insider.  *See* 11 U.S.C. § 1129(a)(5)(B).

40.     On the Effective Date, the Debtors will not have directors and

officers.  The Debtors have disclosed the identity of the Plan Administrator in the Plan

Supplement, which is consistent with the interests of the creditors and with public

policy.  Accordingly, the Debtors have complied with section 1129(a)(5) of the

Bankruptcy Code.

### D.     Section 1129(a)(6) of the Bankruptcy Code Is Inapplicable to the Plan

41.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation

only if any regulatory commission that will have jurisdiction over the debtor after

confirmation has approved any rate change provided for in the plan.  *See* 11 U.S.C.

§ 1129(a)(6).  As the Debtors are not charging rates that are the subject of any regulatory

commission jurisdiction, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

### E.     The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code

42.     Section 1129(a)(7) of the Bankruptcy Code provides that a plan

must be in the "best interests" of creditors and interest holders.  *See* 11 U.S.C.

§ 1129(a)(7).  The "best interests" test requires that each holder of a claim or interest

either accept the plan or receive or retain property having a present value, as of the

effective date of the plan, not less than the amount such holder would receive or retain

if the debtor were liquidated in a hypothetical liquidation under Chapter 7 of the

Bankruptcy Code.  *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re*

*Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1167 (5th Cir. 1993); *In re Fur Creations by Varriale, Ltd.*, 188 B.R. 754, 759 (Bankr. S.D.N.Y. 1995); *In re Best Prods. Co., Inc.*, 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); *In re Ne. Dairy Coop. Fed'n, Inc.*, 73 B.R. 239, 253 (Bankr. N.D.N.Y. 1987); *In re Victory Constr. Co., Inc.*, 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984) .

43.    Importantly, section 1129(a)(7) of the Bankruptcy Code applies only to non-accepting holders of impaired claims. *See* 11 U.S.C. § 1129(a)(7). Similarly, pursuant to section 1126(f) of the Bankruptcy Code, a class that is not "impaired" under the plan is deemed to have accepted the plan and, therefore, has waived application of the "best interests" test. *See id*; 11 U.S.C. § 1126(f). Because Classes 1, 2, and 3 are Unimpaired under the Plan, such Classes are deemed to have accepted the Plan and, therefore, waived application of the "best interests" test.

44.    The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a Chapter 7 liquidation. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (holding that section 1129(a)(7) was satisfied when impaired holder of claim would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation"). However, where, as here, a Chapter 11 plan is a liquidating plan, this Court has explained that a separate liquidation analysis is unnecessary. *See In re Zuca Properties LLC*, Case No. 21-11082 (MG) (Bankr. S.D.N.Y. 2021), July 22 Hr'g Tr. at 21:19-20.

45.    Nevertheless, the "best interests" test is satisfied as to each member of an Impaired Class that has rejected or is deemed to reject the Plan. Notably, the Plan already provides for the liquidation of the Debtors. Due to, among other things, the Committee Settlement embodied in the Plan and the Debtors', Prepetition Secured

Parties' and Purchasers' substantial contributions as facilitated through the Committee

Settlement, Antenna Stipulation and Committee Stipulation, Holders of Impaired

Claims, including the Holders of General Unsecured Claims in Class 8, would receive

less in a chapter 7 liquidation than they stand to receive under the Plan.  In addition,

liquidation under Chapter 7 of the Bankruptcy Code would increase administrative

costs in the form of statutory Chapter 7 trustee's fees and other professional fees while

delaying Distributions to holders of Allowed Claims.  For these reasons, and based

upon the other evidence related thereto in support of the Plan, each Holder of a General

Unsecured Claim that is entitled to vote on the Plan has either accepted the Plan or will

receive or retain under the Plan, on account of such Claim, property of a value, as of the

Effective Date, that is not less than the amount such Holder would receive or retain if

the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

Such evidence is both persuasive and credible and based upon reasonable and sound

assumptions.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

**F.      Section 1129(a)(8) of the Bankruptcy Code**

46.      Section 1129(a)(8) of the Bankruptcy Code requires that each class

of claims or interests must either accept a debtor's plan or be unimpaired under the

plan.  *See* 11 U.S.C. § 1129(a)(8).  Pursuant to section 1126(c) of the Bankruptcy Code, a

class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount

and more than one-half in number of the claims in that class actually vote to accept the

plan.  *See* 11 U.S.C. § 1126(c).  A class that is not impaired under a plan, and each holder

of a claim or interest in such a class, is conclusively presumed to have accepted the plan.

*See* 11 U.S.C. § 1126(f);  *see also SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel

Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired

class is presumed to have accepted the plan);  S. Rep. No. 989, 95th Cong., 2d Sess. 123

(1978) (section 1126(f) of the Bankruptcy Code "provides that no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan").  A class is deemed to have rejected a plan if the plan provides that the claims or interests of that class do not receive or retain any property under the plan on account of such claims or interests.  *See* 11 U.S.C. § 1126(g).

47.     All unimpaired Classes of Claims under the Plan (*i.e.*, Classes 1, 2, and 3) are conclusively presumed to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code and, thus, have not voted on the Plan.  As set forth in the Second Amended Voting Declaration, Classes 4 and 8 have voted to accept the Plan. *See* Second Amended Voting Decl. at Ex. A.  Accordingly, with respect to the Classes of Claims described above, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

48.     Holders of Claims in Classes 5, 6 and 7 were provided Ballots and have either voted to reject the Plan (Class 6) or did not submit votes on the Plan (Classes 5 and 7).  Holders of Claims in Class 9 will not receive a distribution under the Plan, so such Class is deemed to reject the Plan.  Nevertheless, as discussed below, the Plan is a confirmable plan because it satisfies the "cram down" provisions of section 1129(b) of the Bankruptcy Code with respect to these non-accepting Classes.

**G.     The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code**

49.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.  *See* 11 U.S.C. § 1129(a)(9). In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the

effective date cash equal to the allowed amount of such claims. *Id.* Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—which generally include domestic support obligations, wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan). *See* 11 U.S.C. § 1129(a)(9)(B). Finally, section 1129(a)(C) provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, allowed priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim. 11 U.S.C. § 1129(a)(9)(C).

50. The Plan's treatment of the Administrative Claims, Professional Fee Claims, and Priority Tax Claims complies with section 1129(a)(9) of the Bankruptcy Code. *First*, the Plan provides that Holders of Allowed Administrative Claims, Professional Fee Claims, and Allowed Priority Tax Claims will receive payment in full in Cash on the Effective Date or as soon as practicable thereafter, unless such Holder otherwise agrees to less favorable treatment (*see* Plan §§ 2.1, 2.3 & 2.4), which complies with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. *Second*, the Plan provides that Allowed Secured Tax Claims, Other Secured Claims, and Other Priority Claims will receive an amount in Cash equal to the unpaid portion of such Allowed Claims on the Effective Date or as soon as reasonably practicable after such Claims become Allowed, unless the Holder of such Claim agrees to less favorable treatment. *See* Plan § 3.4. *Third*, on the Effective Date, the Debtors will have sufficient Cash to pay Administrative Claims, Priority Tax Claims, and Other Priority Claims, and

to fund the Plan Reserve Account, the Disputed Claim Reserve, and Professional Fee

Escrow.  To the extent that the Debtors do not have sufficient cash on the Effective Date

to pay the aforementioned claims, the Debtors' professionals have agreed to a voluntary

reduction of their Allowed Professional Fee Claims so that the required Effective Date

payments are made.  Based on the foregoing, the Plan satisfies the requirements of

section 1129(a)(9) of the Bankruptcy Code.

**H.**     **The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code.**

51.     Section 1129(a)(10) of the Bankruptcy Code requires that at least

one impaired class of claims, excluding acceptances of insiders, accept the Plan.

11 U.S.C. § 1129(a)(10).  Classes 4 and 8 are Impaired and voted to accept the Plan by

the requisite majorities, determined without including any acceptance of the Plan by

any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy

Code. *See* Second Amended Voting Decl. at Ex. A.  Thus, section 1129(a)(10) of the

Bankruptcy Code is satisfied.

**I.**     **The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code**

52.     Section 1129(a)(11) of the Bankruptcy Code requires that the Court

find that the Plan is feasible as a condition precedent to confirmation.  *See* 11 U.S.C.

§ 1129(a)(11).  To demonstrate that a plan is feasible, it is not necessary that success be

guaranteed.  *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636,

649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable

assurance of success.  Success need not be guaranteed.").  "In making determinations as

to feasibility . . . a bankruptcy court does not need to know to a certainty, or even a

substantial probability, that the plan will succeed.  All it needs to know is that the plan

has a reasonable likelihood of success." *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415,

421–22 (Bankr. S.D.N.Y. 2003); *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695,

709 (Bankr. S.D.N.Y. 1993) ("It is not necessary that the success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success.") (internal quotations and citations omitted); *see also In re EUSA Liquidation Inc.*, Case No. 09-15008 (SMB), 2010 WL 4916559, at *6 (Bankr. S.D.N.Y. June 10, 2010)  ("The Plan satisfies section 1129(a)(11) because it provides for the liquidation of the Debtor.  The Debtor has sold or abandoned substantially of its assets and will distribute cash to creditors.").

53.    The feasibility standard is simplified when a liquidating Chapter 11 plan is tested against section 1129(a)(11) of the Bankruptcy Code.  In the context of a liquidating plan, feasibility is established by demonstrating that the debtor is able to satisfy the conditions precedent to the plan effective date and otherwise has sufficient funds to meet its post-confirmation obligations to pay for the costs of administering and fully consummating the plan and closing the chapter 11 cases.  *In re Finlay Enters., Inc.*, Case No. 09–14873 (JMP), Docket No. 715 at 12 (Bankr. S.D.N.Y. June 29, 2010).  As set forth in the Pometti Declaration, the Debtors will have sufficient funds to fund the GUC Cash Reserve and make the required Effective Date payments.  *See* Pometti Decl. ¶ 40. In addition, the Plan provides for the Plan Administer, who is empowered to complete the wind-down of the Debtors' estates.  *See* Plan § 5.5.  Accordingly, the Debtors submit that the Plan is feasible and satisfies the standards of section 1129(a)(11) of the Bankruptcy Code.

**J.**    **The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code**

54.    Section 1129(a)(12) of the Bankruptcy Code requires that either all fees payable under section 1930, title 28 of the United States Code, as determined by the Court at the confirmation hearing, have been paid or that the Plan provides for the payment of all such fees on the Effective Date.  *See* 11 U.S.C. § 1129(a)(12).   Section 12.1

24

of the Plan provides for the payment of all statutory fees by the Plan Administrator, as

applicable, after the Effective Date.  The Plan thus satisfies section 1129(a)(12) of the

Bankruptcy Code.

**K.**     **Sections 1129(a)(13), (14), (15) and (16) of the
            Bankruptcy Code Are Not Applicable to the Plan**

55.     Section 1129(a)(13) of the Bankruptcy Code requires the debtor to

continue to provide retiree benefits for the period the debtor has obligated itself to

provide such benefits.  11 U.S.C. § 1129(a)(13).  The Debtors have none of those

obligations at present, and if the Debtors had any such obligations those obligations are

rejected under the Article VIII of the Plan.  Therefore, section 1129(a)(13) is inapplicable.

56.     Section 1129(a)(14) of the Bankruptcy Code requires the payment of

certain domestic support obligations.  11 U.S.C. § 1129(a)(14).  The Debtors have none

and, therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable.

57.     Section 1129(a)(15) of the Bankruptcy Code imposes certain

payment obligations on individual debtors.  11 U.S.C. § 1129(a)(15).  The Debtors are

not individuals and, therefore, section 1129(a)(15) of the Bankruptcy Code is

inapplicable.

58.     Section 1129(a)(16) of the Bankruptcy Code applies to transfers by

"a corporation or trust that is not a moneyed, business, or commercial corporation or

trust."  11 U.S.C. § 1129(a)(16).  The legislative history of section 1129(a)(16) of the

Bankruptcy Code demonstrates that this section was intended to "restrict the authority

of a trustee to use, sell, or lease property by a nonprofit corporation or trust."  *See* H.R.

Rep. No. 31, 109th Cong., 1st Sess. 145 (2005);  *In re Sea Launch Co., L.L.C.*, Case No. 09-

12153 (BLS), 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del. July 30, 2010) ("Section

1129(a)(16) by its terms applies only to corporations and trusts that are not moneyed,

business, or commercial.") (internal quotation marks and citation omitted).  Because the

Debtors are not nonprofit entities, section 1129(a)(16) of the Bankruptcy Code is

inapplicable.

**L.      The Plan Satisfies the "Cram Down" Requirements under Section 1129(b) of the Bankruptcy Code**

59.      Section 1129(b) of the Bankruptcy Code provides that if all

applicable requirements of section 1129(a) are met, other than section 1129(a)(8), a plan

may be confirmed so long as the requirements set forth in section 1129(b) are met.

*See* 11 U.S.C. § 1129(b).  To confirm a plan that has not been accepted by all impaired

classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan

proponent must show that the plan does not "discriminate unfairly" and is "fair and

equitable" with respect to the non-accepting impaired classes.  *See* 11 U.S.C. §

1129(b)(1); *In re Zenith Elecs. Corp.*, 241 B.R. at 105 (explaining that "[w]here a class of

creditors or shareholders has not accepted a plan of reorganization, the court shall

nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and

equitable'").

60.      Here, the Holders of Claims in Class 6 (Senior Subordinated Notes

Claims) voted to reject the Plan.  In addition, because the Holders of Claims in Class 9

(Interests) will not receive a distribution under the Plan, such Class is deemed to reject

the Plan.    Accordingly, the Debtors invoke section 1129(b) of the Bankruptcy Code

with respect to Classes 6 and 9.[8]

---

[8]      Although the Holders of the Claims in Class 5 (JPM Overdraft Facility Claims) and Class 7 (Pulse Notes Claims) did not submit votes on the Plan, the Debtors need not invoke section 1129(b) of the Bankruptcy Code with respect to these Classes because such Classes are deemed to accept the Plan for "cram down" purposes.  *See Heins v. Ruti-Sweetwater, Inc. (In re Ruti-Sweetwater, Inc.)*, 836 F.2d 1263, 1267-68 (10th Cir. 1988) (holding that impaired classes of claims entitled to vote on the plan that did not vote are deemed for purposes of section 1129(b) of the Bankruptcy Code); *see also In re*

### i.    The Plan Does Not Unfairly Discriminate with Respect to Classes 6 and 9

61.    The Plan does not discriminate unfairly with respect to the impaired Class 6 that has rejected the Plan or the impaired Class 9 that is deemed to reject the Plan.  Under section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment.  *See In re WorldCom Inc.*, 2003 WL 23861928, at *59 (citing *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *Adelphia Commc'ns Corp.*, 368 B.R. at 247.  As between two classes of claims or two classes of equity interests, there is no unfair discrimination if (a) the classes of comprised of dissimilar claims or interests, *see, e.g., In re Johns-Manville Corp.*, 68 B.R. at 636;  *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 656–57 (9th Cir. 1997);  *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989), or (b) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g., In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 715 (separate classification and treatment was rational where members of each class "possess[ed] different legal rights");  *In re Aztec Co.*, 107 B.R. at 590.  In this regard, the case law is clear that not all discrimination is impermissible under section 1129(b).  *See* Confirmation Hr'g Tr. at 118:4–7, *In re Reader's Digest Ass'n*, No. 09-23529 [Docket No. 758].  ("Clearly, one of the areas of flexibility that Congress provided in Chapter 11 is the unfair discrimination test of 1129, recognizing implicitly in the plain language that some forms of discrimination are fair.").

---

*Adelphia Commc'ns Corp.*, 368 B.R. 140, 260 (Bankr. S.D.N.Y. 2007) (holding that *Ruti-Sweetwater* "is rightly decided").

62.     If discrimination is present, courts in this District have typically

applied a four-part test to determine if the discrimination is fair, which considers

whether:  (a) there is a reasonable basis for discriminating;  (b) the debtor cannot

consummate the plan without discrimination;  (c) the discrimination is proposed in

good faith;  and (d) the degree of discrimination is in direct proportion to its rationale.

*See, e.g., In re Genco Shipping & Trade Ltd.*, 513 B.R. at 241–42;  *WorldCom, Inc.*, 2003 WL

23861928, at *59 (citing *Buttonwood*, 111 B.R. at 63).  In construing the test, leading courts

and commentators have concluded that the "test boils down to whether the proposed

discrimination has a reasonable basis and is necessary for reorganization."  *In re

Breitburn Energy Partners LP*, 582 B.R. 321, 351 (Bankr. S.D.N.Y. 2018) (citing 7 Alan N.

Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1129.03(3)(a), at 1129–66;

Confirmation Hr'g Tr. at 112:21–23, *In re Reader's Digest Ass'n*, No. 09-23529 [Docket No.

758] (interpreting the *Buttonwood* test as providing a "reminder[] to the fact finder to

focus his or her inquiry on the reasonable basis for discriminating").

63.     Here, the Claims underlying Classes 6 and 9 are similarly situated

and classified together given their respective related legal character.  On the other hand,

Classes 6 and 9 consist of dissimilar underlying claims.  Specifically, the Claims

underlying Class 6 are the only Class of Claims that relate to the Senior Subordinated

Notes.  *See* Plan § 1.122;  Plan § 3.4(f).  Moreover, the Claims underlying Class 9 are the

only Class of Claims that relate to equity security interests of a Debtor.  *See* Plan § 1.68;

Plan § 3.4(i).  Accordingly, the Plan does not unfairly discriminate against the Holders

of Claims in Classes 6 and 9.

### ii.     The Plan is Fair and Equitable

64.     Sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy

Code provide that a plan is fair and equitable with respect to a class of impaired

unsecured claims or interests if, under the plan, no holder of any claim or interest junior

thereto will receive or retain property under the plan on account of such junior claim or

interest.  *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).  This central tenet of bankruptcy law,

known as the "absolute priority rule," requires that if the holders of claims in a

particular class receives less than full value for their claims, no holders of claims or

interests in a junior class may receive any property under the plan.  *See Bank of Am. Nat.*

*Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999).  The corollary to

the absolute priority rule is that senior classes cannot receive more than a 100%

recovery for their claims.  *See 7 Collier on Bankruptcy* ¶1129.03[4][a];  *see also In re Granite*

*Broad. Corp*., 369 B.R. at 140 ("There is no dispute that a class of creditors cannot receive

more than full consideration for its claims, and that excess value must be allocated to

junior classes of debt or equity, as the case may be.");  *In re Exide Techs*., 303 B.R. 48, 61

(Bankr. D. Del. 2003) ("[A] corollary of the absolute priority rule is that a senior class

cannot receive more than full compensation for its claims." (citation omitted)).

65.    Here, the Plan satisfies the "fair and equitable" rule because no

Class of Claims classified as junior to Class 9 will receive or retain any property under

the Plan.  *See In re Finlay Enters. Inc*., 2010 WL 6580629, at *7 (holding that fair and

equitable test was satisfied where no interest junior to the interest of the rejecting class

received any property under the plan).  Moreover, no senior creditor will receive

property in excess of the full value of its Claims under the Plan.  Similarly, the Plan is

"fair and equitable" as to Class 6 because the treatment of Claims in Class 6 comports

with the "absolute priority rule" in that each Holder of a Class 6 Claim shall receive

such Holder's Pro Rata share of the Plan Administrator Net Recovery available for

Distribution on each such Distribution Date as provided under the Plan and the Plan

Administrator Agreement in full and final satisfaction, settlement of such claims,

pursuant to section to 510(a) of Bankruptcy Code, the Turnover Provisions,

and Proceeding Sharing Agreement, as applicable.  Thus, the Plan is "fair and

equitable" and therefore, consistent with the requirements of section 1129(b) of the

Bankruptcy Code.

**M.    <u>Section 1129(c) of the Bankruptcy Code Is Inapplicable to the Plan</u>**

66.    The Plan is the only plan filed in these Chapter 11 Cases and,

therefore, section 1129(c) of the Bankruptcy Code is inapplicable.

**N.    <u>The Plan Complies with Section 1129(d) of the Bankruptcy Code</u>**

67.    Section 1129(d) of the Bankruptcy Code states that "the court may

not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the

avoidance of the application of section 5 of the Securities Act of 1933."  11 U.S.C.

§ 1129(d).  The purpose of the Plan is not to avoid taxes or the application of section 5 of

the Securities Act of 1933.  Moreover, no party that is a governmental unit, or any other

entity, has requested that the Court decline to confirm the Plan on the grounds that the

principal purpose of the Plan is the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933.  For these reasons, the Plan satisfies

the requirements of section 1129(d) of the Bankruptcy Code.

**O.    <u>Section 1129(e) is Inapplicable to the Plan</u>**

68.    These Chapter 11 Cases are not a "small business case," as that

term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the

Bankruptcy Code is inapplicable.

**P.    <u>The Plan's Consolidation of the Debtors for Procedural Purposes Only Should
be Approved</u>**

69.    The Plan provides for the procedural consolidation of the Debtors

to avoid the inefficiency of proposing, voting on, and making Distributions with respect

to entity-specific claims. *See* Plan §§ 3.2, 3.3, 5.3. Courts in this jurisdiction may substantively consolidate one or more jointly-administered debtor's estates pursuant to section 1123(a)(5)(C) of the Bankruptcy Code and the Court's equitable power. *See In re Republic Airways Holdings, Inc.*, 565 B.R. 710, 716 (Bankr. S.D.N.Y. 2017); *In re Leslie Fay Cos.*, 207 B.R. 764, 779 (Bankr. S.D.N.Y. 1997). As a doctrine, substantive consolidation recognizes that "economic realities must not be ignored merely to preserve the legal form of corporate entities, most particularly where such legal formalism will disadvantage the vast majority of creditors and endanger the Debtors' reorganization." *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 766 (Bankr. S.D.N.Y. 1992). Substantive consolidation has also been ordered where "the debtor believes, in its best business judgement, that substantive consolidation will return the most to all creditors by pooling the assets and liabilities." *In re Am. Home Patient, Inc.*, 298 B.R. 152, 166 (Bankr. M.D. Tenn. 2003); *see also Republic Airways Holdings*, 565 B.R. at 719-21.

70.    Substantive consolidation is "a flexible concept," and "a principal question is whether creditors are adversely affected by consolidation and, if so, whether the adverse effects can be eliminated." *In re Jennifer Convertibles, Inc.*, 447 B.R. 713, 723-24 (Bankr. S.D.N.Y. 2011). "When deciding whether to order substantive consolidation, the courts in this circuit also use a balancing test to determine whether the relief achieves the best results for all creditors." *In re WorldCom Inc.*, 2003 WL 23861928, at *36 (citing *Colonial Realty Co.*, 966 F.2d at 60). Further, to ensure fair treatment of all creditors, "a searching review of the record, on a case-by-case basis" must be conducted. *Colonial Realty Co.*, 966 F.2d at 61.[9]

---

[9]    In the Second Circuit, courts apply the so-called *Augie/Restivo* test when assessing the propriety of substantive consolidation. Under this test, substantive consolidation should be specifically ordered where either: (a) the affairs of a corporate parent and its subsidiaries are so "hopelessly entangled"

71.     Because the Debtors are not proposing the actual substantive consolidation of their estates, but rather solely to facilitate Distributions under the Plan, the Debtors do not believe that the *Augie/Restivo* standard applies here.  However, to the extent the *Augie/Restivo* standard does apply, the Debtors submit that the "creditor reliance" test is satisfied as demonstrated by the Debtors' prepetition capital structure. *See* Disclosure Statement at II.A-D.  In addition, no creditors are adversely affected by the consolidation of the Debtors solely for purposes of facilitating Distributions under the Plan.  Accordingly, the procedural consolidation of the Debtors for Plan purposes should be approved.

**Q.     The Plan's Release, Exculpation and Injunction Provisions Are Appropriate and Should Be Approved**

72.     Section 1123(b) of the Bankruptcy Code identifies various additional provisions that may be incorporated into a chapter 11 plan.  *See* 11 U.S.C. § 1123(b)(1)–(6).  As set forth below, the Plan includes certain of these discretionary provisions, which the Debtors have determined, in the exercise of their reasonable business judgment, are appropriate in these Chapter 11 Cases.

73.     Article X of the Plan sets forth the Plan's releases, exculpation and injunction provisions.  As described below, these release, exculpation, and injunction provisions should be approved.

---

that the time and expense required to unwind the debtors' books and records could threaten creditor recoveries or the debtors' reorganization as a whole (the "hopeless entanglement" test);  or
(b) creditors did not rely upon the corporate separateness of individual debtors or generally relied on the credit of the debtors' overall enterprise when extending credit (the "creditor reliance" test).

*See Augie/Restivo*, 860 F.2d at 518.  Because *Augie/Restivo* sets forth these tests in the disjunctive, satisfying either the hopeless entanglement test or the creditor reliance test justifies substantive consolidation. *In re Verestar*, 343 B.R. 444, 462-63 (Bankr. S.D.N.Y. 2006).

IV.    **The Debtor Release**

74.    Section 10.2 of the Plan contains a release of potential claims and causes of action belonging to the Debtors and their Estates against the Released Parties (the "Debtor Release").  The Debtor Release does not release (a) any post-Effective Date obligations of any Person or Entity under the Plan, the Transition Services Agreement, the Sale Order, the Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (b) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud).

75.    Claims held by a debtor against third parties are property of the estate and may be released in exchange for settlement.  *See MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 91–92 (2d Cir. 1988).  When reviewing releases in a debtor's plan, courts consider whether such releases are in the best interest of the estate.  *See JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 257 (Bankr. S.D.N.Y. 2009) (analyzing a plan and embodied settlement under a best interests standard);  *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (finding debtor releases appropriate where they represented a valid exercise of the debtors' business judgment and were in the best interests of the estate), *rev'd in part on other grounds sub nom. Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 627 F.3d 496 (2d Cir. 2010);  *In re Bally Total Fitness,* Case No. 07-12395 (BRL), 2007 WL 2779438, at *12 (Bankr. S.D.N.Y. Sept. 17, 2007) (same).  Debtors have considerable leeway in issuing releases of their own claims, and such releases are considered non-controversial.  *See In re Adelphia Commc'ns Corp.,*

368 B.R. at 263 n.289.  Courts in this District and others recognize that releases by debtors are often in the best interests of the estate where "the costs involved [in pursuing the released claims] likely would outweigh any potential benefit from pursuing such claims." *In re Lear Corp.*, Case No. 09-14326 (ALG), 2009 WL 6677955, at *7 (Bankr. S.D.N.Y. Nov. 5, 2009); *see also In re Cano Petroleum, Inc.*, Case No. 12-31549 (BJH), 2012 WL 2931107, at *15 (Bankr. N.D. Tex. July 18, 2012) (same); *In re Calpine Corp.*, Case No. 05-60200 (BRL), 2007 WL 4565223, at *9 (Bankr. S.D.N.Y. Dec. 19, 2007) (same).

76.    Here, the Debtor Release, which has been negotiated at arm's length between the Debtors and the Released Parties, constitutes a sound exercise of the Debtors' business judgment and meets the applicable legal standard—the Debtor Release is fair, reasonable, is in the best interests of the Debtors and their Estates, and constitutes good faith compromises and settlements of the matters covered thereby. The Debtor Release is narrowly tailored to the facts and circumstances of these Chapter 11 Cases and also appropriately offers protection to the Released Parties, which actively participated in and made valuable contributions with respect to these Chapter 11 Cases and the Debtors' wind down process.  Further, the grant of the Debtor Release as reflected in the Plan has received support in the form of approval of the Plan received from voting creditors in Class 4 and Class 8.  The Debtor Release was included in the solicitation version of the Plan and conspicuously reprinted on the ballots used by creditors to vote to accept or reject the Plan.

77.    The Released Parties have made significant concessions and economic and non-economic contributions to the Debtors and their Estates that support approval of the Debtor Release.  Among other things, the Released Parties are parties to the stipulations approved by *Order Granting Debtors' Omnibus Motion for an Order*

*Pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Stipulations* [Docket No. 833] entered on March 1, 2024 (the "Stipulation Order").  In their motion seeking entry of the Stipulation Order, dated January 30, 2024 [Docket No. 768] (the "9019 Motion"), the Debtors argued that the Antenna Stipulation and the Committee Stipulation (each as defined in the Stipulation Order) "pave[d] the way for confirmation of the Plan," which, among other things established the GUC Cash Reserve and brought additional funds into the Estates for the benefit of the Debtors' general unsecured creditors.  9019 Mot. ¶ 31.  The 9019 Motion also explained that absent entry of the Stipulation Order, conversion to Chapter 7 would have been unavoidable, which would have destroyed the value otherwise protected under the Plan and reduced general unsecured creditor recoveries.  *Id.*

78.    Approval of the 9019 Motion is a condition to the effectiveness of the Plan.  *See* Plan § 9.1(g).  The cooperation by the Released Parties with the Debtors in negotiating the stipulations underlying the Court-approved 9019 Motion caused this condition to Plan effectiveness to be satisfied.

79.    The Debtor Release is similar to those commonly approved by Courts in this jurisdiction.  *See e.g. In re Revlon, Inc.*, Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y. April 3, 2023) [Docket No. 1746]; *In re GTT Communications, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Dec. 28, 2022) [Docket No. 821]; *In re LSC Commc'ns, Inc.*, Case No. 20-10950 (SHL) (Bankr. S.D.N.Y. Feb. 24. 2021) [Docket No. 1246]; *In re KB US Holdings, Inc.,* Case No. 20-22962 (SHL) (Bankr. S.D.N.Y. Feb. 22, 2021) [Docket No. 581]; *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 26, 2020) [Docket No. 2243]; *In re Sabine Oil & Gas Corp.*, Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. July 27, 2016) [Docket No. 1358].

80.     In light of the foregoing, and for the reasons set forth above and in the Pometti Declaration, the Debtors submit that the Debtor Release is appropriate and should be approved.[10]

## V.    Exculpation

81.     The revised exculpation provision set forth in Section 10.4 of the amended Plan (the "Exculpation Provision") is limited to estate fiduciaries, in their capacities as such, who have meaningfully and substantially contributed to the success of these Chapter 11 Cases.  The Exculpation Provision is appropriately circumscribed, has not been objected to, and is proper.  Indeed, even after *Metromedia*, appropriate exculpation provisions for case fiduciaries in chapter 11 plans remain standard practice and have been approved in large chapter 11 cases in this District.  *See, e.g., In re Oneida Ltd.*, 351 B.R. 79, 94 n.22 (Bankr. S.D.N.Y. 2006) (approving exculpation provision releasing claims relating to any "pre-petition or post-petition act or omission in connection with, or arising out of, the Disclosure Statement, the Plan or any Plan Document . . . the solicitation of votes for and the pursuit of Confirmation of [the] Plan, the Effective Date of [the] Plan, or the administration of [the] Plan or the property to be distributed under [the] Plan," where, as here, no release was provided for "gross negligence, willful misconduct, fraud, or criminal conduct, and the release cover[ed] only conduct taken in connection with Chapter 11 cases");  *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 501 (S.D.N.Y. 2005) ("*Enron II*") (citing Bankruptcy Court's finding that plan's exculpation provision was "appropriately limited to a qualified immunity for acts of negligence and [did] not relieve any party of

---

[10]    Notwithstanding anything to the contrary in the Plan or Disclosure Statement, in light of discussions with the U.S. Trustee, the Debtors are not seeking approval of any third party releases.

liability for gross negligence or willful misconduct" and that such clause was "reasonable and customary").

82.     Indeed, the Court in *Oneida* found that the "language of the [exculpation] clause, which generally follows the text that has become standard in this [D]istrict, is sufficiently narrow to be unexceptional." *Oneida*, 351 B.R. at 94 n.22; *see also In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (citing *Oneida* and *Enron II* and approving provision "'follow[ing] the text that has become standard in this [D]istrict,'" which exculpated the debtors and their pre- and postpetition lender and their respective representatives "for actions in connection, related to, or arising out of the Reorganization Cases") (quoting *Oneida*, 351 B.R. at 94 n.22).

83.     Similarly, under the facts and circumstances of these Chapter 11 Cases, the Court should approve the limited exculpation of the Exculpated Parties because such parties meaningfully contributed to the success of the Chapter 11 Case and the Exculpation Provision does not apply to any post-Effective Date obligations of any of the Exculpated Parties.  Importantly, *Metromedia* did not overrule the principle underlying the Second Circuit's prior decisions affirming releases of nondebtor parties, *i.e.*, "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." *SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992); *see also MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988).

84.     Courts in this District have routinely approved exculpation provisions similar to that proposed by the Debtor pursuant to the Plan.  *See, e.g., In re Relativity Media, LLC,* Case No. 18-11358 (MEW) (Bankr. S.D.N.Y. Jan. 31, 2019) [Docket No. 689-1] (approving exculpation provision for estate fiduciaries and non-fiduciaries);

*In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Nov. 2, 2018)
[Docket No. 746] (finding that exculpation for both estate fiduciaries and non-
fiduciaries was "consistent with prior case law, reasonable in scope, integral to the Plan,
and appropriate"); *In re Hollander Sleep Prods. LLC,* Case No. 19-11608 (MEW) (Bankr.
S.D.N.Y. Sept. 5, 2019) [Docket No. 356] (approving exculpation provision for estate
fiduciaries and other parties that "constructively participated in and contributed to the
Debtors' chapter 11 process consistent with this Court's Orders").

## VI.    **Injunction**

85.    The injunction set forth in Section 10.5 of the Plan (the "<u>Plan
Injunction</u>") merely implements the Debtor Release and Exculpation Provisions by
permanently enjoining parties from commencing or continuing any action against the
Released Parties or the Exculpated Parties on account of any Claims, Interests, Causes
of Action, or liabilities that have been released under the Plan.  The Plan Injunction is a
necessary part of the Plan precisely because it enforces the release, and exculpation
provisions that are centrally important to the Plan and the public policy underlying
chapter 11.  Further, the Plan Injunction is consensual as to any party that did not
specifically object thereto.

86.    The Debtors will also request that the Confirmation Order provide
for an injunction against all Holders of Claims or Interests or any other parties, along
with their respective present or former employees, agents, officers, directors, principals,
and affiliates from taking any actions to interfere with the implementation or
consummation of the Plan or interfering with the Distributions and payments
contemplated by the Plan.  Such injunction is consistent with the guidance from this
Court.  *See In re JCK Legacy Company*, Case No. 20-10418 (MEW) (Bankr. S.D.N.Y. Sept.
25, 2020), ¶ 1 (providing for an injunction from "interfering with the distributions and

payments contemplated by the Plan" in a liquidating chapter 11 case where the discharge under section 1141 of the Bankruptcy Code was not available).

87. Thus, the proposed injunction is appropriate under sections 1123(b)(6) and 1123(a)(5) of the Bankruptcy Code and should be approved.

## VII. The Rejection of Executory Contracts and Unexpired Leases Should Be Approved

88. Section 1123(b)(2) of the Bankruptcy Code allows a plan, subject to section 365 of the Bankruptcy Code, to provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously assumed or rejected under section 365 of the Bankruptcy Code. 11 U.S.C. § 1123(b)(2). In accordance with section 1123(b)(2), Section 8.1 of the Plan provides for the rejection of the Debtors' Executory Contracts (a) not previously assumed by order of the Bankruptcy Court, (b) not subject to a motion to assume filed on or before the Effective Date, (c) not identified as an Executory Contract to be assumed pursuant to the Plan Supplement before the Effective Date, or (d) that have not expired or terminated pursuant to their terms. Further, pursuant to Section 8.1 of the Plan, the Plan Supplement includes a "Schedule of Assumed and Assigned Executory Contracts" scheduling Executory Contracts to be assumed, which there are none. Accordingly, the rejection of Executory Contracts should be approved.

## VIII. The Modifications Comply with Section 1127 of the Bankruptcy Code

89. Since the filing and solicitation of votes with respect to the Plan, the following good faith negotiations with the U.S. Trustee, the Debtors have revised the Plan to facilitate its confirmation. The Debtors made the following modifications to the

Plan which are set forth in the redline attached to the Amended Plan Notice

(the "Modifications"):[11]

> i. Modified the definition of Exculpated Parties to include only fiduciaries of the Debtors' Estates in their capacity as such;
>
> ii. Modified the Exculpation Provision set forth in section 10.4 of the Plan to conform to the standard exculpation terms agreeable to the U.S. Trustee and typically approved in this jurisdiction;  and
>
> iii. Deleted the defined terms "Releasing Parties" and "Third-Party Release" and section 10.2(a) of the Plan and all of the references thereto in light of the Debtors no longer seeking third-party releases under the Plan.

90.     The Modifications do not materially and adversely affect the way

that any Claim or Interest Holder is treated under the Plan.

91.     Section 1127 of the Bankruptcy Code provides:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of the title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan….
>
> Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

11 U.S.C. §§ 1127(a), (d).

92.     Accordingly, bankruptcy courts typically allow plan proponents to

make non-material changes to a plan without any special procedures or vote re-

solicitation.  *See, e.g., In re Am. Solar King*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) ("[I]f

a modification does not 'materially' impact a claimant's treatment, the change is not

---

[11]    The list below does not include minor typographical changes that the Debtors made to the Plan.

adverse and the court may deem that prior acceptances apply to the amended plan as well.") (citation omitted); *see also Enron Corp. v. New Power Co., (In re New Power Co.),* 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated.").

93.    In addition, Bankruptcy Rule 3019, designed to implement section 1127(d) of the Bankruptcy Code, provides in relevant part that:

> In a ….chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan.  If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the Court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019.

94.    Section 1127 of the Bankruptcy Code gives a plan proponent the right to modify the plan "at any time" before confirmation.  This right would be meaningless if the promulgation of all plan modifications, ministerial or substantive, adverse to certain claimants or not, necessitated the resolicitation of votes.  Accordingly, in keeping with traditional bankruptcy practice, courts have typically allowed a plan proponent to make non-material changes to a plan without any special procedures or vote resolicitation.[12]

---

[12]    *See, e.g., In re CIT Grp., Inc.,* Case No. 09-16565 (ALG), 2009 WL 4824498, at *28 (Bankr. S.D.N.Y. Dec. 8, 2009) (approving modifications that "did not materially or adversely modify the treatment of any Claims or Interests" without the need for resolicitation of votes on the plan); *In re Dana Corp.,* Case No. 06-10354 (BRL) 2007 WL 4589331, at *2 (Bankr. S.D.N.Y. Dec. 26, 2007) (approving modifications to plan that did not "materially or adversely affect or change the treatment of any Claim or Interest in

95.     Because all creditors in these Chapter 11 Cases have notice of the

Combined Hearing, and will have an opportunity to object to any modifications at that

time, the requirements of section 1127(d) of the Bankruptcy Code have been met.

*See Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater)*, 57 B.R. 354, 358 (D.

Utah 1985) (creditors who have knowledge of pending confirmation hearing had

sufficient opportunity to raise objections to modification of the plan).

96.     Accordingly, the Debtors respectfully submit that the Modifications

should not require the Debtors to resolicit the Plan because (a) the Modifications will

not materially or adversely affect the treatment of any creditor that has previously

accepted the Plan and (b) the Plan, as modified, will continue to comply with the

requirements of sections 1122 and 1123 of the Bankruptcy Code.

### <u>REQUEST FOR WAIVER OF BANKRUPTCY RULE 3020(e)</u>

97.     The Debtors requests that the Confirmation Order be effective

immediately upon its entry notwithstanding the 14-day stay imposed by operation of

Bankruptcy Rule 3020(e).  Under Bankruptcy Rule 3020(e), "[a]n order confirming a

plan is stayed until the expiration of 14 days after the entry of the order, unless the

court orders otherwise."  Fed. R. Bankr. P. 3020(e).  As the Advisory Committee notes to

Bankruptcy Rule 3020(e) state, "[t]he court may, in its discretion, order that Rule 3020(e)

is not applicable so that the plan may be implemented and distributions may be made

immediately."  Fed. R. Bankr. P. 3020(e), Advisory Comm. Notes – 1999 Amendment.

---

any Debtor" without the need for resolicitation of votes on the plan);  *In re Calpine Corp.*, Case No. 05-
60200 (BRL) 2007 WL 4565223, at *6 (Bankr. S.D.N.Y. Dec. 19, 2007) (approving certain non-material
modification to reorganization plan without the need for resolicitation).

98.     Under the circumstances, with a consensual Plan, it is appropriate for the Court to exercise its discretion with respect to the stay imposed by Bankruptcy Rule 3020(e) and permit the Debtors to consummate the Plan and commence its implementation without delay after entry of the Confirmation Order.  A waiver of the 14-day stay also allows the Debtors to satisfy their Effective Date distribution obligations earlier which is in the best interests of the Estates and all other parties in interest and will not prejudice any party in interest.

## CONCLUSION

The Debtors submit that the Disclosure Statement and Plan comply with all applicable requirements under the Bankruptcy Code and the Bankruptcy Rules. Accordingly, the Debtors respectfully request that the Court approve the Disclosure Statement on a final basis and confirm the Plan.

Dated:  April 25, 2024
        New York, New York

VENUS LIQUIDATION INC., *et al.*
*Debtors and Debtors in Possession*
*By their Counsel*
TOGUT, SEGAL & SEGAL LLP,
By:

/s/Brian F. Moore
FRANK A. OSWALD
KYLE J. ORTIZ
BRIAN F. MOORE
JOHN C. GALLEGO
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000