**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VENUS LIQUIDATION INC., *et al.* | Case No. 23-10738 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF FRANK A. POMETTI IN SUPPORT OF**
**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND**
**ORDER APPROVING DISCLOSURE STATEMENT AND AMENDED**
**CHAPTER 11 PLAN OF LIQUIDATION FOR VENUS LIQUIDATION INC.**
**(F/K/A VICE GROUP HOLDING, INC.) AND CERTAIN OF ITS AFFILIATES**

I, Frank A. Pometti, being duly sworn, state the following under penalty of perjury:

1.  I am the Chief Restructuring Officer of Venus Liquidation Inc. (f/k/a Vice Group Holding, Inc.) and its affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors, as "proponents of the plan" within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code"), filed the solicitation version of the *Chapter 11 Plan of Liquidation for Venus Liquidation Inc. f/k/a Vice Group Holding, Inc. and Certain of its Affiliates* on March 5, 2024 [Docket No. 834], and the *Amended Chapter 11 Plan of Liquidation for Venus Liquidation Inc. f/k/a Vice Group Holding, Inc. and Certain of its Affiliates*, on April 25, 2024 [Docket No. 961] (as it may be further amended, modified, and/or supplemented from time to time, "Plan"),[2] and the solicitation version of the *Disclosure Statement for the Chapter 11 Plan of Liquidation for*

---

[1] The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Alix Partners, 909 Third Avenue 30th Floor, New York, New York 10022.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

*Venus Liquidation, Inc. f/k/a Vice Group Holding, Inc. and Certain of its Affiliates*, on March 8, 2024 [Docket No. 836] (as it may be amended, modified, and/or supplemented from time to time, the "Disclosure Statement").

2.  I respectfully submit this declaration (this "Declaration") in support of confirmation of the Plan and approval of the Disclosure Statement on a final basis. I have reviewed, and I am generally familiar with, the terms and provisions of the Plan, the Disclosure Statement, and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.

3.  Except as otherwise set forth herein, all statements in this Declaration are based on my personal knowledge, my familiarity with the Debtors' operations, my discussions with the Debtors' legal professionals, and/or my review of relevant documents. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth herein.

**Adequacy of Disclosure Statement**

4.  I submit the Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable bankruptcy and nonbankruptcy rules, laws, and regulations, and (b) contains "adequate information" with respect to the Debtors, the Plan, and the transactions contemplated thereunder.

**The Plan Satisfies Section 1129 of the Bankruptcy Code**

5.  Based on my understanding of the Plan, the events that have occurred prior to and during these Chapter 11 Cases, and discussions I have had with the Debtors' legal advisors regarding the requirements set forth in the Bankruptcy Code, I believe that the Plan satisfies all of the applicable requirements of section 1129 of the Bankruptcy Code.

6. <u>Section 1129(a)(1)</u>. I understand that the Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with sections 1122 and 1123 of the Bankruptcy Code. In that regard, I understand that the Plan designates the classification of Claims and Interests and each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class in accordance with section 1122 of the Bankruptcy Code. I also understand that the Plan provides for the separate classification of Claims against and Interests in the Debtors based upon the differences in legal nature and/or priority of such Claims and Interests. I further believe that the Plan satisfies each requirement set forth in section 1123(a) of the Bankruptcy Code regarding the required contents of a Chapter 11 plan.

7. I believe that valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. For example, the Prepetition Senior Secured Credit Claims (Class 4), JPM Overdraft Facility Claims (Class 5), Senior Subordinated Notes Claims (Class 6) and the Pulse Notes Claims (Class 7) are in different classes because such Claims arise under separate prepetition loan agreements and/or pursuant to different rights under such agreements. General Unsecured Claims (Class 8) are classified separately because such claims are entitled to different priority under section 507(a) of the Bankruptcy Code. In addition, other aspects of the Plan's classification scheme are related to the different legal or factual of each Class, such as Other Secured Claims (Class 2), Other Priority Claims (Class 3), and Interests (Class 9), which are classified separately due to their required treatment under the Bankruptcy Code. The Plan's classifications not only serve the purpose of facilitating ease of Distributions on the Effective Date, but also

3

acknowledge the fundamental differences between those types of Claims and Interests. I also understand that all Claims and Interests within each Class have the same or substantially similar rights as the other Claims and Interests in that Class and will receive the same treatment under the Plan for their respective Claims and Interests in the same Class.

8.      I believe that the facts and circumstances of these Chapter 11 cases also support the consolidation of the Debtors' estates for Plan purposes. Prior to the Petition Date, the Debtors utilized a shared cash management system. As described in the Disclosure Statement, each of the Debtors were obligated under prepetition financing agreements for certain secured obligations. The Debtors also filed their taxes as part of a consolidated tax return. After the Petition Date, substantially all of the Debtors' assets were sold, pursuant to the Sale Order. There was no allocation of the purchase price to the individual Debtor entities. Consolidating the Debtors' estates into a single entity for purposes of the Plan, including Distributions in full on account of Allowed Claims, is therefore in the best interests of creditors.

9.      I am aware that Article III of the Plan identifies that there are Classes of Claims that are not Impaired by the Plan, as required under section 1123(a)(2) of the Bankruptcy Code, and specifies the treatment of Impaired Classes of Claims and Interests as required by section 1123(a)(3) of the Bankruptcy Code. It is my understanding that the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

10.     It is my understanding that Article V of the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code by setting forth the means

4

for implementation of the Plan. I am aware that Section 3.2, 3.3 and 5.5 the Plan provides for the consolidation of the Debtors for the purposes of, *inter alia*, treatment under the Plan, confirmation of the Plan, and Distributions to be made in respect of Claims against the Debtors under the Plan. On the Effective Date of the Plan: (a) all assets (and all proceeds thereof) and liabilities of each Debtor shall be merged or treated as though they were merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Plan on account of intercompany claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be setoff against the debts of the other Debtors.

      11.    I understand that Article V of the Plan includes further provisions with respect for implementation of the Plan, including: (a) the dissolution of the Debtors; (b) payments required pursuant to the Plan from the reserves and escrows established thereunder; and (c) and preservation of certain causes of action for the Plan Administrator may pursue on behalf of the Debtors' Estates, including the GUC Reserved Litigation Claim in the Plan Administrator's discretion.

5

12. I understand that pursuant to Sections 1.77 and 5.5 of the Plan and as disclosed in the Plan Supplement, Peter Hurwitz will be appointed as Plan Administrator.

13. It is my understanding that the Plan is a liquidating plan and does not provide for the issuance of equity or other securities by the Debtors, and that, accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code do not apply to the Plan.

14. I understand the Plan complies with section 1123(a)(7) as it contains only those provisions that are consistent with the interests of Holders of Claims and Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and any successor(s) thereto. I am aware that the Debtors have disclosed identity of the Plan Administrator in the Plan Supplement.

15. Furthermore, I am aware that Section 5.7 of the Plan provides that, upon the Effective Date, the employment, retention, appointment, and authority of all officers, directors, employees, and Professionals of the Debtors, subject to the Antenna Stipulation as applicable, and the Creditors' Committee shall terminate. Accordingly, I understand control of the Debtors by the Plan Administrator will be consistent with public policy.

16. I understand that as contemplated by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan describes the treatment for Unimpaired Classes of Claims and Impaired Classes of Claims and Interests.

17. I understand that with respect to section 1123(b)(2) of the Bankruptcy Code, except as otherwise provided in the Confirmation Order, the Plan, Section 8.1 of the Plan, on the Effective Date, unless such Executory Contract (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective

6

Date (which order may be the Confirmation Order); (b) is the subject of a motion to assume filed on or before the Effective Date; (c) is set forth in the Schedule of Assumed and Assigned Executory Contracts; or (d) has expired or terminated pursuant to its own terms.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts in the Plan will be effective as of the Effective Date.

18. As I understand is permitted by section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan modifies the rights of certain Holders of Claims and Interests.

19. As I understand is permitted by section 1123(b)(6) of the Bankruptcy Code, Article X of the Plan contains certain release, exculpation and injunction provisions that are consistent with applicable provisions of the Bankruptcy Code and relevant case law, and that no objections have been raised regarding same.

20. For the reasons set forth below, I believe that the release, exculpation and injunction provisions are permissible under and consistent with section 1123(b)(3)(A) of the Bankruptcy Code.

21. <u>Debtor Release</u>.  I am aware that section 10.2 of the Plan contains the Debtor Release.  I believe that the Debtor Release was negotiated at arm's length between the Debtors and the Released Parties, constitutes a sound exercise of the Debtors' business judgment and meets the applicable legal standard—the Debtor Release is fair, reasonable, is in the best interests of the Debtors and their Estates, and constitutes good faith compromises and settlements of the matters covered thereby.  I believe that the Debtor Release is narrowly tailored to the facts and circumstances of

7

these Chapter 11 Cases and also appropriately offers protection to the Released Parties, which actively participated in and made valuable contributions with respect to these Chapter 11 Cases and the Debtors' wind down process. Further, the grant of the Debtor Release as reflected in the Plan has received support in the form of approval of the Plan received from voting creditors in Class 4 and Class 8. I understand that the Debtor Release was included in the solicitation version of the Plan and conspicuously reprinted on the ballots used by creditors to vote to accept or reject the Plan.

22. I believe that the Released Parties have made significant concessions and economic and non-economic contributions to the Debtors and their Estates that support approval of the Debtor Release. Among other things, the Released Parties are parties to the stipulations approved by *Order Granting Debtors' Omnibus Motion for an Order Pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Stipulations* [Docket No. 833] entered on March 1, 2024 (the "Stipulation Order"). In their motion seeking entry of the Stipulation Order, dated January 30, 2024 [Docket No. 768] (the "9019 Motion"), the Debtors argued that the Antenna Stipulation and the Committee Stipulation (each as defined in the Stipulation Order) "pave[d] the way for confirmation of the Plan," which, among other things established the GUC Cash Reserve and brought additional funds into the Estates for the benefit of the Debtors' general unsecured creditors. I understand that the 9019 Motion also explained that absent entry of the Stipulation Order, conversion to Chapter 7 would have been unavoidable, which would have destroyed the value otherwise protected under the Plan and reduced general unsecured creditor recoveries.

23. Moreover, I am aware that approval of the 9019 Motion is a condition to the effectiveness of the Plan. The cooperation by the Released Parties with the Debtors in negotiating the stipulations underlying the Court-approved 9019 Motion

8

caused this condition to Plan effectiveness to be satisfied. Therefore, I believe that the Debtor Release is appropriate and should be approved.

24. <u>Exculpation</u>. I understand that the revised exculpation provision set forth in Section 10.4 of the amended Plan (the "<u>Exculpation Provision</u>") is limited to estate fiduciaries, in their capacities as such, who have meaningfully and substantially contributed to the success of these Chapter 11 Cases. Therefore, I believe that the Exculpation Provision is appropriately circumscribed, has not been objected to, is proper and should be approved.

25. <u>Injunction</u>. I understand that the injunction set forth in Section 10.5 of the Plan (the "<u>Plan Injunction</u>") merely implements the Debtor Release and Exculpation Provisions by permanently enjoining parties from commencing or continuing any action against the Released Parties or the Exculpated Parties on account of any Claims, Interests, Causes of Action, or liabilities that have been released under the Plan. I believe that the Plan Injunction is a necessary part of the Plan precisely because it enforces the release, and exculpation provisions that are centrally important to the Plan and the public policy underlying chapter 11. Further, the Plan Injunction is consensual as to any party that did not specifically object thereto.

26. I understand that the Debtors will also request that the Confirmation Order provide for an injunction against all Holders of Claims or Interests or any other parties, along with their respective present or former employees, agents, officers, directors, principals, and affiliates from taking any actions to interfere with the implementation or consummation of the Plan or interfering with the Distributions and payments contemplated by the Plan, which the Debtors' legal advisors have informed me is consistent with the guidance from this Court. Based on the foregoing, I believe

that the proposed injunction is appropriate under sections 1123(b)(6) and 1123(a)(5) of the Bankruptcy Code and should be approved.

27. I understand that there are no Executory Contracts being assumed under the Plan, except to the extent set forth in the Schedule of Assumed and Assigned Executory Contracts. Thus, I believe the Plan complies with section 1123(d) of the Bankruptcy Code.

28. Section 1129(a)(2). To the best of my knowledge and belief, based on discussions with the Debtors' legal advisors, and as evidenced by the Court's entry of the *Order (I) Approving Certain Key Dates Relating to Confirmation of the Debtors' Plan, Including Scheduling a Combined Hearing to Consider Approval of Debtors' Disclosure Statement and Plan; (II) Approving the Form and Manner of Combined Hearing Notice; (III) Approving Debtors' Disclosure Statement on a Provisional Basis; and (IV) Approving (A) Procedures for Solicitation; (B) Forms of Ballots and Notices; (C) Procedures for Tabulation of Votes; and (D) Procedures for Objections;* dated as of February 27, 2024 [Docket No. 781] (the "Solicitation Procedures Order"), prior orders of the Court entered in the Chapter 11 Cases, and the filings submitted by the Debtors, I believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 regarding disclosure and solicitation of the Plan.

29. I understand that, as set forth in the *Certification of Adam J. Fialkwoski With Respect to the Tabulation of Votes on the Chapter 11 Plan of Liquidation for Venus Liquidation Inc. and Certain of Its Affiliates* [Docket No. 902, and as amended at Docket Nos. 905 and 955] (the "Voting Declaration") each Holder of a Claim or Interest was sent the solicitation materials required by the Solicitation Procedures Order. *See* Affidavits of Service, filed on March 8 and March 19, 2024 Docket No. 840 and 858]

(the "Solicitation Declaration"), I understand that in accordance with the Solicitation Procedures Order, the Holders of Claims entitled to vote received the Solicitation Procedures Order, the Combined Hearing Notice (with instructions detailing how to access copies of the Disclosure Statement and Plan on the Debtors' case website), and an appropriate form of Ballot and return envelope. I understand that those Holders of Claims and Interests not entitled to vote received the Combined Hearing Notice.

30. To the best of my knowledge and belief, the Debtors solicited acceptances of the Plan in good faith and did not solicit acceptances of the Plan from any creditor prior to entry of the Solicitation Procedures Order. Based on the Voting Declaration, I believe the Debtors properly solicited votes with respect to the Plan in accordance with the Solicitation Procedures Order.

31. To the best of my knowledge and belief, good, sufficient, and timely notice of the Combined Hearing and all other hearings in these Chapter 11 Cases has been provided to all Holders of Claims and Interests, and all other parties in interest to whom notice was required to have been provided. Accordingly, I believe that the Plan satisfies section 1129(a)(2) of the Bankruptcy Code.

32. Section 1129(a)(3). I believe the Debtors have proposed the Plan in good faith and not by any means forbidden by law. I believe the Plan is the product of extensive arm's-length negotiations among the Debtors, as proponent of the Plan, the Creditors' Committee and other key stakeholders of the Debtors' Estates, which were conducted in good faith and culminated in the Plan, which provides for the fair allocation of the Debtors' assets consistent with the requirements of the Bankruptcy Code and other applicable law. Indeed, I understand that the Plan provides for the payment in full of all Priority Claims against the Debtors and contains a mechanism for recoveries for holders of Allowed General Unsecured Claims by the re-vesting of all of

11

the Debtors' remaining assets, including the GUC Cash Reserve and GUC Reserved Litigation Claims, to the post-confirmation Debtors to be administered by the Plan Administrator. I believe that the Plan formulation process was conducted in good faith and all participants in the process are sophisticated and independently represented by competent counsel. Furthermore, the broad support of the Plan, as evidenced by the Voting Declaration, is strong evidence that the Plan has a proper purpose. Accordingly, I believe that the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

33. Section 1129(a)(4). I understand that payments made or to be made by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases have been approved by, or are subject to the approval of, the Bankruptcy Court. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

34. Section 1129(a)(5). I am aware that Peter Hurwitz has been identified as the Plan Administrator in the Plan Supplement. Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

35. Section 1129(a)(6). I understand that because the Debtors are not charging rates that are the subject of any regulatory commission jurisdiction, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

36. Section 1129(a)(7). I understand that the Bankruptcy Code requires that, with respect to each Impaired Class of Claims and Interests, each Holder of such Claim or Interest must either (a) accept the Plan or (b) receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

37. I believe that the Plan satisfies the requirements of section 1129(a)(7) as to each member of an Impaired Class that has rejected or is deemed to reject the Plan. Notably, the Plan already provides for the liquidation of the Debtors. Due to, among other things, the Committee Settlement embodied in the Plan and the Debtors', Prepetition Secured Parties' and Purchasers' substantial contributions as facilitated through the Committee Settlement, Antenna Stipulation and Committee Stipulation, Holders of Impaired Claims, including the Holders of General Unsecured Claims in Class 8, would receive less in a chapter 7 liquidation than they stand to receive under the Plan. In addition, liquidation under Chapter 7 of the Bankruptcy Code would increase administrative costs in the form of statutory Chapter 7 trustee's fees and other professional fees while delaying Distributions to holders of Allowed Claims. For these reasons, and based upon the other evidence related thereto in support of the Plan, each Holder of a General Unsecured Claim that is entitled to vote on the Plan has either accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. I believe that such evidence is both persuasive and credible and based upon reasonable and sound assumptions.

38. <u>Section 1129(a)(8)</u>. I understand that all unimpaired Classes of Claims under the Plan (*i.e.,* Classes 1, 2, and 3) are conclusively presumed to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code and, thus, have not voted on the Plan. I am aware that Classes 4 and 8 have voted to accept the Plan. Accordingly, with respect to the Classes of Claims described above, I believe that the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

39. I understand that holders of Claims in Classes 5, 6 and 7 were provided Ballots and have either voted to reject the Plan (Class 6) or did not submit votes on the Plan (Classes 5 and 7). Holders of Claims in Class 9 will not receive a distribution under the Plan, so such Class is deemed to reject the Plan. Nevertheless, I understand that, as discussed below, the Plan is a confirmable plan because it satisfies the "cram down" provisions of section 1129(b) of the Bankruptcy Code with respect to these non-accepting Classes.

40. <u>Section 1129(a)(9)</u>. I understand that the Plan's treatment of the Administrative Claims, Professional Fee Claims, and Priority Tax Claims complies with section 1129(a)(9) of the Bankruptcy Code. *First*, the Plan provides that Holders of Allowed Administrative Claims, Professional Fee Claims, and Allowed Priority Tax Claims will receive payment in full in Cash on the Effective Date or as soon as practicable thereafter, unless such Holder otherwise agrees to less favorable treatment (*see* Plan §§ 2.1, 2.3 & 2.4), which complies with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. *Second*, the Plan provides that Allowed Secured Tax Claims, Other Secured Claims, and Other Priority Claims will receive an amount in Cash equal to the unpaid portion of such Allowed Claims on the Effective Date or as soon as reasonably practicable after such Claims become Allowed, unless the Holder of such Claim agrees to less favorable treatment. *See* Plan § 3.4. *Third*, on the Effective Date, the Debtors will have sufficient Cash to pay Administrative Claims, Priority Tax Claims, and Other Priority Claims, and to fund the Plan Reserve Account, the Disputed Claim Reserve, and Professional Fee Escrow. To the extent that the Debtors do not have sufficient cash on the Effective Date to pay the aforementioned claims, the Debtors' professionals have agreed to a voluntary reduction of their Allowed Professional Fee Claims so that the required Effective Date payments are made. Based on the foregoing,

I believe that the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

41.  Section 1129(a)(10).  I understand that section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one Class of Impaired Claims.  I am aware that Classes 4 and 8 are Impaired and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider.  Thus, I believe section 1129(a)(10) of the Bankruptcy Code is satisfied.

42.  Section 1129(a)(11).  I understand that section 1129(a)(11) of the Bankruptcy Code permits a plan to be confirmed if it is feasible, *i.e.*, it is not likely to be followed by liquidation or the need for further financial reorganization.  I understand that in the context of a liquidating plan, feasibility is established by demonstrating that the Debtors are able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient funds to meet its post-confirmation obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases.  I believe the Debtors will have sufficient funds to administer and consummate the Plan and to close these Chapter 11 Cases.  Therefore, I believe that the Plan has more than a reasonable likelihood of success and satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

43.  Section 1129(a)(12).  I am aware that Section 12.1 of the Plan provides for the payment of all statutory fees by the Debtors on the Effective Date or when such fees are due.  Accordingly, I believe that the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

44.  Sections 1129(a)(13)–(16).  Based on discussions with Debtors' legal advisors, it is my understanding that sections 1129(a)(13)–(16) of the Bankruptcy Code

15

are inapplicable to the Debtors. Therefore, I believe such requirements are deemed satisfied.

45. <u>Section 1129(b)</u>. Based on discussions with Debtors' legal advisors, it is my understanding that, pursuant to section 1129(b) of the Bankruptcy Code, a plan may be confirmed notwithstanding the rejection or deemed rejection by a class of claims or interests so long as the plan does not discriminate unfairly and is "fair and equitable" as to such non-accepting class. Here, the Holders of Claims in Class 6 (Senior Subordinated Notes Claims) voted to reject the Plan. In addition, because the Holders of Claims in Class 9 (Interests) will not receive a distribution under the Plan, such Class is deemed to reject the Plan. I believe that section 1129(b) of the Bankruptcy Code is satisfied with respect to Classes 6 and 9.

46. I believe the Plan does not unfairly discriminate against Class 9 Interests. I understand the Claims underlying Classes 6 and 9 are similarly situated to and classified together given their respective related legal character. On the other hand, Classes 6 and 9 consist of dissimilar underlying claims. Specifically, the Claims underlying Class 6 are the only Class of Claims that relate to the Senior Subordinated Notes. *See* Plan § 1.122; Plan § 3.4(f). Moreover, the Claims underlying Class 9 are the only Class of Claims that relate to equity security interests of a Debtor. *See* Plan § 1.68; Plan § 3.4(i). Thus, the Plan does not unfairly discriminate against the Holders of Claims in Classes 6 and 9.

47. Based on discussions with Debtors' legal advisors, I believe the "fair and equitable" requirement is satisfied as to Holders of Interests because no Class of Claims classified as junior to Class 9 will receive or retain any property under the Plan. I understand that no senior creditor will receive property in excess of the full value of its Claims under the Plan. Similarly, I believe that the Plan is "fair and

16

equitable" as to Class 6 because the treatment of Claims in Class 6 comports with the "absolute priority rule" in that each Holder of a Class 6 Claim shall receive such Holder's Pro Rata share of the Plan Administrator Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Plan Administrator Agreement in full and final satisfaction, settlement of such claims, pursuant to section to 510(a) of Bankruptcy Code, the Turnover Provisions, and Proceeding Sharing Agreement, as applicable. Therefore, I believe the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

48. <u>Sections 1129(c)–(e)</u>. The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, it is my understanding that section 1129(c) of the Bankruptcy Code, which prohibits confirmation of multiple plans, is inapplicable in these Chapter 11 Cases. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. Thus, I understand that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. Finally, I understand that none of the Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 25, 2024
      New York, New York

> By:    <u>/s/ *Frank Pometti*</u>
>         Name: Frank Pometti
>         Title: Chief Restructuring Officer